Shawn Hanson (State Bar No. 109321)
shanson@jonesday.com
Katherine S. Ritchey (State Bar No. 178409)
ksritchey@jonesday.com
JONES DAY
555 California Street, 26th Floor
San Francisco, CA 94104
Telephone:   (415) 626-3939
Facsimile:   (415) 875-5700

Attorneys for Defendant A.U.L. CORPORATION
LONG-TERM DISABILITY INSURANCE PLAN and
Real Party in Interest STANDARD INSURANCE
COMPANY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **PATRICIA BROYLES,**<br><br>            **Plaintiff,**<br><br>      v.<br><br>**A.U.L. CORPORATION LONG-TERM DISABILITY INSURANCE PLAN,**<br><br>            **Defendant,**<br><br>**STANDARD INSURANCE COMPANY,**<br><br>            **Real Party in Interest.** | No. C-07-5305-MMC<br><br>**DEFENDANT A.U.L. CORPORATION LONG-TERM DISABILITY PLAN'S NOTICE OF MOTION AND MOTION TO REVIEW PLAINTIFF'S CLAIM FOR ERISA BENEFITS UNDER ABUSE OF DISCRETION STANDARD OF REVIEW; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date: August 1, 2008<br>Time: 9:00 a.m.<br>Before the Honorable Maxine M. Chesney |

SFI-585545

Defendant's Notice of
Motion and Motion to Review Pltf's Claim;
Memo of P's and A's; C07-05305 MMC

**TABLE OF CONTENTS**

**Page**

NOTICE OF MOTION AND MOTION ........................................................................................ 1
RELIEF REQUESTED .................................................................................................................. 1
ISSUES PRESENTED ................................................................................................................... 1
MEMORANDUM OF POINTS AND AUTHORITIES ................................................................ 1
I.     INTRODUCTION ............................................................................................................. 1
II.    FACTUAL HISTORY ...................................................................................................... 2
        A.    The Relevant Terms of the LTD Policy ............................................................... 2
             1.    The Plan Policy Provides Discretion to Standard ..................................... 2
             2.    The Definition of Disability ...................................................................... 2
             3.    The Benefit Waiting Period ....................................................................... 3
             4.    When Insurance Ends Under the Plan Policy ........................................... 3
        B.    Administration of Plaintiff's Claim for LTD Benefits ......................................... 3
             1.    Standard Collected Information Relevant to Plaintiff's Claim, and Appropriately Consulted with Experts Prior to Making its Decision to Deny Plaintiff's Claim. .......................................................................... 4
             2.    Plaintiff Appealed Standard's Initial Decision and Standard Upheld its Initial Decision ..................................................................................... 5
             3.    Standard's Administrative Review Unit Affirmed the Decision to Deny Benefits ............................................................................................ 8
III.   ARGUMENT .................................................................................................................... 9
        A.    Standard's Decision is Reviewed for an Abuse of Discretion ............................. 9
        B.    Standard's Decision is Entitled to a High Degree of Deference when Reviewed for an Abuse of Discretion .................................................................. 10
IV.   CONCLUSION ............................................................................................................... 12

SFI-585545

- i -

Defendant's Notice of
Motion and Motion to Review Pltf's Claim;
Memo of P's and A's; C07-05305 MMC

# TABLE OF AUTHORITIES

**Page**

Cases

*Abatie v. Alta Health & Life Ins. Co.*
    458 F.3d 955 (9th Cir. 2006)........................................................................... 9, 10, 11, 12

*Bendixen v. Standard Ins. Co.*
    185 F.3d 939 (9th Cir. 1999).......................................................................................... 9

*Firestone Tire & Rubber v. Bruch*
    489 U.S. 101 (1989)................................................................................................. 9, 10

*Jebian v. Hewlett – Packard Co. Emple. Benefits Org. Income Prot. Plan*
    349 F.3d 1098 (9th Cir. 2003)...................................................................................... 11

*Metropolitan Life Ins. Co. v. Glenn*
    552 U.S. ___, 128 S. Ct. 1117, 169 L. Ed. 2d 845, 2008 LEXIS 5030 (2008)................ 9, 10, 11

*Muskowite v. Everen Capital Corp. Group Disability Income Plan*
    2008 LEXIS 22286 (N.D. Cal. March 20, 2008)....................................................... 11, 12

SFI-585545

- ii -

Defendant's Notice of
Motion and Motion to Review Pltf's Claim;
Memo of P's and A's; C07-05305 MMC

1 **NOTICE OF MOTION AND MOTION**

2     **PLEASE TAKE NOTICE** that on August 1, 2008 at 9:00 a.m. in the Courtroom of the

3 Honorable Maxine M. Chesney, located at 450 Golden Gate Ave., San Francisco, A.U.L.

4 Corporation Long-Term Disability Plan ("A.U.L. Plan") will, and hereby does, move for this

5 Court to order that the decision by Real Party in Interest Standard Insurance Company

6 ("Standard") to deny the claim of Plaintiff Patricia Broyles ("Plaintiff") for long term disability

7 benefits be reviewed using a highly deferential abuse of discretion standard.

8 **RELIEF REQUESTED**

9     A.U.L. Plan requests that this Court review Standard's decision to deny Plaintiff's claim

10 for long term disability benefits using a highly deferential abuse of discretion standard.

11 **ISSUES PRESENTED**

12     Whether there is sufficient evidence to alter the otherwise applicable highly deferential

13 review of Standard's denial of Plaintiff's claim for long-term disability benefits.

14 **MEMORANDUM OF POINTS AND AUTHORITIES**

15 **I.    INTRODUCTION**

16     This lawsuit arises from Standard's decision denying Plaintiff's claim for Long-Term

17 Disability ("LTD") benefits. Standard's decision is reviewed for an abuse of discretion. The

18 degree of deference the Court may afford in its abuse of discretion review may vary upon

19 demonstration by Plaintiff that Standard's decision was tainted by its structural conflict of interest

20 arising from its role as both decision-maker and funding source. Here, however, the

21 administrative record is the product of a diligent effort to collect relevant information (including

22 medical records), and frequent communications with Plaintiff to ensure a complete record.

23 Standard reviewed the administrative record three times. In each review, it evaluated information

24 provided by Plaintiff and her doctors, and solicited expert medical and/or vocational opinions to

25 inform its decision-making. Accordingly, the Court should apply a highly deferential review for

26 an abuse of discretion.

27

28

SFI-585545

- 1 -

Defendant's Notice of
Motion and Motion to Review Pltf's Claim;
Memo of P's and A's; C07-05305 MMC

## II. FACTUAL HISTORY

### A. The Relevant Terms of the LTD Policy

The policy at issue is Group Long Term Disability Insurance Policy No. 638213-T ("Plan Policy") which was issued by Standard to A.U.L. Corporation, effective January 1, 2000, as amended from time to time. Declaration of George Chan ("Chan Decl.") Ex. 1.

#### 1. The Plan Policy Provides Discretion to Standard

The "Allocation of Authority" section of the Plan Policy provides that Standard has full authority to administer claims. This section provides:

> Except for those functions which the Group Policy specifically reserves to the Policyowner or Employer, we have full and exclusive authority to control and manage the Group Policy, to administer claims, and to interpret the Group Policy and resolve all questions arising in the administration, interpretation, and application of the Group Policy.
>
> Our authority includes, but is not limited to:
>
> 1. The right to resolve all matters when a review has been requested;
>
> 2. The right to establish and enforce rules and procedures for the administration of the Group Policy and any claim under it;
>
> 3. The right to determine
>
>    a. Your eligibility for insurance
>
>    b. Your entitlement to benefits
>
>    c. The amount of benefits payable to you
>
>    d. The sufficiency and the amount of the information may reasonably require to terminate a, b, or c. above."
>
> Subject to the review procedures of the Group Policy, any decision we make in the exercise of our authority is conclusive and binding.

Chan Decl. Ex. 1 at 006-07.[1]

#### 2. The Definition of Disability

The Plan Policy specifically sets forth the criteria a claimant must meet to be considered

---

[1] For ease of reference, the A.U.L. Plan will omit "STND1149-00" from its page references, and simply cite to the last three numbers of each document's Bates stamp.

"Disabled." For the first 24 months of LTD benefits, often referred to as the "Own Occupation" period, a claimant must be "unable to perform with reasonable continuity the Material Duties of [her] Own Occupation." Chan Decl. Ex. 1 at 021. Material Duties means the "essential tasks, functions and operations, and the skills, abilities, knowledge, training and experience, generally required by employers from those engaged in a particular occupation." *Id.* at 020.

### 3. The Benefit Waiting Period

Additionally, the Plan Policy provides a 90-day Benefit Waiting Period, precluding payment of LTD benefits unless the claimant has been disabled throughout the waiting period. *Id.* at 026, 004. Because Plaintiff ceased work on September 14, 2005 (Chan Decl. Ex. 2 at 173), her Benefit Waiting Period ended on December 14, 2005.

### 4. When Insurance Ends Under the Plan Policy

The Plan Policy provides that insurance ends upon the occurrence of certain specified events. Specifically, the Plan Policy provides in the When Your Insurance Ends section that coverage ends automatically on the earliest of:

….

4. The date your employment terminates.

5. The date you cease to be a Member. However, your insurance will be continued during the following periods when you are absent from Active Work, unless it ends under any of the above.

….

b. During leave of absence if continuation of your insurance under the Group Policy is required by a state-mandated family or medical leave act or law.

*Id.* at 022. Plaintiff's Insurance Ended On December 8, 2005, following the end of her leave of absence under the Family Medical Leave Act. Chan Decl. Ex. 3 at 345.

### B. Administration of Plaintiff's Claim for LTD Benefits

Plaintiff worked at A.U.L. Corporation as a claims payable adjuster, which is a sedentary occupation. Chan Decl. Ex. 4 at 169. On September 14, 2005, she ceased work. Chan Decl. Ex. 2 at 173. Under the Family Medical Leave Act, Plaintiff was considered on a leave of absence without pay until December 8, 2005. Chan Decl. Ex. 3 at 345. On November 28, 2005,

Plaintiff submitted the Employee Statement in support of her claim for LTD benefits. Chan Decl. Ex. 5 at 279.

### 1. Standard Collected Information Relevant to Plaintiff's Claim, and Appropriately Consulted with Experts Prior to Making its Decision to Deny Plaintiff's Claim.

Standard conducted a thorough review in evaluating Plaintiff's claim. As an initial matter, Standard confirmed receipt of the claim with Plaintiff by telephone conference and "explained [the] process" of claim administration. Chan Decl. Ex. 6 at 280. Additionally, because Plaintiff indicated on her Employee Statement that she had not received a certificate of coverage, Standard requested that A.U.L. Corporation provide one. Chan Decl. Ex. 7 at 284. On December 28, 2005, Plaintiff and Shannon Teed, a disability benefits analyst at Standard, spoke by telephone. Confidential Declaration of George Chan ("Conf. Chan Decl.") Ex. 8 at 288-91. Ms. Teed documented the conversation, noting Plaintiff's description of her medical condition, medication, and employment history. *Id.* On December 30, 2005, Standard wrote to Plaintiff, explaining that although an initial review had been completed, its administration was not complete because it needed to obtain additional information. Chan Decl. Ex. 9 at 298-300.

Standard diligently sought to acquire complete medical records. This process included frequent communications between Standard and Plaintiff. On January 3, 2006, Standard requested Dr. Pfeffer's medical records and an Attending Physician Statement, as well as other records. Chan Decl. Ex. 10 at 303-04, 305, 311. And on January 4, 2006, Standard spoke with Plaintiff again and discussed Plaintiff's health, the process of administering the claim, and Dr. Pfeffer's proper mailing address. Conf. Chan Decl. Ex. 11 at 307-09. In January and February of 2006, Standard made repeated efforts to obtain the records, and it continuously kept Plaintiff apprised of that effort and the complications that arose from the relocation of Dr. Pfeffer's practice to Los Angeles from San Francisco. Conf. Chan Decl. Ex. 12 at 312, 321, 329, 331, 336-40. On February 15, 2006, Standard notified Plaintiff that it had received the medical records from Dr. Pfeffer. Chan Decl. Ex. 13 at 342. On March 3, 2006, Standard confirmed by letter that it would be able to complete its review by April 2, 2006. Chan Decl. Ex. 14 at 344.

1    Standard reviewed the records and appropriately consulted with experts. For example,
2 Standard submitted Plaintiff's medical records to a Physician Consultant, Dr. David Waldram,
3 board certified in orthopedics, and a Nurse Consultant, Anne Jordan, both of whom reviewed
4 Plaintiff's records. Conf. Chan Decl. Ex. 15 at 209-10. Dr. Waldram is not an employee of
5 Standard. Chan Decl. ¶ 15. His curriculum vitae (which is part of the administrative record)
6 confirms that he has practiced for over thirty years and that he holds a position on the Advisory
7 Board to Oregon Health Systems. Chan Decl. Ex. 16 at 261-62. Nurse Jordan drafted a summary
8 of medical records, noting Dr. Waldram concluded that Plaintiff was capable of sedentary work.
9 Chan Decl. Ex. 15 at 209-10. Importantly, Dr. Waldram noted his opinion was "consistent with
10 recommendations from the claimant's primary orthopedist, Dr. Pfeffer, who reports on the
11 12/07/05 APS the claimant is capable of sedentary work."[2] Additionally, Standard sought
12 information from a Vocational Consultant and received a report that Plaintiff's occupation was
13 sedentary in nature. Chan Decl. Ex. 4 at 169.

14    Standard considered Dr. Waldram's opinion, the Vocational Consultant's report, and
15 Plaintiff's medical records in its review and concluded that Plaintiff was not disabled from her
16 "Own Occupation." By a six page letter, dated March 28, 2006, Standard explained its review
17 process, its conclusions from the records it had received, the applicable Plan Policy provisions, its
18 decision to deny Plaintiff's claim and the appeal process. Conf. Chan Decl. Ex. 18 at 361-66.

19    Subsequently, Plaintiff requested copies of all medical records reviewed in the
20 administration of her claim and Standard provided them to her on May 10, 2006. Chan Decl.
21 Ex. 19 at 370.

22        2.  <u>Plaintiff Appealed Standard's Initial Decision and Standard Upheld its Initial Decision</u>
23

24    Plaintiff contacted Standard by telephone to inquire about an appeal of the denial of her

---

[2] The Attending Physician Statement included the question, "What reasonable work or job site modifications could the employer make to assist the individual to return to work? Please specify:", and Dr. Pfeffer answered this question with "sedentary work." Conf. Chan Decl. Ex. 17 at 181-82.

1  claim. Conf. Chan Decl. Ex. 20 at 371. She expressed two concerns. First, Plaintiff asserted
2  Standard had not fully considered the impact of her left knee replacement. *Id.* Second, she
3  asserted there were "a lot discrepancies in her file and [Standard] didn't get a complete picture of
4  what was happening." *Id.* (Standard notes of conversation with Plaintiff). Standard explained the
5  review process and suggested that Plaintiff provide all the information she felt was not considered
6  in her initial review, and Plaintiff agreed to include it. *Id.*

7  Plaintiff requested review of the decision to deny her claim for LTD benefits by letter
8  dated July 25, 2006. Conf. Chan Decl. Ex. 21 at 372-73. In her request, she asserted that her
9  current condition rendered her disabled from her occupation. *Id.*

10  Standard followed up on the issues identified by Plaintiff in her request for review. On
11  July 31, 2006, Standard spoke with Plaintiff by telephone and discussed the process of reviewing
12  her LTD benefits claim decision. Conf. Chan Decl. Ex. 22 at 374. Plaintiff indicated that she
13  would be submitting medical records documenting her knee replacement, physical therapy notes,
14  and proof of pain medications. *Id.* She also requested that Standard confirm the information
15  conveyed in the telephone conference by writing, which Standard did by letter dated August 3,
16  2006. Chan Decl. Ex. 23 at 376. By early October, Standard had not received the additional
17  information from Plaintiff. Chan Decl. Ex. 24 at 379. As a result, Standard wrote to Plaintiff,
18  again after a conversation to the same effect, to confirm that the records were forthcoming and
19  that her review could not proceed without them. *Id.* Standard agreed to defer review until receipt
20  of the records. *Id.* On November 20 and 21, 2006, Plaintiff and Standard communicated in
21  regard to the records Plaintiff agreed to provide. Chan Decl. Ex. 25 at 381-84. By letter dated
22  November 20, 2006, Standard confirmed that it was in receipt of the additional records Plaintiff
23  had sent through to that date, and that the review process would not begin until Plaintiff finished
24  providing the additional information she wanted reviewed. Chan Decl. Ex. 26 at 386. After
25  receipt of records from Plaintiff, on December 11, 2006, Standard notified Plaintiff by letter that
26  it was forwarding her claim for medical review. Chan Decl. Ex. 27 at 394.

27  The records submitted by Plaintiff included additional medical records, physical therapy
28  records, and letters from her doctors. Regarding Plaintiff's assertions concerning her knee

SFI-585545

- 6 -

Defendant's Notice of
Motion and Motion to Review Pltf's Claim;
Memo of P's and A's; C07-05305 MMC

1  replacement, Standard reviewed a letter from Dr. Michael Shifflet to Standard Insurance
2  Company dated October 11, 2006. Conf. Chan Decl. Ex. 28 at 254. This letter indicated that
3  Plaintiff had been under his care since February 2006 and had a knee replacement performed in
4  April 2006. *Id.* Dr. Shifflet also indicated that Plaintiff was scheduled for a similar procedure on
5  her other knee and concluded that she was incapable of returning to work until approximately
6  July 1, 2007. *Id.*

7  Standard also reviewed additional information from Dr. Pfeffer and from her physical
8  therapist. At Plaintiff's request, Dr. Pfeffer wrote to Standard on November 20, 2006. Conf.
9  Chan Decl. Ex. 29 at 390. He asserted that she was "incapable of working in her own occupation
10 and any other occupation either on a full or part time basis, including sedentary work, since
11 September, 15, 2005." *Id.* Standard also reviewed Plaintiff's physical therapist records,
12 including her discharge statement from physical therapy on October 28, 2005. Conf. Chan Decl.
13 Ex. 30 at 252. This statement, from Rob Gordon to Dr. Pfeffer, concluded that Plaintiff was
14 capable of "45 minutes of consistent cardiovascular exercise" and "that she was told at her last
15 MD visit that she should join a gym and stop physical therapy." *Id.*

16 Standard forwarded Plaintiff's claim file, including the additional documents supplied by
17 Plaintiff, to Dr. Waldram to consider the newly provided records. Conf. Chan Decl. Ex. 31 at
18 265-66. Dr. Waldram considered both Plaintiff's knee and ankle surgeries. *Id.* He concluded
19 neither would inhibit her from sedentary work, provided she would not be required to walk more
20 than "3 or 4 blocks." *Id.* at 265. Dr. Waldram also considered the impact of medications on
21 Plaintiff's ability to work. *Id.*

22 Standard considered this new information and placed it in the context of all information
23 reviewed up to that point. Conf. Chan Decl. Ex. 32 at 414-16. Standard concluded the new
24 information did not support that Plaintiff was disabled from her Own Occupation during the
25 relevant time period. *Id.* By a three page letter dated February 7, 2007, Standard's Benefits
26 Department upheld its decision. Specifically, Standard responded to Plaintiff's two concerns by
27 explaining its conclusion that Plaintiff's foot pain did not disable her from a sedentary position
28 and noting that her knee operation occurred five months after her insurance ended and was

SFI-585545

- 7 -

Defendant's Notice of
Motion and Motion to Review Pltf's Claim;
Memo of P's and A's; C07-05305 MMC

therefore not a basis for the payment of benefits. *Id*. The claim was then forwarded to Standard's Administrative Review Unit ("ARU") for an independent review. *Id.*

### 3. Standard's Administrative Review Unit Affirmed the Decision to Deny Benefits

Because the benefits department did not change its decision, the ARU reviewed the claim. Chan Decl. Ex. 33 at 417. The ARU is a different department at Standard, and the analyst assigned to the claim had no part in the original claim decision. Chan Decl. ¶ 24. As part of the independent review process, Plaintiff's medical records were reviewed by an additional Physician Consultant, Dr. Joseph Mandiberg, board certified in orthopedic surgery. Prior to Dr. Mandiberg's review, he was not consulted regarding the decision to deny the claim. Chan Decl. Ex. 33 at 417. Dr. Mandiberg is not an employee of Standard. Chan Decl. ¶ 25. His curriculum vitae confirms that he has practiced for over thirty years, the majority of which have been in private practice. Chan Decl. Ex. 34 at 269. Dr. Mandiberg concluded that while Plaintiff's foot and knee conditions limited her ability to stand for "prolonged" periods, he could not "see why she cannot do a sit-down job with the ability to stand up and move around as needed." Chan Conf. Decl. Ex. 35 at 274. He also noted that although her medical records indicated ongoing issues with her foot and knee, "nobody has given a reason why a person with foot problems cannot do a sedentary job." *Id.* at 273. Standard also asked Dr. Mandiberg to evaluate whether Plaintiff's medication may result in limitations and restrictions. *Id.* He did not find "an impairment relative to [Plaintiff's] medication." *Id.*

After compiling and reviewing an administrative record of 462 pages (Chan Decl. ¶ 27), on March 15, 2007, Standard informed Plaintiff by a six page letter that an independent review affirmed Standard's decision to deny Plaintiff's claim for LTD benefits. Conf. Chan Decl. Ex. 36 at 419-24. This letter provided a summary of available information and explained in detail why Standard reached the conclusion that Plaintiff could perform the material duties of her own sedentary occupation at the time she ceased work and throughout the 90-day Benefit Waiting Period. *Id.* In addition, Standard explained that any disability caused by her 2006 knee surgery could not be weighed in Standard's evaluation under the Plan Policy because Plaintiff was no

longer a covered member under the Policy after December 8, 2005. *Id.* The ARU affirmed the denial of Plaintiff's claim. *Id.*

## III. ARGUMENT

### A. Standard's Decision is Reviewed for an Abuse of Discretion

It is well-established that if an ERISA plan gives the claim administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan, a reviewing court may reverse the denial of benefits only upon a finding of abuse of discretion. *See Metropolitan Life Ins. Co. v. Glenn,* 552 U.S. ___, 128 S. Ct. 1117, 169 L. Ed. 2d 845, 2008 LEXIS 5030, *12-13, 18 (2008)[3]; *Firestone Tire & Rubber v. Bruch,* 489 U.S. 101, 115 (1989); *Abatie v. Alta Health & Life Ins. Co.,* 458 F.3d 955, 965 (9th Cir. 2006); *Bendixen v. Standard Ins. Co.*, 185 F.3d 939, 943 (9th Cir. 1999) (applying abuse of discretion standard to the exact same policy language). The Plan Policy here contains an express Allocation of Authority clause that grants Standard complete discretion "to control and manage the Group Policy, to administer claims, and to interpret the Group Policy and resolve all questions arising in the administration, interpretation and application of the Group Policy." Chan Decl. Ex. 1 at 007. In reviewing the same Allocation of Authority provision, the Ninth Circuit concluded: "In this case, the policy language clearly confers discretion on Standard to decide whether a claimant is disabled. Therefore, the standard is abuse of discretion." *Bendixen*, 185 F.3d at 943 (affirming summary judgment for Standard based on an abuse of discretion review after holding Allocation of Authority provision confers discretion). Thus, an abuse of discretion standard is triggered by the language of the Plan Policy at issue here. *Abatie*, 458 F.3d at 965.

The Supreme Court's recent decision in *Glenn* affirms the application of an abuse of discretion review when a plan administrator has a structural conflict of interest. A structural conflict of interest exists, where, as here, the claim administrator is also responsible for payment of the claim. *Glenn*, 2008 LEXIS 5030, *12; *Abatie*, 458 F.3d at 965 (applying the label "structural conflict of interest"). In *Glenn*, the Court extended its decision in *Firestone*, holding

---

[3] For efficiency, this Motion cites to the 2008 LEXIS 5030 printing of this case. Pagination from official reporters is unavailable due to the decision's very recent publication.

that that a structural conflict of interest "should 'be weighed as a factor in determining whether there is an abuse of discretion.'" *Glenn*, 2008 LEXIS 5030, *18 (quoting *Firestone,* 489 U.S. at 115). It further clarified, "[w]e do not believe that *Firestone's* statement implies a change in the *standard* of review, say, from deferential to *de novo* review." *Id.* (emphasis in original). Rather, the Court held, "we believe that *Firestone* means what the word factor implies," the structural conflict of interest is one of "several different considerations" that the Court must take into account. *Id.* at *21.

Although the Supreme Court's holding in *Glenn* allows an abuse of discretion review to become more skeptical under certain circumstances, those circumstances are not present here. *Glenn* allows a less deferential abuse of discretion review if there is evidence that a structural conflict of interest impacted the decision. *Id.* at *18; *accord Abatie,* 458 F.3d at 968. For example, the structural conflict of interest may "prove more important (perhaps of great importance) where circumstances suggest a higher likelihood that it affected the benefits decision," but in contrast, the conflict should "prove less important (perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and to promote accuracy…." *Id.* at *21-22. As the Ninth Circuit held in *Abatie,* the effect of a conflict "may be low if a structural conflict of interest is unaccompanied, for example, by any evidence of malice, of self dealing, or a parsimonious claims-granting history." *Abatie*, 458 F.3d at 968.

### B. Standard's Decision is Entitled to a High Degree of Deference when Reviewed for an Abuse of Discretion

Standard provided Plaintiff with a full and fair review. Its review is not accompanied by "any evidence of malice, self dealing, or a parsimonious claims-granting history." *Abatie*, 458 F.3d at 968. The burden to demonstrate that Standard's structural conflict of interest should weigh "heavily" in this Court's review for an abuse of discretion falls upon the Plaintiff. *See Abatie*, 458 F.3d at 969. Plaintiff has not initiated discovery, thus, the evidence Plaintiff may rely upon will be limited to the administrative record. The administrative record shows a conscientious and thorough claim administration, and Plaintiff cannot meet her burden of demonstrating that less deference toward Standard's decision is warranted. Accordingly,

Standard's administration of Plaintiff's claim does not merit weighing the structural conflict of interest heavily.

As set forth above, Standard conducted a full and fair review of Plaintiff's claim, ultimately compiling a record of 462 pages. Chan Decl. ¶ 27. "When an administrator can show that it has engaged in an 'ongoing, good faith exchange of information between the administrator and the claimant,' the court should give the administrator's decision broad deference notwithstanding a minor irregularity." *Abatie*, 458 F.3d at 972 (quoting *Jebian v. Hewlett – Packard Co. Emple. Benefits Org. Income Prot. Plan,* 349 F.3d 1098, 1107 (9th Cir. 2003)). Standard engaged in a "good faith exchange" with Plaintiff. It communicated regularly with Plaintiff regarding her claim and it gathered and reviewed information from all of her treating physicians, including those Plaintiff saw after her insurance had ended. *See supra* Part I.B.1-2. Standard provided a detailed letter explaining its initial decision, including instructions as to the appeal process. Chan Decl. Ex. 16 at 261-66. Standard gathered additional information provided by Plaintiff when she appealed Standard's decision, and conducted another review of her claim. *See supra* Part I.B.2. Additionally, Standard conducted a third independent review of Plaintiff's claim. Conf. Chan Decl. Ex. 36 at 419-24. As part of each review, Standard consulted with physicians, and provided a detailed and thorough explanation of Standard's decision and decision-making process. *Id.; cf. Glenn*, 2008 LEXIS 5030, *23 (holding conflict of interest affected Plan administrator's decision, in part, because of failure "to provide its vocational and medical experts with all of the relevant evidence.").

The lack of evidence that Standard's structural conflict of interest should be weighed heavily makes this case analogous to *Muskowite v. Everen Capital Corp. Group Disability Income Plan,* 2008 LEXIS 22286 (N.D. Cal. March 20, 2008) (Chesney, J.), where this Court held that plaintiff provided "no basis" to weigh the presence of a structural conflict of interest heavily. *Id.* at *34. Mere allegations, for example, that the "defendant did not consider certain evidence submitted by the plaintiff," that the plaintiff's award of social security benefits was ignored, and that the defendant did not properly evaluate the plaintiff's pain symptoms, were unpersuasive reasons to apply less deference in reviewing for an abuse of discretion. *Id.* at *31-

SFI-585545

- 11 -

Defendant's Notice of
Motion and Motion to Review Pltf's Claim;
Memo of P's and A's; C07-05305 MMC

1  34.

2  As described herein, the administrative record supports a high degree of deference toward Standard's decision. Plaintiff's claim was reviewed by independent medical consultants, and the review process was thorough and appropriate. *See supra* Part I.B.2-3. The curricula vitae of the physician consultants describe considerable medical experience and employment by independent medical providers. *Muskowite*, 2008 LEXIS 22286 at *30-31 (concluding that physician consultants' curricula vitae demonstrated their expertise and lack of bias). This is exactly the type of "affirmative evidence" that *Abatie* envisioned being "brought forth" by plan administrators to support finding a high degree of deference. *Abatie*, 458 F.3d at 969 n.7. Accordingly, this Court should apply a "low" "level of skepticism" in reviewing Standard's decision for an abuse of discretion. *Id.* at 968.

## IV.  CONCLUSION

For the reasons described herein, the motion of A.U.L. Plan should be granted.

Dated: June 27, 2008

Respectfully submitted,

Jones Day

By: /s/ Katherine S. Ritchey
   Katherine S. Ritchey

for Defendant A.U.L. CORPORATION LONG-TERM DISABILITY INSURANCE PLAN and Real Party in Interest STANDARD INSURANCE COMPANY