Laurence F. Padway (SBN: 083914)
Karen K. Wind (SBN: 124852)
Law Offices of Laurence F. Padway
1516 Oak Street, Suite 109
Alameda, CA 94501
Telephone: (510) 814-6100
Facsimile: (510) 814-0650

David J. Linden (SBN: 041221)
P. O. Box 5780
Napa, California 94581
Telephone: (707) 252-7007
Facsimile: (707) 252-7883

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICIA BROYLES,<br><br>    Plaintiff,<br><br>vs.<br><br>A.U.L. CORPORATION LONG-TERM DISABILITY INSURANCE PLAN,<br><br>    Defendant, | CASE NO. C07-05305 MMC<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR DE NOVO STANDARD OF REVIEW; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:  August 1, 2008<br>Time:  9:00 a.m.<br>Ctrm:  7 (19th Floor, San Francisco)<br>Judge: Honorable Maxine M. Chesney |
| STANDARD INSURANCE COMPANY,<br><br>    Real Party at Interest. | |

**TABLE OF CONTENTS**

NOTICE OF MOTION AND MOTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

MEMORANDUM OF POINTS AND AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.     FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.    ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

       A.     *De Novo* Review Applies Because Ms. Broyles Obtained Coverage Under the Policy After the California Insurance Commissioner Gave Notice to Insurers Disallowing Policy Language Granting Discretionary Authority. . . . . . . . . . . . . . . . . . . . . . . . 4

       B.     Standard's Significant Errors in Processing Ms. Broyles' Claim Justify *De Novo* Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

            1. Standard failed to give Ms. Broyles notification of the additional information necessary to perfect her claim, together with an explanation of why such material or information was necessary. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

            2. Standard failed to take into account all the information submitted by Ms. Broyles when it reviewed her claim on appeal . . . . . . . . . . . . 7

            3. Standard failed to have a meaningful dialogue with Ms. Broyles in deciding whether to grant or deny her benefits . . . . . . . . . . . . . . . . . . . . . . . . 8

III.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

# TABLE OF AUTHORITIES

**Cases:**

*Abatie v. Alta Health & Life Ins. Co.* .................................................... 5, 6
458 F.3d 955 (9th Cir. 2006)

*Booton v. Lockheed Medical Benefit Plan* ............................................ 8
110 F.3d 1461, 1463 (9th Cir. 1997)

*John Hancock Mutual Life Ins. Co. v. Dorman* ..................................... 5
108 F.2d 220 (9th Cir. 1939)

*Metropolitan Life Ins. Co. v. Glenn* ..................................................... 5, 6
___ S.Ct. ____, 2008 WL 2444796 (U.S.)

*Saffon v. Wells Fargo & Co. Long Term Disability Plan* ............. 4, 5, 6, 7, 8
522 F.3d 863 (9th Cir. 2008)

**Statutes**:

29 U.S.C. § 1001 et seq. ......................................................................... 1

29 U.S.C. § 1104(a)(1) ............................................................................ 5

29 U.S.C. § 1133 ..................................................................................... 6

**Regulations:**

29 C.F.R. § 2560.503-1(g) ....................................................................... 6

29 C.F.R. § 2560.503-1(h)(2) .................................................................. 7

29 C.F.R. § 2560.503-1(h)(3)(v) .............................................................. 8

# NOTICE OF MOTION AND MOTION

To the parties and their attorneys:

Please take notice that on August 1, 2008, at 9:00 a.m., or as soon thereafter as this matter may be heard, before the Honorable Maxine M. Chesney, United States District Court judge, Plaintiff Patricia Broyles will, and hereby does, move for the court to order *de novo* review of the decision by Real Party In Interest Standard Insurance Company to deny Ms. Broyles' claim for long-term disability benefits.

This motion will be based upon this Notice of Motion and Motion; the Memorandum of Points and Authorities below; the papers and records on file in this action; and such other and further matters as is adduced at the hearing on this matter.

# MEMORANDUM OF POINTS AND AUTHORITIES

This action seeks review of a denial of benefits under a long-term disability plan covered by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq. Plaintiff Patricia Broyles now moves the Court for an order that the Standard's decision to deny benefits will be reviewed under the *de novo* standard.

## I. FACTS.

Patricia Broyles was a claims payable adjuster, first for AUL Corporation and then for its related company, Monticello Adjusting. AR00282, AR00126.[1] In 2001, Ms. Broyles became covered by Monticello's long-term insurance policy with Standard. AR 00126. Monticello later dissolved into AUL. AR 00124. By Amendment No. 2 to the Statement of Coverage in AUL's policy, former Monticello employees became covered by AUL's policy effective April 1, 2005.

---

[1] Citation to pages in Standard's Administrative Record ("AR") to be filed by Plaintiff.

AR 00125.

Under AUL's policy, Standard determines disability during the first 24 months of a claim based on whether the claimant is "unable to perform with reasonable continuity the Material Duties of your own Occupation." AR 00021. The policy defines "Material Duties" as "the essential tasks, functions and operations, and skills, abilities, knowledge, training and experience, generally required by employers from those engaged in a particular occupation that cannot be reasonably modified or omitted." AR 00020. The policy also provides: "Except for those functions which the Group Policy specifically reserves to the Policyowner or Employer, we [Standard] have full and exclusive authority to control and manage the Group Policy, to administer claims, and to interpret the Group Policy and resolve all questions arising in the administration, interpretation and application of the Group Policy." AR 00007.

In March 2005, Ms. Broyles had tendon surgery to treat a painful collapsed right foot. AR 000292. Against her doctor's recommendation, the next month she returned to work at AUL in a cast and using a wheelchair. *Id.* Because of constant pain and swelling, however, she stopped working altogether in September 2005. *Id.*

Ms. Broyles filed a claim for disability benefits under AUL's policy in November 2005. AR 000277-79. Standard received medical records from Dr. Glenn Pfeffer, Ms. Broyles orthopedic surgeon. AR 00183-205. Dr. Pfeffer also completed an Attending Physician's Statement (APS). AR 00181-82.

Standard requested an internal vocational review, which determined that Ms. Broyles' occupation was rated sedentary. AR 00207. Standard also requested a paper medical review of Ms. Broyles file. AR 00208. Anne Jordan, Nurse Consultant, reviewed the file with Dr. David Waldram, and reported back to Standard that he found Ms. Broyles capable of sedentary level work. AR 00210-11.

1    In March 2006, the Standard denied Ms. Broyles claim. AR 000410-12. Ms. Broyles appealed the adverse determination by letter dated August 3, 2006. AR 000372-73. In October, Kathleen Herdell, Ms. Broyles' attorney, sent Standard a packet of additional information to support the appeal, including hospital and physical therapy records. AR 000211-56. The packet also contained a three-page pharmacy print-out of Ms. Broyles' prescription medications from January 2005, which showed Ms. Broyles had numerous prescriptions for the painkillers Vicodin, Lortab Naprosyn, Neurontin, Voltaren and Percoset. Ms. Herdell later sent Standard a fax of a letter from Dr. Pfeffer dated November 20, 2006, in which he stated: "Ms. Broyles has been incapable of working in her own and any other occupation either on a full or part-time basis, including doing sedentary work, since September 15, 2005." AR 00258-59.

In November 2006, Standard requested another paper medical review from Dr. Waldram, who had reviewed Ms. Broyles' file with nurse Jordan for the initial claim determination. AR 00265. Dr. Waldram opined that Ms. Broyles "could work at a sedentary level job on a full-time basis." AR 000263-64.

Standard denied Ms. Broyles' appeal by letter dated February 7, 2007, finding that she was "capable of performing your own occupation following ceased work date of September 14, 2005, no LTD benefits are payable." AR 00414. The Standard then automatically forwarded her file to its Administrative Review Unit for an "independent review." *Id.*

On February 17, 2007, Standard requested a paper file review by an orthopedic physician. AR 00267. A report by Dr. Joseph Mandiberg supported the opinion of Dr. Waldram. AR 00273-75.

A month later, the Standard notified Ms. Broyles that it had upheld its adverse decision on her appeal. AR 00419-24. Standard's letter stated: "In your case we find the medical records do not support that you would have been unable to perform sedentary level work at the

3

time you ceased work.  This is also supported by the APS completed by your orthopedist, Dr. Pfeffer, in December 2005, in which he states that you can perform sedentary level work." AR 000420.

Ms. Broyles then initiated this action.

## II. ARGUMENT.

### A. *De Novo* Review Applies Because Ms. Broyles Obtained Coverage Under the Policy After the California Insurance Commissioner Gave Notice to Insurers Disallowing Policy Language Granting Discretionary Authority.

On February 27, 2004, the California Insurance Commissioner gave notice to all disability insurers doing business in California.  By that notice, the Commissioner withdrew approval of specified policy forms that contain provisions purporting to confer on the insurer discretionary authority to determine eligibility for benefits.  The Insurance Commissioner listed several reasons for the withdrawal of approval. One reason was that in disability policies governed by ERISA, discretionary clauses can limit judicial review of a denial of benefits to a review for abuse of discretion.  In the opinion of the Insurance Commissioner, that standard of review "deprives California insureds of access to the protections of the Insurance Code and in California law."  See Plaintiff's Request for Judicial Notice, Exhibit A, page 2.

The Insurance Commissioner's action does not apply retroactively.  *Saffon v. Wells Fargo & Co. Long Term Disability Plan*, 522 F.3d 863, 867 (9th Cir. 2008).   But because of the Commissioner's action, discretionary language can no longer be a valid provision in disability insurance policies issued after February 27, 2004.

In this case, AUL's policy was amended effective April 1, 2005, to extend coverage to former Monticello employees like Ms. Broyles.  Standard, having had notice that discretionary clauses were officially disapproved in California, should have removed the language in the policy

4

purporting to give it discretionary authority to decide benefit claims. Leaving the discretionary language in the policy was not only contrary to the position of the California Insurance Commissioner, it also violated the ERISA requirement that plan fiduciaries act "solely in the interest of the participants and beneficiaries." 29 U.S.C. § 1104(a)(1).

Moreover, because Ms. Broyles' insurance coverage began in 2005, after the Insurance Commissioner's notice, the discretionary language in the policy should not determine the standard of review for her claim. A new contract was created between Standard and Ms. Broyles when she obtained coverage. *Cf. John Hancock Mutual Life Ins. Co. v. Dorman*, 108 F.2d 220, 223 (9th Cir. 1939)(employee's contract with insurance company made upon issuance of certificate). Thus, because discretionary language was no longer valid in California in 2005, a *de novo* standard of review should apply here.

### B.  Standard's Significant Errors in Processing Ms. Broyles' Claim Justify *De Novo* Review.

Even if the discretionary language is still valid, Standard's decision to deny Ms. Broyles' benefits is not automatically approved under an abuse-of-discretion standard. The court must decide how much deference to give Standard's decision. "A district court, when faced with all the facts and circumstances, must decide in each case how much or how little to credit the plan administrator's reasoning for denying insurance coverage." *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 968. (9th Cir. 2006). "[T]he degree of deference we accord to a claims administrator's decision can vary significantly." *Saffon*, 522 F.3d at 867-68.

Just over a week ago, the Supreme Court gave guidance for this type of situation, namely, a case where a court reviews an adverse decision made by a plan administrator who, like Standard, operates under a conflict of interest in making discretionary benefit determinations. *Metropolitan Life Ins. Co. V. Glenn*, ___ S.Ct. ____, 2008 WL 2444796 (U.S.). In *Glenn*, the Supreme Court adopted a "combination-of-factors method of review" in which the conflict of

5

interest is one factor taken into account to determine how much, if any, deference should be given to the administrator's decision. 2008 WL 2444796, at page 8.  The Supreme Court noted with approval the lower court's focus on factors showing bias in the claims review process, such as the administrator's emphasis on a certain medical report that favored the denial of benefits and its failure to provide all of the relevant information to its medical and vocational experts. *Id.*

Although cases from this circuit are not mentioned in *Glenn*, the Supreme Court's analysis is consistent with the Ninth Circuit's reasoning in *Abatie* and *Saffon*.  Under these decisions, a court may give little or no deference to the decision of a conflicted plan administrator who has discretionary authority to determine claims.

Of particular importance under *Abatie* and *Saffon* is ERISA's requirement that a claimant have a full and fair review of a benefit denial. 29 U.S.C. § 1133.  ERISA regulations prescribe specific claim procedures, and violations of those procedures fall outside an administrator's discretionary authority. *Abatie*, 458 F.3d at 971-72.  A court reviews *de novo* when an administrator's procedural noncompliance is substantial enough to warrant "more stringent judicial review." *Id.* at 971.

Here, *de novo* review is warranted because Standard mishandled Ms. Broyles' claim in several significant respects:

**1.  Standard failed to give Ms. Broyles notification of the additional information necessary to perfect her claim, together with an explanation of why such material or information was necessary.**  This notification is specifically required by the ERISA procedural regulations. 29 C.F.R. § 2560.503-1(g). Standard's initial denial letter of March 28, 2006, made no mention of Dr. Pfeffer's limitation on sitting, and it makes no evaluation of Ms. Broyles' pain. In short, the denial letter fails to mention either of the two grounds of disability.  Instead, Standard acknowledges only a limitation as to standing and walking.  Standard never explained

6

the information that it needed for Ms. Broyles to perfect her claim, yet it ultimately denied her appeal because of "insufficient medical evidence." AR 00424.  This is similar to the situation in *Saffon*, where the claimant was disabled from her desk job because of pain resulting from a degenerative spine condition. As the Court of Appeals explained:

> [W]e have noted that individual reactions to pain are subjective and not easily determined by reference to objective measurements. . . . If [the insurer] is turning down Saffon's application for benefits based on Saffon's failure to produce evidence that simply is not available, that too may bear on the degree of deference the district court shall accord MetLife's decision and on its ultimate determination as to whether Saffon is disabled.

522 F.3d at 873.

What Standard needed in order to grant disability benefits to Ms. Boyles, according to the claims file, was some medical explanation of why it was painful for Ms. Broyles to sit.  Again, the denial letter does not mention sitting at all, even though when requesting a medical review for her appeal, Standard's adjuster asked the consulting physician: "Do the medical records support the claimant's assertion that she is unable to sit due to a foot condition?" AR 000267.

As *Saffon* indicates, a benefits denial letter from the insurance company's adjuster must explain on the key issues *"why* he is unconvinced" and what the claimant "would need to do to convince him." 522 F.3d at 871.  Standard never provided Ms. Broyles with that necessary explanation.

**2. Standard failed to take into account all the information submitted by Ms. Broyles when it reviewed her claim on appeal**.  This, too, is specifically required for a full and fair review under ERISA's procedural regulations. 29 C.F.R. § 2560.503-1(h)(2). Ms. Broyles' attorney sent Standard a stack of relevant medical records, including a pharmacy printout from January 1, 2005 to October 11, 2006. AR 00212-214.  During this period, Ms. Broyles had numerous prescriptions for Vicodin, Lortab Naprosyn, Neurontin, Voltaren and Percoset, all to

relieve pain. The first appeal denial letter dated February 7, 2007, stated that the additional information was reviewed by the "Physician Consultant," who was, in violation of the ERISA procedural regulations [29 C.F.R. § 2560.503(h)(3)(v)], Dr. Waldram, the same physician who did the paper file review for the initial denial. AR 00415. In his report, Dr. Waldram makes slight passing reference to the additional materials, but he makes no meaningful analysis of them. He does not even mention the list of Ms. Broyles' prescription pain medications. AR 00266. Likewise, Dr. Mandiberg, who performed the second paper medical file review, did not mention the long list of prescription medications. AR 00271-72. Possibly, Dr. Mandiberg was misled by what Standard had written on the medical referral requesting a file review. In the Opening Synopsis, Standard wrote: "It is noted that at the time the claimant ceased work she was only taking Aleve to manage her symptoms and her physicians did not recommended [sic] that she cease work." AR 000269. Nothing supports that statement – Aleve is never mentioned in the claims file, and Dr. Pfeffer had indeed advised Ms. Broyles to stop working. This inaccurate statement demonstrates Standard's deficient processing of Ms. Broyles' appeal. Standard had the three-page print-out of Ms. Broyles' prescription painkillers, and it also had Dr. Pfeffer's opinions that Ms. Broyles could not work. Making such a gratuitous statement in a medical review request not only serves to taint the reviewing physician's opinion, but it suggests the administrator's bias against a claim that is based on pain.

**3 . Standard failed to have a meaningful dialogue with Ms. Broyles in deciding whether to grant or deny her benefits.** As interpreted by the Ninth Circuit, the ERISA regulations require for a meaningful dialogue between the claims administrator and the beneficiary. *Saffon*, 522 F.3d at 870; *Booton v. Lockheed Medical Benefit Plan*, 110 F.3d 1461, 1463 (9th Cir. 1997). Taking statements out of context or distorting them to support a denial of benefits show a lack of meaningful dialogue. *Saffon*, 522 F.3d at 873. Here, Standard repeatedly took Dr. Pfeffer's Attending Physician Statement out of context to support its denial of benefits. On the APS, Dr. Pfeffer recommended that his patient stop working because of foot pain. AR 00181. He also answered the question: "What reasonable work or job site modifications could

the employer make to assist the individual to return to work?" Dr. Pfeffer wrote: "Sedentary Work." Standard interpreted this as a release to do sedentary work, which it clearly was not. Later, for Ms .Broyles' appeal, Dr. Pfeffer clarified his opinion that Ms. Broyles was disabled from September 15, 2005 onward, even from sedentary work, on either a full time or part time basis, because she could not "sit, stand or walk for a significant period of time.  My assessment is based on the progression of her injury, the limitations of her physical incapacity, pain medications she has needed to manage her condition, and future medical needs." AR 00258. Yet, despite this detailed clarification, Standard only referenced the APS in its final appeal denial letter, again taking Dr. Pfeffer's two words out of context to conclude that Ms. Broyles "can perform sedentary work." AR 00420.

In summary, because of how it mishandled Ms. Broyles' claim, Standard neither asked nor tried to answer the real question here, namely, whether or not Ms. Broyles was disabled because pain impaired her concentration and rendered her unable to perform the substantial and material duties of her occupation.  Standard recognized only a physical work limitation, that is, Ms. Broyles' statement that she could not sit long enough to work.  But Standard never understood nor properly analyzed the fundamental factor – pain – underlying that statement. Because of its crucial mistakes in claims processing,  Standard failed to give Ms. Broyles' claim the full and fair review required under ERISA.  Accordingly, its decision to deny Ms. Broyles benefits is entitled to no deference by this court.

**III.   CONCLUSION.**

A *de novo* standard of review applies because discretionary language was not allowed when the AUL policy was amended in 2005 to extend insurance coverage to former Monticello employees like Ms. Broyles, who became covered by the policy after the California Insurance Commissioner gave notice disallowing discretionary language.  Even if the discretionary language remains in the policy, this Court should give no deference to Standard's decision to

deny benefits because of its substantial and significant errors in processing Ms. Broyles' claim.

For the foregoing reasons, the Court should grant Plaintiff's motion and issue an order for *de novo* review of the denial of her disability benefits claim.

Dated:   June 27, 2008              Respectfully submitted,

                                                       Law Offices of Laurence F. Padway

By:  _____/s/_____
       Karen K. Wind
       Attorney for plaintiff
       PATRICIA BROYLES