1   Laurence F. Padway (SBN: 089314)
    LAW OFFICES OF LAURENCE F. PADWAY
2   1516 Oak Street, Suite 109
    Alameda, California 94501
3   Telephone:  (510) 814-6100
    Facsimile : (510) 814-0650
4

5   David J. Linden (SBN:  041221)
    P. O. Box 5780
6   Napa, California 94581
    Telephone: (707) 252-7007
7   Facsimile:  (707) 252-7883

8   Attorneys for Plaintiff,
            Patricia Broyles
9

10              **UNITED STATES DISTRICT COURT**

11            **NORTHERN DISTRICT OF CALIFORNIA**

12

13   PATRICIA BROYLES,                         No. C07-05305 MMC

14                                             ADMINISTRATIVE RECORD
                    Plaintiff,                 DISCLOSURES
15        vs.

16   A.U.L. CORPORATION LONG-TERM
     DISABILITY INSURANCE PLAN,
17
                    Defendant,
18   _____/

19   STANDARD INSURANCE COMPANY,

20
                    Real Party In Interest.
21   _____/

22
            Plaintiff, Patricia Broyles, hereby submits the Administrative Record on the above captioned
23
     matter.
24

25   Dated: June 30, 2008              /s/ Laurence F. Padway
                                       Laurence F. Padway
26                                     Attorney for plaintiff

27

28

     Administrative Record                    1

**623691 – A U L CORPORATION – C**

## IMPORTANT NOTICE

**To Members insured under the Group LTD Insurance Policy issued to the above Policyowner. Please attach this notice to your Certificate And Summary Plan Description.**

Each group long term disability policy issued to the above Policyowner has been endorsed as follows:

A. The policy provision entitled "Claims" ("Claims Provisions And Procedures For LTD Benefits" in some policies) is endorsed to add and delete items as follows.

    1.  The item entitled "Documentation" ("Documentation Of Claim" in some policies) is deleted and the following item is added:

        Documentation

        Completed claims statements, a signed authorization for us to obtain information, and any other items we may reasonably require in support of a claim must be submitted at your expense. If the required documentation is not provided within 45 days after we mail our request, your claim may be denied.

    2.  The item entitled "Notice Of Decision On Claim" is deleted and the following item is added:

        Notice Of Decision On Claim

        We will evaluate your claim promptly after you file it. Within 45 days after we receive your claim we will send you: (a) a written decision on your claim; or (b) a notice that we are extending the period to decide your claim for 30 days. Before the end of this extension period we will send you: (a) a written decision on your claim; or (b) a notice that we are extending the period to decide your claim for an additional 30 days. If an extension is due to your failure to provide information necessary to decide the claim, the extended time period for deciding your claim will not begin until you provide the information or otherwise respond.

        If we extend the period to decide your claim, we will notify you of the following: (a) the reasons for the extension; (b) when we expect to decide your claim; (c) an explanation of the standards on which entitlement to benefits is based; (d) the unresolved issues preventing a decision; and (e) any additional information we need to resolve those issues.

        If we request additional information, you will have 45 days to provide the information. If you do not provide the requested information within 45 days, we may decide your claim based on the information we have received.

        If we deny any part of your claim, you will receive a written notice of denial containing:

    a.  The reasons for our decision.

    b.  Reference to the parts of the Group Policy on which our decision is based.

    c.  Reference to any internal rule or guideline relied upon in making our decision.

    d.  A description of any additional information needed to support your claim.

    e.  Information concerning your right to a review of our decision.

    f.  Information concerning your right to bring a civil action for benefits under section 502(a) of ERISA if your claim is denied on review.

Disability/2002 - LTD-TG-Records -DOL – 3B

3. The item entitled "Review Procedure" is deleted and the following item is added:

Review Procedure

If all or part of a claim is denied, you may request a review. You must request a review in writing within 180 days after receiving notice of the denial.

You may send us written comments or other items to support your claim. You may review and receive copies of any non-privileged information that is relevant to your request for review. There will be no charge for such copies. You may request the names of medical or vocational experts who provided advice to us about your claim.

The person conducting the review will be someone other than the person who denied the claim and will not be subordinate to that person. The person conducting the review will not give deference to the initial denial decision. If the denial was based on a medical judgement, the person conducting the review will consult with a qualified health care professional. This health care professional will be someone other than the person who made the original medical judgement and will not be subordinate to that person. Our review will include any written comments or other items you submit to support your claim.

We will review your claim promptly after we receive your request. Within 45 days after we receive your request for review we will send you: (a) a written decision on review; or (b) a notice that we are extending the review period for 45 days. If the extension is due to your failure to provide information necessary to decide the claim on review, the extended time period for review of your claim will not begin until you provide the information or otherwise respond.

If we extend the review period, we will notify you of the following: (a) the reasons for the extension; (b) when we expect to decide your claim on review; and (c) any additional information we need to decide your claim.

If we request additional information, you will have 45 days to provide the information. If you do not provide the requested information within 45 days, we may conclude our review of your claim based on the information we have received.

If we deny any part of your claim on review, you will receive a written notice of denial containing:

a.  The reasons for our decision.

b.  Reference to the parts of the Group Policy on which our decision is based.

c.  Reference to any internal rule or guideline relied upon in making our decision.

d.  Information concerning your right to receive, free of charge, copies of non-privileged documents and records relevant to your claim.

e.  Information concerning your right to bring a civil action for benefits under section 502(a) of ERISA.

The Group Policy does not provide voluntary alternative dispute resolution options. However, you may contact your local U.S. Department of Labor Office and your State insurance regulatory agency for assistance.

B. For purposes of the Endorsement, the terms "we", "us" and "our" mean Standard Insurance Co. The terms "you" and "your" mean the persons insured under the Group Policy.

C. The Endorsement is effective on January 1, 2002, and applies to claims for benefits filed on or after that date.

STANDARD INSURANCE COMPANY

Disability 2002

623691 – A U L CORPORATION – C

## IMPORTANT NOTICE

To Members insured under any Standard Insurance Company Group Policy issued to the above Policyowner and providing coverage for Long Term Disability, Short Term Disability, Life and/or Accidental Death and Dismemberment. Please attach this notice to your Group Insurance Certificate And Summary Plan Description, which replaces the ERISA INFORMATION AND NOTICE OF RIGHTS section existing prior to January 1, 2002.

## ERISA INFORMATION AND NOTICE OF RIGHTS

The following information and notice of rights and protections is furnished by the Plan Administrator as required by the Employee Retirement Income Security Act of 1974 (ERISA)

A.  Termination or Amendment of the Group Policy

The Group Policy that provides benefits for this Plan may be terminated by the Policyowner at any time with prior written notice to Standard Insurance Company.  It will terminate automatically if the Policyowner fails to pay the required premium.

Standard Insurance Company may terminate the Group Policy if the number of persons insured is less than the required minimum, or if Standard believes the Policyowner has failed to perform its obligations relating to the Group Policy.

The Group Policy may be changed in whole or in part. No change or amendment will be valid unless it is approved in writing by a Standard Insurance Company executive officer.

The summary plan description and Group Policy contain the complete termination and amendment provisions.

B.  Statement of Your Rights Under ERISA

1.  Right To Examine Plan Documents

You have the right to examine all Plan documents, including any insurance contracts or collective bargaining agreements, and a copy of the latest annual report (Form 5500 Series) filed with the U.S. Department of Labor and available at the Public Disclosure Room of the Pension and Welfare Benefit Administration.  These documents may be examined free of charge at the Plan Administrator's office.

2.  Right To Obtain Copies of Plan Documents

You have the right to obtain copies of all Plan documents, including any insurance contracts or collective bargaining agreements, a copy of the latest annual report (Form 5500 Series), and updated summary plan description upon written request to the Plan Administrator.  The Plan Administrator may make a reasonable charge for these copies.

3.  Right To Receive A Copy of Annual Report

The Plan Administrator must give you a copy of the Plan's summary annual financial report, if the Plan was required to file an annual report. There will be no charge for the report.

4.  Right to Review of Denied Claims

If your claim for a Plan benefit is denied or ignored, in whole or in part, you have the right: a) to know why this was done; b) to obtain copies of documents relating to the decision, without charge; and c) to have your claim reviewed and reconsidered, all within certain time schedules.

STND1149-00460

C.  Obligations of Fiduciaries

In addition to creating rights for plan participants, ERISA imposes duties upon the people who are responsible for the operation of the Plan. The people who operate the Plan, called "fiduciaries" of the Plan, have a duty to do so prudently and in the interest of all Plan participants and beneficiaries. No one, including your employer, your union, or any other person, may fire you or otherwise discriminate against you in any way to prevent you from obtaining a Plan benefit or exercising your rights under ERISA.

D.  Enforcing ERISA Rights

Under ERISA, there are steps you can take to enforce the above rights. For instance, if you request Plan documents or the latest annual report from the Plan and do not receive them within 30 days, you may file suit in a Federal court. In such a case, the court may require the Plan Administrator to provide the materials and pay you up to $110 a day until you receive the materials, unless the materials were not sent because of reasons beyond the control of the Plan Administrator.

If you have a claim for benefits which is denied or ignored, in whole or in part, you may file suit in a state or Federal court. If it should happen that Plan fiduciaries misuse the Plan's money, or if you are discriminated against for asserting your rights, you may seek assistance from the U.S. Department of Labor, or you may file suit in a Federal court. The court will decide who should pay court costs and legal fees. If you are successful the court may order the person you have sued to pay these costs and fees. If you lose, the court may order you to pay these costs and fees, for example, if it finds your claim is frivolous.

E.  Plan and ERISA Questions

If you have any questions about the Plan, you should contact the Plan Administrator. If you have any questions about this statement or about your rights under ERISA, or if you need assistance in obtaining documents from the Plan Administrator, you should contact the nearest office of the Pension and Welfare Benefits Administration, U.S. Department of Labor, listed in your telephone directory or the Division of Technical Assistance and Inquiries, Pension and Welfare Benefits Administration, U.S. Department of Labor, 200 Constitution Avenue N.W., Washington, DC 20210. You may also obtain certain publications about your rights and responsibilities under ERISA by calling the publications hotline of the Pension and Welfare Benefits Administration.

STANDARD INSURANCE COMPANY

STND1149-00459

**623691 – A U L CORPORATION – WOP2**

## IMPORTANT NOTICE

To Members insured under the Group Life Insurance Policy issued to the above Policyowner. Please attach this notice to your Certificate and Summary Plan Description.

Each group life insurance policy issued to the above Policyowner has been endorsed as follows:

A.  The policy provision entitled "Claims" ("Payment Of Claims" in some policies) is endorsed to add and delete items as follows.

    1.  The item entitled "Notice Of Decision On Claim" is deleted and the following item is added:

        Notice Of Decision On Claim

        We will evaluate a claim for benefits promptly after we receive it. With respect to all claims except Waiver Of Premium claims, within 90 days after we receive the claim we will send the claimant: (a) a written decision on the claim; or (b) a notice that we are extending the period to decide the claim for an additional 90 days.

        With respect to Waiver Of Premium claims, within 45 days after we receive the claim we will send the claimant: (a) a written decision on the claim; or (b) a notice that we are extending the period to decide the claim for 30 days. Before the end of this extension period we will send the claimant: (a) a written decision on the Waiver Of Premium claim; or (b) a notice that we are extending the period to decide the claim for an additional 30 days. If an extension is due to the claimant's failure to provide information necessary to decide the Waiver Of Premium claim, the extended time period for deciding the claim will not begin until the claimant provides the information or otherwise responds.

        If we extend the period to decide the claim, we will notify the claimant of the following: (a) the reasons for the extension; (b) when we expect to decide the claim; (c) an explanation of the standards on which entitlement to benefits is based; (d) the unresolved issues preventing a decision; and (e) any additional information we need to resolve those issues.

        If we request additional information, the claimant will have 45 days to provide the information. If the claimant does not provide the requested information within 45 days, we may decide the claim based on the information we have received.

        If we deny any part of the claim, we will send the claimant a written notice of denial containing:

        1.  The reasons for our decision.

        2.  Reference to the parts of the Group Policy on which our decision is based.

        3.  Reference to any internal rule or guideline relied upon in deciding a Waiver Of Premium claim.

        4.  A description of any additional information needed to support the claim.

        5.  Information concerning the claimant's right to a review of our decision.

        6.  Information concerning the right to bring a civil action for benefits under section 502(a) of ERISA, if the claim is denied on review.

    2.  The item entitled "Review Procedure" is deleted and the following item is added:

        Review Procedure

        If all or part of a claim is denied, the claimant may request a review. The claimant must request a review in writing:

        1.  Within 180 days after receiving notice of the denial of a claim for Waiver Of Premium;

        2.  Within 60 days after receiving notice of the denial of any other claim.

        The claimant may send us written comments or other items to support the claim. The claimant may review and receive copies of any non-privileged information that is relevant to the request for review. There will be no charge for such copies. Our review will include any written comments or other items the claimant submits to support the claim.

STND1149-00458

We will review the claim promptly after we receive the request. With respect to all claims except Waiver Of Premium claims, within 60 days after we receive the request for review we will send the claimant: (a) a written decision on review; or (b) a notice that we are extending the review period for 60 days.

With respect to Waiver Of Premium claims, within 45 days after we receive the request for review we will send the claimant: (a) a written decision on review; or (b) a notice that we are extending the review period for 45 days.

If the extension is due to the claimant's failure to provide information necessary to decide the claim on review, the extended time period for review of the claim will not begin until the claimant provides the information or otherwise responds.

If we extend the review period, we will notify the claimant of the following: (a) the reasons for the extension; (b) when we expect to decide the claim on review; and (c) any additional information we need to decide the claim.

If we request additional information, the claimant will have 45 days to provide the information. If the claimant does not provide the requested information within 45 days, we may conclude our review of the claim based on the information we have received.

With respect to Waiver Of Premium claims, the person conducting the review will be someone other than the person who denied the claim and will not be subordinate to that person. The person conducting the review will not give deference to the initial denial decision. If the denial was based on a medical judgement, the person conducting the review will consult with a qualified health care professional. This health care professional will be someone other than the person who made the original medical judgement and will not be subordinate to that person. The claimant may request the names of medical or vocational experts who provided advice to us about a claim for Waiver Of Premium.

If we deny any part of the claim on review, the claimant will receive a written notice of denial containing:

a.    The reasons for our decision.

b.    Reference to the parts of the Group Policy on which our decision is based.

c.    Reference to any internal rule or guideline relied upon in deciding a Waiver Of Premium claim.

d.    Information concerning the claimant's right to receive, free of charge, copies of non-privileged documents and records relevant to the claim.

e.    Information concerning the right to bring a civil action for benefits under section 502(a) of ERISA.

The Group Policy does not provide voluntary alternative dispute resolution options. However, you may contact your local U.S. Department of Labor Office and your State insurance regulatory agency for assistance.

B.    In some policies the Waiver Of Premium feature is called "CONTINUED LIFE INSURANCE". With respect to those policies the term "CONTINUED LIFE INSURANCE" is substituted for the term "Waiver Of Premium" in the Endorsement.

C.    For purposes of the Endorsement, the terms "we", "us" and "our" mean Standard Insurance Co. The terms "you" and "your" mean the persons insured under the Group Policy.

D.    The Endorsement is effective on January 1, 2002, and applies to claims for benefits filed on or after that date.

**Standard Insurance Co.**

Life/AD&D/2002/Rev

STND1149-00457

623691 – A U L CORPORATION – A

## IMPORTANT NOTICE

**To Members insured under any Standard Insurance Company Group Policy issued to the above Policyowner and providing coverage for Long Term Disability, Short Term Disability, Life and/or Accidental Death and Dismemberment. Please attach this notice to your Group Insurance Certificate And Summary Plan Description, which replaces the ERISA INFORMATION AND NOTICE OF RIGHTS section existing prior to January 1, 2002.**

### ERISA INFORMATION AND NOTICE OF RIGHTS

The following information and notice of rights and protections is furnished by the Plan Administrator as required by the Employee Retirement Income Security Act of 1974 (ERISA)

A. Termination or Amendment of the Group Policy

The Group Policy that provides benefits for this Plan may be terminated by the Policyowner at any time with prior written notice to Standard Insurance Company. It will terminate automatically if the Policyowner fails to pay the required premium.

Standard Insurance Company may terminate the Group Policy if the number of persons insured is less than the required minimum, or if Standard believes the Policyowner has failed to perform its obligations relating to the Group Policy.

The Group Policy may be changed in whole or in part. No change or amendment will be valid unless it is approved in writing by a Standard Insurance Company executive officer.

The summary plan description and Group Policy contain the complete termination and amendment provisions.

B. Statement of Your Rights Under ERISA

  1. Right To Examine Plan Documents

You have the right to examine all Plan documents, including any insurance contracts or collective bargaining agreements, and a copy of the latest annual report (Form 5500 Series) filed with the U.S. Department of Labor and available at the Public Disclosure Room of the Pension and Welfare Benefit Administration. These documents may be examined free of charge at the Plan Administrator's office.

  2. Right To Obtain Copies of Plan Documents

You have the right to obtain copies of all Plan documents, including any insurance contracts or collective bargaining agreements, a copy of the latest annual report (Form 5500 Series), and updated summary plan description upon written request to the Plan Administrator. The Plan Administrator may make a reasonable charge for these copies.

  3. Right To Receive A Copy of Annual Report

The Plan Administrator must give you a copy of the Plan's summary annual financial report, if the Plan was required to file an annual report. There will be no charge for the report.

  4. Right to Review of Denied Claims

If your claim for a Plan benefit is denied or ignored, in whole or in part, you have the right: a) to know why this was done; b) to obtain copies of documents relating to the decision, without charge; and c) to have your claim reviewed and reconsidered, all within certain time schedules.

SI-Life-Records-DOL – 5C

C.  Obligations of Fiduciaries

In addition to creating rights for plan participants, ERISA imposes duties upon the people who are responsible for the operation of the Plan. The people who operate the Plan, called "fiduciaries" of the Plan, have a duty to do so prudently and in the interest of all Plan participants and beneficiaries. No one, including your employer, your union, or any other person, may fire you or otherwise discriminate against you in any way to prevent you from obtaining a Plan benefit or exercising your rights under ERISA.

D.  Enforcing ERISA Rights

Under ERISA, there are steps you can take to enforce the above rights. For instance, if you request Plan documents or the latest annual report from the Plan and do not receive them within 30 days, you may file suit in a Federal court. In such a case, the court may require the Plan Administrator to provide the materials and pay you up to $110 a day until you receive the materials, unless the materials were not sent because of reasons beyond the control of the Plan Administrator.

If you have a claim for benefits which is denied or ignored, in whole or in part, you may file suit in a state or Federal court. If it should happen that Plan fiduciaries misuse the Plan's money, or if you are discriminated against for asserting your rights, you may seek assistance from the U.S. Department of Labor, or you may file suit in a Federal court. The court will decide who should pay court costs and legal fees. If you are successful the court may order the person you have sued to pay these costs and fees. If you lose, the court may order you to pay these costs and fees, for example, if it finds your claim is frivolous.

E.  Plan and ERISA Questions

If you have any questions about the Plan, you should contact the Plan Administrator. If you have any questions about this statement or about your rights under ERISA, or if you need assistance in obtaining documents from the Plan Administrator, you should contact the nearest office of the Pension and Welfare Benefits Administration, U.S. Department of Labor, listed in your telephone directory or the Division of Technical Assistance and Inquiries, Pension and Welfare Benefits Administration, U.S. Department of Labor, 200 Constitution Avenue N.W., Washington, DC 20210. You may also obtain certain publications about your rights and responsibilities under ERISA by calling the publications hotline of the Pension and Welfare Benefits Administration.

STANDARD INSURANCE COMPANY

SI-Life-Records-DOL – 6C

# STANDARD INSURANCE COMPANY

A Stock Life Insurance Company
900 SW Fifth Avenue
Portland, Oregon 97204-1282
(503) 321-7000

*People. Not Just Policies.®*

## CERTIFICATE AND SUMMARY PLAN DESCRIPTION

## GROUP LONG TERM DISABILITY INSURANCE

| | | | |
|---|---|---|---|
| **Policyowner:** | Fleet National Bank, Trustee of The Standard Insurance Company Group | **Employer:** | A.U.L. CORPORATION |
| **Policy Number:** | 638213-T | **Group Number** | 623691-C |
| **Policy Effective Date:** | August 1, 1999 | **Employer Effective Date:** | January 1, 2000 |

The Group Policy has been issued to the Policyowner. The Employer has joined the Standard Insurance Company Group Insurance Trust and been approved for group long term disability insurance coverage under the Group Policy. The Group Policy contains numerous optional and variable provisions. The Employer selects the options and variables it requests be approved for its employees. The options and variables we have approved for the Employer's coverage under the Group Policy are contained in the Statement Of Coverage we provided to the Employer. Only those provisions of the Group Policy which appear in the Statement Of Coverage will apply to the Employer's coverage under the Group Policy.

We certify that you will be insured according to the terms of your Employer's coverage under the Group Policy. If the terms of this Certificate and Summary Plan Description differ from the terms of your Employer's coverage under the Group Policy, the latter will govern. If your insurance is changed by an amendment to your Employer's coverage under the Group Policy, we will provide the Employer with a revised Certificate or other notice to be given to you.

Possession of this Certificate does not necessarily mean you are insured. You are insured only if you meet the requirements set out in this Certificate.

The terms "you" and "your" mean the Member. "We", "us", and "our" mean Standard Insurance Company. Other defined terms appear with their initial letters capitalized. Section headings, and references to them, appear in boldface type.

*Ronald E. Timpe*

President

GC190-LTD/TRUST

*♻ Printed on recycled paper.*

# Table of Contents

COVERAGE FEATURES................................................................................... 1
    GENERAL POLICY INFORMATION ...................................................... 1
    SCHEDULE OF INSURANCE ............................................................... 1
    PREMIUM CONTRIBUTIONS .............................................................. 2
    ERISA SUMMARY PLAN DESCRIPTION INFORMATION..................... 3
INSURING CLAUSE ..................................................................................... 4
BECOMING INSURED ................................................................................. 4
WHEN YOUR INSURANCE BECOMES EFFECTIVE..................................... 4
ACTIVE WORK PROVISIONS........................................................................ 5
CONTINUITY OF COVERAGE ...................................................................... 5
WHEN YOUR INSURANCE ENDS ................................................................ 6
WAIVER OF PREMIUM ............................................................................... 6
REINSTATEMENT OF INSURANCE............................................................. 7
DEFINITION OF DISABILITY ...................................................................... 7
RETURN TO WORK PROVISIONS................................................................ 7
REASONABLE ACCOMMODATION EXPENSE BENEFIT............................. 8
REHABILITATION PLAN PROVISION ......................................................... 9
TEMPORARY RECOVERY ........................................................................... 10
WHEN LTD BENEFITS END ...................................................................... 10
PREDISABILITY EARNINGS ...................................................................... 11
DEDUCTIBLE INCOME.............................................................................. 11
EXCEPTIONS TO DEDUCTIBLE INCOME.................................................. 12
RULES FOR DEDUCTIBLE INCOME ......................................................... 13
SUBROGATION .......................................................................................... 14
ASSISTED LIVING BENEFIT ...................................................................... 14
SURVIVORS BENEFIT ................................................................................ 15
BENEFITS AFTER INSURANCE ENDS OR IS CHANGED........................... 17
EFFECT OF NEW DISABILITY.................................................................... 17
DISABILITIES EXCLUDED FROM COVERAGE .......................................... 17
DISABILITIES SUBJECT TO LIMITED PAY PERIODS ............................... 18
LIMITATIONS ............................................................................................ 19
CLAIMS...................................................................................................... 19
ALLOCATION OF AUTHORITY................................................................... 20
TIME LIMITS ON LEGAL ACTIONS ........................................................... 21
INCONTESTABILITY PROVISIONS............................................................. 22
CLERICAL ERROR, AGENCY, AND MISSTATEMENT ................................ 22
TERMINATION OR AMENDMENT OF GROUP POLICY OR EMPLOYER COVERAGE . 23
DEFINITIONS............................................................................................. 23
ERISA INFORMATION AND NOTICE OF YOUR RIGHTS ........................... 24
    .................................................................................................. 25

STND1149-00453

# Index of Defined Terms

Active Work, Actively At Work, 5
Activities Of Daily Living, 15
Allowable Periods, 10
Any Occupation, 8
Any Occupation Period, 2
Assisted Living Benefit, 2, 15

Bathing, 15
Benefit Waiting Period, 2, 24

Class Definition, 1
Continence, 15
Contributory, 24
CPI-W, 24

Deductible Income, 12
Disabled, 7
Dressing, 15

Eating, 15
Eligibility Waiting Period, 2
Employer, 24
Employer Effective Date, 1
Employer(s), 1
Evidence Of Insurability, 5

Group Number, 1
Group Policy, 24
Group Policy Effective Date, 1
Group Policy Number, 1

Hands-on Assistance, 15
Hospital, 19

Indexed Predisability Earnings, 24
Injury, 24

LTD Benefit, 24

Material Duties, 8
Maximum Benefit Period, 2, 24
Maximum LTD Benefit, 2
Member, 1, 4
Mental Disorder, 19
Minimum LTD Benefit, 2

Noncontributory, 24

Own Occupation, 8
Own Occupation Period, 2

Physical Disease, 24
Physician, 24
Policyowner, 1
Predisability Earnings, 11
Preexisting Condition, 18
Pregnancy, 24
Prior Plan, 24
Proof Of Loss, 20

Reasonable Accommodation Expense
   Benefit, 9
Rehabilitation Plan, 10

Severe Cognitive Impairment, 16
Standby Assistance, 15
Substance Abuse, 19
Substantial Supervision, 16
Survivors Benefit, 17

Temporary Recovery, 10
Toileting, 15
Transferring, 15

War, 18
Work Earnings, 9

STND1149-00452

## COVERAGE FEATURES

This section contains many of the features of your long term disability (LTD) insurance. Other provisions, including exclusions, limitations, and Deductible Income, appear in other sections. Please refer to the text of each section for full details. The Table of Contents and the Index of Defined Terms help locate sections and definitions.

## GENERAL POLICY INFORMATION

| | |
|---|---|
| Group Policy Number: | 638213-T |
| Policyowner: | Fleet National Bank, Trustee of the Standard Insurance Insurance Company Group Insurance Trust<br>One Constitution Plaza, 14th Floor<br>Hartford, CT 06115 |
| Employer(s): | A.U.L. CORPORATION |
| Group Number: | 623691-C |
| Group Policy Effective Date: | August 1, 1999 |
| Employer Effective Date: | January 1, 2000 |
| Policy Issued in: | Rhode Island |

Member means:

1. A regular employee of the Employer;

2. Actively At Work at least 30 hours each week (for purposes of the Member definition, Actively At Work will include regularly scheduled days off, holidays, or vacation days, so long as the person is capable of Active Work on those days); and

3. A citizen or resident of the United States or Canada.

Member does not include a temporary or seasonal employee, a full-time member of the armed forces of any country, a leased employee, or an independent contractor.

Class Definition:    None

## SCHEDULE OF INSURANCE

Eligibility Waiting Period:

You are eligible on one of the following dates, but not before the Group Policy Effective Date:

If you are a Member on the Employer Effective Date, you are eligible on the first day of the calendar month coinciding with or next following 60 consecutive days as a Member.

If you become a Member after the Employer Effective Date, you are eligible on the first day of the calendar month coinciding with or next following 60 consecutive days as a Member.

STND1149-00451

Eligibility Waiting Period means the period you must be a Member before you become eligible for insurance.

| | |
|---|---|
| Own Occupation Period: | The first 24 months for which LTD Benefits are paid. |
| Any Occupation Period: | From the end of the Own Occupation Period to the end of the Maximum Benefit Period. |

| | |
|---|---|
| LTD Benefit: | 60% of the first $10,000 of your Predisability Earnings, reduced by Deductible Income. |
| Maximum LTD Benefit: | $6,000 before reduction by Deductible Income. |
| Minimum LTD Benefit: | $100 |
| Assisted Living Benefit: | An additional 40% of the first $10,000 of your Predisability Earnings, but not to exceed $4,000. The Assisted Living Benefit is not reduced by Deductible Income. |
| Benefit Waiting Period: | 90 days |
| Maximum Benefit Period: | Determined by your age when Disability begins, as follows: |

| Age | Maximum Benefit Period |
|---|---|
| 61 or younger | To age 65, or 3 years 6 months, if longer. |
| 62 | 3 years 6 months |
| 63 | 3 years |
| 64 | 2 years 6 months |
| 65 | 2 years |
| 66 | 1 year 9 months |
| 67 | 1 year 6 months |
| 68 | 1 year 3 months |
| 69 or older | 1 year |

## PREMIUM CONTRIBUTIONS

| | |
|---|---|
| Insurance is: | Noncontributory |

STND1149-00450

## ERISA SUMMARY PLAN DESCRIPTION INFORMATION

Name of Plan:  Long Term Disability Insurance

Name, Address of Plan Sponsor:  A.U.L. CORPORATION
1500 3rd Street Ste A
Napa CA  94559

Plan Sponsor Tax ID Number:  68-0300949

Plan Number:  504

Type of Plan:  Group Insurance Plan

Type of Administration:  Contract Administration

Name, Address, Phone
Number of Plan Administrator:  Plan Sponsor
(707) 257-9700

Name, Address of Registered Agent
for Service of Legal Process:  Plan Administrator

If Legal Process Involves Claims
For Benefits Under The Group
Policy, Additional Notification of
Legal Process Must Be Sent To:  Standard Insurance Company
1100 SW 6th Ave
Portland OR 97204-1093

Sources of Contributions:  Employer

Funding Medium:  Standard Insurance Company - Fully Insured

Plan Fiscal Year End:  October 31

STND1149-00449

## INSURING CLAUSE

If you become Disabled while insured under the Group Policy, we will pay LTD Benefits according to the terms of your Employer's coverage under the Group Policy after we receive Proof Of Loss satisfactory to us.

LT.IC.OT.2

## BECOMING INSURED

To become insured you must be a Member, complete your Eligibility Waiting Period, and meet the requirements in **Active Work Provisions** and **When Your Insurance Becomes Effective**.

You are a Member if you are:

1.  A regular employee of the Employer;

2.  Actively At Work at least 30 hours each week (for purposes of the Member definition, Actively At Work will include regularly scheduled days off, holidays, or vacation days, so long as you are capable of Active Work on those days); and

3.  A citizen or resident of the United States or Canada.

You are not a Member if you are a temporary or seasonal employee, a full-time member of the armed forces of any country, a leased employee, or an independent contractor.

Eligibility Waiting Period means the period you must be a Member before you become eligible for insurance. Your Eligibility Waiting Period is shown in the **Coverage Features**.

(VAR MBR DEF)    LT.BI.OT.1

## WHEN YOUR INSURANCE BECOMES EFFECTIVE

A.  When Insurance Becomes Effective

Subject to the **Active Work Provisions**, your insurance becomes effective as follows:

1.  Insurance Subject To Evidence Of Insurability

Insurance subject to Evidence Of Insurability becomes effective on the date we approve your Evidence Of Insurability.

2.  Insurance Not Subject To Evidence of Insurability

The **Coverage Features** states whether insurance is Contributory or Noncontributory.

a.  Noncontributory Insurance

Noncontributory insurance not subject to Evidence Of Insurability becomes effective on the date you become eligible.

b.  Contributory Insurance

You must apply in writing for Contributory Insurance and agree to pay premiums. Contributory Insurance not subject to Evidence Of Insurability becomes effective on:

i.  The date you become eligible if you apply on or before that date; or

ii.  The date you apply if you apply within 31 days after you become eligible.

Late application: Evidence Of Insurability is required if you apply more than 31 days after you become eligible.

STND1149-00448

B. Takeover Provisions

1. If you were insured under the Prior Plan on the day before the effective date of your Employer's coverage under the Group Policy, your Eligibility Waiting Period is waived on the effective date of your Employer's coverage under the Group Policy.

2. You must submit satisfactory Evidence Of Insurability to become insured if you were eligible for insurance under the Prior Plan for more than 31 days but were not insured.

C. Evidence Of Insurability Requirement

Evidence Of Insurability satisfactory to us is required:

a. For late application for Contributory insurance.

b. For Members eligible but not insured under the Prior Plan.

c. For reinstatements if required.

d. If you were required to provide Evidence Of Insurability during a prior period of eligibility under the Group Policy and either (1) you did not provide Evidence Of Insurability; or (2) we disapproved your Evidence Of Insurability.

Providing Evidence Of Insurability means you must:

1. Complete and sign our medical history statement;

2. Sign our form authorizing us to obtain information about your health;

3. Undergo a physical examination, if required by us, which may include blood testing; and

4. Provide any additional information about your insurability that we may reasonably require.

(VAR EOI)    LT.EF.OT.1

## ACTIVE WORK PROVISIONS

A. Active Work Requirement

You must be capable of Active Work on the day before the scheduled effective date of your insurance or your insurance will not become effective as scheduled. If you are incapable of Active Work because of Physical Disease, Injury, Pregnancy or Mental Disorder on the day before the scheduled effective date of your insurance, your insurance will not become effective until the day after you complete one full day of Active Work as an eligible Member.

Active Work and Actively At Work mean performing with reasonable continuity the Material Duties of your Own Occupation at your Employer's usual place of business.

B. Changes In Insurance

This Active Work requirement also applies to any increase in your insurance.

LT.AW.OT.1

## CONTINUITY OF COVERAGE

If your Disability is subject to the Preexisting Condition Exclusion, LTD Benefits will be payable if:

1. You were insured under the Prior Plan on the day before the effective date of your Employer's coverage under the Group Policy;

2. You became insured under the Group Policy when your insurance under the Prior Plan ceased;

623691-C

STND1149-00447

3. You were continuously insured under the Group Policy from the effective date of your insurance under the Group Policy through the date you became Disabled from the Preexisting Condition; and

4. Benefits would have been payable under the terms of the Prior Plan if it had remained in force, taking into account the preexisting condition exclusion, if any, of the Prior Plan.

For such a Disability, the amount of your LTD Benefit will be the lesser of:

a. The monthly benefit that would have been payable under the terms of the Prior Plan if it had remained in force; or

b. The LTD Benefit payable under the terms of your Employer's coverage under the Group Policy, but without application of the Preexisting Condition Exclusion.

Your LTD Benefits for such a Disability will end on the earlier of the following dates:

a. The date benefits would have ended under the terms of the Prior Plan if it had remained in force; or

b. The date LTD Benefits end under the terms of your Employer's coverge under the Group Policy.

**(PX)   LT.CC.OT.2**

## WHEN YOUR INSURANCE ENDS

Your insurance ends automatically on the earliest of:

1. The date the last period ends for which a premium contribution was made for your insurance.

2. The date the Group Policy terminates.

3. The date your Employer's coverage under the Group Policy terminates.

4. The date your employment terminates.

5. The date you cease to be a Member. However, your insurance will be continued during the following periods when you are absent from Active Work, unless it ends under any of the above.

a. During the first 90 days of a temporary or indefinite administrative or involuntary leave of absence or sick leave, provided your Employer is paying you at least the same Predisability Earnings paid to you immediately before you ceased to be a Member. A period when you are absent from Active Work as part of a severance or other employment termination agreement is not a leave of absence, even if you are receiving the same Predisability Earnings.

b. During a leave of absence if continuation of your insurance under the Group Policy is required by a state-mandated family or medical leave act or law.

c. During any other temporary leave of absence approved by your Employer in advance and in writing and scheduled to last 30 days or less. A period of Disability is not a leave of absence.

**LT.EN.OT.2**

## WAIVER OF PREMIUM

We will waive payment of premium for your insurance while LTD Benefits are payable.

**LT.WP.OT.1**

623691-C

STND1149-00446

# REINSTATEMENT OF INSURANCE

If your insurance ends, you may become insured again as a new Member.  However, the following will apply:

1.  If you cease to be a Member because of a covered Disability, your insurance will end; however, if you become a Member again immediately after LTD Benefits end, the Eligibility Waiting Period will be waived and, with respect to the condition(s) for which LTD Benefits were payable, the Preexisting Condition Exclusion will be applied as if your insurance had remained in effect during that period of Disability.

2.  If your insurance ends because you cease to be a Member for any reason other than a covered Disability, and if you become a Member again within 90 days, the Eligibility Waiting Period will be waived.

3.  If your insurance ends because you fail to make a required premium contribution, you must provide Evidence Of Insurability to become insured again.

4.  If your insurance ends because you are on a federal or state-mandated family or medical leave of absence, and you become a Member again immediately following the period allowed, your insurance will be reinstated pursuant to the federal or state-mandated family or medical leave act or law.

5.  The Preexisting Conditions Exclusion will be applied as if insurance had remained in effect in the following instances:

    a.  If you become insured again within 90 days.

    b.  If required by federal or state-mandated family or medical leave act or law and you become insured again immediately following the period allowed under the family or medical leave act or law.

6.  In no event will insurance be retroactive.

LT.RE.OT.1

# DEFINITION OF DISABILITY

You are Disabled if you meet the following definitions during the periods they apply:

    A.  Own Occupation Definition Of Disability.

    B.  Any Occupation Definition Of Disability.

A.  Own Occupation Definition Of Disability

During the Benefit Waiting Period and the Own Occupation Period you are required to be Disabled only from your Own Occupation.

You are Disabled from your Own Occupation if, as a result of Physical Disease, Injury, Pregnancy or Mental Disorder:

1.  You are unable to perform with reasonable continuity the Material Duties of your Own Occupation; and

2.  You suffer a loss of at least 20% in your Indexed Predisability Earnings when working in your Own Occupation.

Note: You are not Disabled merely because your right to perform your Own Occupation is restricted, including a restriction or loss of license.

623691-C

STND1149-00445

During the Own Occupation Period you may work in another occupation while you meet the Own Occupation Definition Of Disability. However, you will no longer be Disabled when your Work Earnings from another occupation meet or exceed 80% of your Indexed Predisability Earnings. Your Work Earnings may be Deductible Income. See **Return To Work Provisions** and **Deductible Income**.

Own Occupation means any employment, business, trade, profession, calling or vocation that involves Material Duties of the same general character as the occupation you are regularly performing for your Employer when Disability begins. In determining your Own Occupation, we are not limited to looking at the way you perform your job for your Employer, but we may also look at the way the occupation is generally performed in the national economy. If your Own Occupation involves the rendering of professional services and you are required to have a professional or occupational license in order to work, your Own Occupation is as broad as the scope of your license.

Material Duties means the essential tasks, functions and operations, and the skills, abilities, knowledge, training and experience, generally required by employers from those engaged in a particular occupation that cannot be reasonably modified or omitted. In no event will we consider working an average of more than 40 hours per week to be a Material Duty.

B.  Any Occupation Definition Of Disability

During the Any Occupation Period you are required to be Disabled from all occupations.

You are Disabled from all occupations if, as a result of Physical Disease, Injury, Pregnancy or Mental Disorder, you are unable to perform with reasonable continuity the Material Duties of Any Occupation.

Any Occupation means any occupation or employment which you are able to perform, whether due to education, training, or experience, which is available at one or more locations in the national economy and in which you can be expected to earn at least 60% of your Indexed Predisability Earnings within twelve months following your return to work, regardless of whether you are working in that or any other occupation.

Material Duties means the essential tasks, functions and operations, and the skills, abilities, knowledge, training and experience, generally required by employers from those engaged in a particular occupation that cannot be reasonably modified or omitted. In no event will we consider working an average of more than 40 hours per week to be a Material Duty.

Your Own Occupation Period and Any Occupation Period are shown in the **Coverage Features**.

**(OWN_ANY_WITH 40)    LT.DD.OT.1**

## RETURN TO WORK PROVISIONS

A.  Return To Work Responsibility

During the Own Occupation Period no LTD Benefits will be payable for any period when you are able to work in your Own Occupation and able to earn at least 20% of your Indexed Predisability Earnings, but you elect not to work.

During the Any Occupation Period no LTD Benefits will be payable for any period when you are able to work in Any Occupation and able to earn at least 20% of your Indexed Predisability Earnings, but you elect not to work.

B.  Return To Work Incentive

You may serve your Benefit Waiting Period while working if you meet the Own Occupation Definition Of Disability.

STND1149-00444

You are eligible for the Return To Work Incentive on the first day you work after the Benefit Waiting Period if LTD Benefits are payable on that date. The Return To Work Incentive changes 12 months after that date, as follows:

1. During the first 12 months, your Work Earnings will be Deductible Income as determined in a., b. and c:

   a. Determine the amount of your LTD Benefit as if there were no Deductible Income, and add your Work Earnings to that amount.

   b. Determine 100% of your Indexed Predisability Earnings.

   c. If a. is greater than b., the difference will be Deductible Income.

2. After those first 12 months, 50% of your Work Earnings will be Deductible Income.

C. Work Earnings Definition

Work Earnings means your gross monthly earnings from work you perform while Disabled, plus the earnings you could receive if you worked as much as you are able to, considering your Disability, in work that is reasonably available:

a. In your Own Occupation during the Own Occupation Period; and

b. In Any Occupation during the Any Occupation Period.

Work Earnings includes earnings from your Employer, any other employer, or self-employment, and any sick pay, vacation pay, annual or personal leave pay or other salary continuation earned or accrued while working.

Earnings from work you perform will be included in Work Earnings when you have the right to receive them. If you are paid in a lump sum or on a basis other than monthly, we will prorate your Work Earnings over the period of time to which they apply. If no period of time is stated, we will use a reasonable one.

In determining your Work Earnings we:

1. Will use the financial accounting method you use for income tax purposes, if you use that method on a consistent basis.

2. Will not be limited to the taxable income you report to the Internal Revenue Service.

3. May ignore expenses under section 179 of the IRC as a deduction from your gross earnings.

4. May ignore depreciation as a deduction from your gross earnings.

5. May adjust the financial information you give us in order to clearly reflect your Work Earnings.

If we determine that your earnings vary substantially from month to month, we may determine your Work Earnings by averaging your earnings over the most recent three-month period. During the Own Occupation Period you will no longer be Disabled when your average Work Earnings over the last three months exceed 80% of your Indexed Predisability Earnings. During the Any Occupation Period you will no longer be Disabled when your average Work Earnings over the last three months exceed 60% of your Indexed Predisability Earnings.

LT.RW.OT.1

## REASONABLE ACCOMMODATION EXPENSE BENEFIT

If you return to work in any occupation for any employer, not including self-employment, as a result of a reasonable accommodation made by such employer, we will pay that employer a Reasonable Accommodation Expense Benefit of up to $25,000, but not to exceed the expenses incurred.

STND1149-00443

The Reasonable Accommodation Expense Benefit is payable only if the reasonable accommodation is approved by us in writing prior to its implementation.

LT.RA.OT.1

## REHABILITATION PLAN PROVISION

While you are Disabled you may qualify to participate in a Rehabilitation Plan. Rehabilitation Plan means a written plan, program or course of vocational training or education that is intended to prepare you to return to work.

To participate in a Rehabilitation Plan you must apply on our forms or in a letter to us. The terms, conditions and objectives of the plan must be accepted by you and approved by us in advance. We have the sole discretion to approve your Rehabilitation Plan.

An approved Rehabilitation Plan may include our payment of some or all of the expenses you incur in connection with the plan, including:

a.    Training and education expenses.

b.    Family care expenses.

c.    Job-related expenses.

d.    Job search expenses.

LT.RH.OT.1

## TEMPORARY RECOVERY

You may temporarily recover from your Disability and then become Disabled again from the same cause or causes without having to serve a new Benefit Waiting Period. Temporary Recovery means you cease to be Disabled for no longer than the applicable Allowable Period. See **Definition Of Disability.**

A.   Allowable Periods

1.   During the Benefit Waiting Period: a total of 30 days of recovery.

2.   During the Maximum Benefit Period: 180 days for each period of recovery.

B.   Effect Of Temporary Recovery

If your Temporary Recovery does not exceed the Allowable Periods, the following will apply.

1.   The Predisability Earnings used to determine your LTD Benefit will not change.

2.   The period of Temporary Recovery will not count toward your Benefit Waiting Period, your Maximum Benefit Period or your Own Occupation Period.

3.   No LTD Benefits will be payable for the period of Temporary Recovery.

4.   No LTD Benefits will be payable after benefits become payable to you under any other disability insurance plan under which you become insured during your period of Temporary Recovery.

5.   Except as stated above, the provisions of the Group Policy will be applied as if there had been no interruption of your Disability.

LT.TR.OT.1

STND1149-00442

## WHEN LTD BENEFITS END

Your LTD Benefits end automatically on the earliest of:

1. The date you are no longer Disabled.

2. The date your Maximum Benefit Period ends.

3. The date you die.

4. The date benefits become payable under any other LTD plan under which you become insured through employment during a period of Temporary Recovery.

5. The date you fail to provide proof of continued Disability and entitlement to LTD Benefits.

LT.BE.OT.1

## PREDISABILITY EARNINGS

Your Predisability Earnings will be based on your earnings in effect on your last full day of Active Work. Any subsequent change in your earnings after that last full day of Active Work will not affect your Predisability Earnings.

A.  Partners, P.C. Partners, Owner-Employees, Sole Proprietors and S-Corporation Shareholders

If you are a Partner, Owner-Employee, Sole Proprietor or S-Corporation Shareholder, Predisability Earnings means your average monthly compensation from your Employer during the Employer's prior tax year. If you are a P.C. Partner, Predisability Earnings means the average monthly compensation received by your professional corporation from the partnership during the prior tax year. Your average monthly compensation is determined by adding the following amounts as reported on the applicable Schedule K-1, Schedule C, Form W-2 or S-Corporation federal income tax return, and dividing by 12 (or by the number of months you were a Partner, P.C. Partner, Owner-Employee, Sole Proprietor or S-Corporation Shareholder if less than 12):

1.  Your ordinary income (loss) from trade or business activity(ies).

2.  Your guaranteed payments, if you are a Partner.

3.  Your net profit from business.

4.  Your compensation (as an officer), salary, or wages, if you are an S-Corporation Shareholder.

If you were not a Partner, P.C. Partner, Owner-Employee, Sole Proprietor or S-Corporation Shareholder during the entire prior tax year, your Predisability Earnings will be your average monthly compensation for your period as a Partner, P.C. Partner, Owner-Employee, Sole Proprietor or S-Corporation Shareholder.

B.  All Other Members

Predisability Earnings means your monthly rate of earnings from your Employer, including:

1.  Commissions averaged over the preceding 12 months or over the period of your employment if less than 12 months.

2.  Shift differential pay.

Predisability Earnings does not include:

1.  Bonuses.

2.  Overtime pay.

3.  Any other extra compensation.

STND1149-00441

If you are paid on an annual contract basis, your monthly rate of earnings is one-twelfth (1/12th) of your annual contract salary.

If you are paid hourly, your monthly rate of earnings is based on your hourly pay rate multiplied by the number of hours you are regularly scheduled to work per month, but not more than 173 hours. If you do not have regular work hours, your monthly rate of earnings is based on the average number of hours you worked per month during the preceding 12 calendar months (or during your period of employment if less than 12 months), but not more than 173 hours.

C.  All Members

Predisability Earnings includes:

1.  Contributions you make through a salary reduction agreement with your Employer to:

   a.  An Internal Revenue Code (IRC) Section 401(k), 403(b), 408(k), 408(p), or 457 deferred compensation arrangement; or

   b.  An executive nonqualified deferred compensation arrangement.

2.  Amounts contributed to your fringe benefits according to a salary reduction agreement under an IRC Section 125 plan.

Predisability Earnings does not include your Employer's contributions on your behalf to any deferred compensation arrangement or pension plan.

(K1_REG WITH COM)   LI.PD.OT.2

## DEDUCTIBLE INCOME

Subject to **Exceptions To Deductible Income**, Deductible Income means:

1.  Sick pay, annual or personal leave pay, severance pay, or other salary continuation, including donated amounts, (but not vacation pay) paid to you by your Employer, if it exceeds the amount found in a., b., and c.

   a.  Determine the amount of your LTD Benefit as if there were no Deductible Income, and add your sick pay or other salary continuation to that amount.

   b.  Determine 100% of your Indexed Predisability Earnings.

   c.  If a. is greater than b., the difference will be Deductible Income.

2.  Your Work Earnings, as described in the **Return To Work Provisions**.

3.  Any amount you receive or are eligible to receive because of your disability, including amounts for partial or total disability, whether permanent, temporary, or vocational, under any of the following:

   a.  A workers' compensation law;

   b.  The Jones Act;

   c.  Maritime Doctrine of Maintenance, Wages, or Cure;

   d.  Longshoremen's and Harbor Worker's Act; or

   e.  Any similar act or law.

4.  Any amount you, your spouse, or your child under age 18 receive or are eligible to receive because of your disability or retirement under:

   a.  The Federal Social Security Act;

   b.  The Canada Pension Plan;

STND1149-00440

c.   The Quebec Pension Plan;

d.   The Railroad Retirement Act; or

e.   Any similar plan or act.

**Full offset:**  Both the primary benefit (the benefit awarded to you) and dependents benefit are Deductible Income.

Benefits your spouse or a child receives or are eligible to receive because of your disability are Deductible Income regardless of marital status, custody, or place of residence.  The term "child" has the meaning given in the applicable plan or act.

5.   Any amount you receive or are eligible to receive because of your disability under any state disability income benefit law or similar law.

6.   Any amount you receive or are eligible to receive because of your disability under another group insurance coverage.

7.   Any disability or retirement benefits you receive under your Employer's retirement plan.

8.   Any earnings or compensation included in Predisability Earnings which you receive or are eligible to receive while LTD Benefits are payable.

9.   Any amount you receive or are eligible to receive under any unemployment compensation law or similar act or law.

10.  Any amount you receive or are eligible to receive from or on behalf of a third party because of your disability, whether by judgement, settlement or other method.  If you notify us before filing suit or settling your claim against such third party, the amount used as Deductible Income will be reduced by a pro rata share of your costs of recovery, including reasonable attorney fees.

11.  Any amount you receive by compromise, settlement, or other method as a result of a claim for any of the above, whether disputed or undisputed.

(NO OTHER OFFST_PRIV_WITH 3RD)   LT.DI.OT.1

## EXCEPTIONS TO DEDUCTIBLE INCOME

Deductible Income does not include:

1.   Any cost of living increase in any Deductible Income other than Work Earnings, if the increase becomes effective while you are Disabled and while you are eligible for the Deductible Income.

2.   Reimbursement for hospital, medical, or surgical expense.

3.   Reasonable attorneys fees incurred in connection with a claim for Deductible Income.

4.   Benefits from any individual disability insurance policy.

5.   Early retirement benefits under the Federal Social Security Act which are not actually received.

6.   Group credit or mortgage disability insurance benefits.

7.   Accelerated death benefits paid under a life insurance policy.

8.   Benefits from the following:

a.   Profit sharing plan.

b.   Thrift or savings plan.

c.   Deferred compensation plan.

d.   Plan under IRC Section 401(k), 408(k), 408(p), or 457.

623691-C

STND1149-00439

e.  Individual Retirement Account (IRA).

f.  Tax Sheltered Annuity (TSA) under IRC Section 403(b).

g.  Stock ownership plan.

h.  Keogh (HR-10) plan.

9.  The following amounts under your Employer's retirement plan:

a.  A lump sum distribution of your entire interest in the plan.

b.  Any amount which is attributable to your contributions to the plan.

c.  Any amount you could have received upon termination of employment without being disabled or retired.

(PRIV _NO OTHER OFFST)    LT.ED.OT.1

## RULES FOR DEDUCTIBLE INCOME

A.  Monthly Equivalents

Each month we will determine your LTD Benefit using the Deductible Income for the same monthly period, even if you actually receive the Deductible Income in another month.

If you are paid Deductible Income in a lump sum or by a method other than monthly, we will determine your LTD Benefit using a prorated amount. We will use the period of time to which the Deductible Income applies. If no period of time is stated, we will use a reasonable one.

B.  Your Duty To Pursue Deductible Income

You must pursue Deductible Income for which you may be eligible. We may ask for written documentation of your pursuit of Deductible Income. You must provide it within 60 days after we mail you our request. Otherwise, we may reduce your LTD Benefits by the amount we estimate you would be eligible to receive upon proper pursuit of the Deductible Income.

C.  Pending Deductible Income

We will not deduct pending Deductible Income until it becomes payable. You must notify us of the amount of the Deductible Income when it is approved. You must repay us for the resulting overpayment of your claim.

D.  Overpayment Of Claim

We will notify you of the amount of any overpayment of your claim under any group disability insurance policy issued by us. You must immediately repay us. You will not receive any LTD Benefits until we have been repaid in full. In the meantime, any LTD Benefits paid, including the Minimum LTD Benefit, will be applied to reduce the amount of the overpayment. We may charge you interest at the legal rate for any overpayment which is not repaid within 30 days after we first mail you notice of the amount of the overpayment.

LT.RU.OT.1

## SUBROGATION

If LTD Benefits are paid or payable to you under the Group Policy as the result of any act or omission of a third party, we will be subrogated to all rights of recovery you may have in respect to such act or omission. You must execute and deliver to us such instruments and papers as may be required to do whatever else is needed to secure such rights. You must avoid doing anything that would prejudice our rights of subrogation.

STND1149-00438

If you notify us before filing suit or settling your claim against such third party, the amount to which we are subrogated will be reduced by a pro rata share of your costs of recovery, including reasonable attorney fees. If suit or action is filed, we may record a notice of payments of LTD Benefits, and such notice shall constitute a lien on any judgement recovered.

If you or your legal representative fail to bring suit or action promptly against such third party, we may institute such suit or action in our name or in your name. We are entitled to retain from any judgement recovered the amount of LTD Benefits paid or to be paid to you or on your behalf, together with our costs of recovery, including attorney fees. The remainder of such recovery, if any, shall be paid to you or as the court may direct.

LT.SG.OT.1

## ASSISTED LIVING BENEFIT

A.  Assisted Living Benefit

If you meet the requirements in 1 through 3 below, we will pay Assisted Living Benefits according to the terms of the Group Policy after we receive Proof Of Loss satisfactory to us.

Assisted Living Benefit Requirements

1.  You are Disabled and LTD Benefits are payable to you.

2.  While you are Disabled:

a.  You, due to loss of functional capacity as a result of Physical Disease or Injury, become unable to safely and completely perform two or more Activities Of Daily Living without Hands-on Assistance or Standby Assistance; or

b.  You require Substantial Supervision for your health or safety due to Severe Cognitive Impairment as a result of Physical Disease or Injury.

3.  The condition in 2.a or 2.b above is expected to last 90 days or more as certified by a Physician in the appropriate specialty as determined by us.

B.  Definitions For Assisted Living Benefit

Activities Of Daily Living means Bathing, Continence, Dressing, Eating, Toileting, or Transferring.

Bathing means washing oneself, whether in the tub or shower or by sponge bath, with or without the help of adaptive devices.

Continence means voluntarily controlling bowel and bladder function, or, if incontinent, maintaining a reasonable level of personal hygiene.

Dressing means putting on and removing all items of clothing, footwear, and medically necessary braces and artificial limbs.

Eating means getting food and fluid into the body, whether manually, intravenously, or by feeding tube.

Toileting means getting to and from and on and off the toilet, and performing related personal hygiene.

Transferring means moving into or out of a bed, chair or wheelchair, with or without adaptive devices.

Hands-on Assistance means the physical assistance of another person without which the insured would be unable to perform the Activity Of Daily Living.

Standby Assistance means the presence of another person within arm's reach of the insured that is necessary to prevent, by physical intervention, injury to the insured while the insured is

STND1149-00437

performing the Activity Of Daily Living (such as being ready to catch the insured if the insured falls while getting into or out of the bathtub or shower as part of Bathing, or being ready to remove food from the insured throat if the insured chokes while Eating).

Severe Cognitive Impairment means a loss or deterioration in intellectual capacity that is (a) comparable to (and includes) Alzheimer's disease and similar forms of irreversible dementia, and (b) is measured by clinical evidence and standardized tests approved by us that reliably measure impairment in (i) short-term or long-term memory, (ii) orientation as to people, places, or time, and (iii) deductive or abstract reasoning.   Severe Cognitive Impairment does not include loss or deterioration as a result of a Mental Disorder.

Substantial Supervision means continual supervision (which may include cueing by verbal prompting, gestures, or other demonstrations) by another person that is necessary to protect you from threats to your health or safety (such as may result from wandering).

C.   Amount Of The Assisted Living Benefit

The amount of the Assisted Living Benefit is shown in the **Coverage Features**.

D.   Becoming Insured For Assisted Living Benefits

You are eligible for Assisted Living Benefit coverage if you are insured for LTD insurance.  Subject to the **Active Work Provision**, your Assisted Living Benefit coverage becomes effective on the date your LTD insurance becomes effective.

E.   Payment Of Assisted Living Benefits

We will pay Assisted Living Benefits within 60 days after Proof Of Loss is satisfied.  Your Assisted Living Benefits will be paid to you at the same time LTD Benefits are payable.

F.   Time Limits On Filing Proof Of Loss

Proof Of Loss must be provided within 90 days after the date of the loss. If that is not possible, it must be provided as soon as reasonably possible, but not later than one year after that 90-day period.

If Proof Of Loss is filed outside these time limits, the claim will be denied.   These limits will not apply while the claimant lacks legal capacity.

G.   When Assisted Living Benefits End

Assisted Living Benefits end automatically on the earliest of:

1.   The date you no longer meet the requirements in item A. above.

2.   The date your LTD Benefits end.

H.   Assisted Living Benefit Exclusions

No Assisted Living Benefit is payable if your inability to perform Activities Of Daily Living or your Severe Cognitive Impairment is caused or contributed to by:

1.   Use of alcohol, alcoholism, use of any drug, including hallucinogens, or drug addiction.

2.   A Mental Disorder.

I.   When Assisted Living Benefits Coverage Ends

Assisted Living Benefit coverage ends automatically on the earliest of:

1.   The date your LTD insurance ends.

2.   The date Assisted Living Benefit coverage terminates under the Group Policy.

623691-C
STND1149-00436

J.  Assisted Living Benefits After Insurance Ends Or Is Changed

Your right to receive Assisted Living Benefits will not be affected by the occurrence of the events described in 1 or 2 below that become effective after you become Disabled.

1.  Termination or amendment of the Group Policy or your Employer's coverage under the Group Policy.

2.  Termination of Assisted Living Benefit coverage while the Group Policy or your Employer's coverage under the Group Policy remains in force.

LT.LB.OT.1

## SURVIVORS BENEFIT

If you die while LTD Benefits are payable, and on the date you die you have been continuously Disabled for at least 180 days, we will pay a Survivors Benefit according to 1 through 4 below.

1.  The Survivors Benefit is a lump sum equal to 3 times your LTD Benefit without reduction by Deductible Income.

2.  The Survivors Benefit will first be applied to reduce any overpayment of your claim.

3.  The Survivors Benefit will be paid at our option to any one or more of the following:

    a.  Your surviving spouse;

    b.  Your surviving unmarried children, including adopted children, under age 25;

    c.  Your surviving spouse's unmarried children, including adopted children, under age 25; or

    d.  Any person providing the care and support of any person listed in a., b., or c. above.

4.  No Survivors Benefit will be paid if you are not survived by any person listed in a., b., or c. above.

LT.SB.OT.1

## BENEFITS AFTER INSURANCE ENDS OR IS CHANGED

During each period of continuous Disability, we will pay LTD Benefits according to the terms of your Employer's coverage under the Group Policy in effect on the date you become Disabled.  Your right to receive LTD Benefits will not be affected by:

1.  Any amendment to the Group Policy or your Employer's coverage under the Group Policy that is effective after you become Disabled.

2.  Termination of the Group Policy or your Employer's coverage under the Group Policy after you become Disabled.

LT.BA.OT.2

## EFFECT OF NEW DISABILITY

If a period of Disability is extended by a new cause while LTD Benefits are payable, LTD Benefits will continue while you remain Disabled.  However, 1 and 2 apply.

1.  LTD Benefits will not continue beyond the end of the original Maximum Benefit Period.

2.  The **Disabilities Excluded From Coverage, Disabilities Subject To Limited Pay Periods,** and **Limitations** sections will apply to the new cause of Disability.

LT.ND.OT.1

STND1149-00435

# DISABILITIES EXCLUDED FROM COVERAGE

A.  War

You are not covered for a Disability caused or contributed to by War or any act of War.  War means declared or undeclared war, whether civil or international, and any substantial armed conflict between organized forces of a military nature.

B.  Intentionally Self-Inflicted Injury

You are not covered for a Disability caused or contributed to by an intentionally self-inflicted Injury, while sane or insane.

C.  Preexisting Condition

1.  Definition

Preexisting Condition means a mental or physical condition, whether or not diagnosed or misdiagnosed:

a.  For which you have done or for which a reasonably prudent person would have done any of the following:

i.  Consulted a physician or other licensed medical professional;

ii.  Received medical treatment, services or advice;

iii.  Undergone diagnostic procedures, including self-administered procedures;

iv.  Taken prescribed drugs or medications;

b.  Which, as a result of any medical examination, including routine examination, was discovered or suspected;

at any time during the 180-day period just before your insurance becomes effective.

2.  Exclusion

You are not covered for a Disability caused or contributed to by a Preexisting Condition or medical or surgical treatment of a Preexisting Condition unless, on the date you become Disabled, you:

a.  Have been continuously insured under the Group Policy for 24 months; and

b.  Have been Actively At Work for at least one full day after the end of that 24 months.

D.  Loss Of License Or Certification

You are not covered for a Disability caused or contributed to by the loss of your professional license, occupational license or certification.

E.  Violent Or Criminal Conduct

You are not covered for a Disability caused or contributed to by your committing or attempting to commit an assault or felony, or actively participating in a violent disorder or riot.  Actively participating does not include being at the scene of a violent disorder or riot while performing your official duties.

(WITH PRUDNT)   LT.XD.OT.1

623691-C

STND1149-00434

## DISABILITIES SUBJECT TO LIMITED PAY PERIODS

A. Mental Disorders and Substance Abuse

Payment of LTD Benefits is limited to 24 months during your entire lifetime for a Disability caused or contributed to by any one or more of the following, or medical or surgical treatment of one or more of the following:

1.  Mental Disorders; or

2.  Substance Abuse.

However, if you are confined in a Hospital solely because of a Mental Disorder at the end of the 24 months, this limitation will not apply while you are continuously confined.

Mental Disorder means any mental, emotional, behavioral, psychological, personality, cognitive, mood or stress-related abnormality, disorder, disturbance, dysfunction or syndrome, regardless of cause (including any biological or biochemical disorder or imbalance of the brain) or the presence of physical symptoms.  Mental Disorder includes, but is not limited to, bipolar affective disorder, organic brain syndrome, schizophrenia, psychotic illness, manic depressive illness, depression and depressive disorders, anxiety and anxiety disorders.

Substance Abuse means use of alcohol, alcoholism, use of any drug, including hallucinogens, or drug addiction.

Hospital means a legally operated hospital providing full-time medical care and treatment under the direction of a full-time staff of licensed physicians.  Rest homes, nursing homes, convalescent homes, homes for the aged, and facilities primarily affording custodial, educational, or rehabilitative care are not Hospitals.

B. Rules For Disabilities Subject To Limited Pay Periods

1.  If you are Disabled as a result of a Mental Disorder or any Physical Disease or Injury for which payment of LTD Benefits is subject to a limited pay period, and at the same time are Disabled as a result of a Physical Disease, Injury, or Pregnancy that is not subject to such limitation, LTD Benefits will be payable first for conditions that are subject to the limitation.

2.  No LTD Benefits will be payable after the end of the limited pay period, unless on that date you continue to be Disabled as a result of a Physical Disease, Injury, or Pregnancy for which payment of LTD Benefits is not limited.

(NO OTHR LMS)   LT.LP.OT.1

## LIMITATIONS

A. Care Of A Physician

You must be under the ongoing care of a Physician in the appropriate specialty as determined by us during the Benefit Waiting Period.  No LTD Benefits will be paid for any period of Disability when you are not under the ongoing care of a Physician in the appropriate specialty as determined by us.

B. Return To Work Responsibility

During the Own Occupation Period no LTD Benefits will be paid for any period of Disability when you are able to work in your Own Occupation and able to earn at least 20% of your Indexed Predisability Earnings, but you elect not to work.

During the Any Occupation Period, no LTD Benefits will be paid for any period of Disability when you are able to work in Any Occupation and able to earn at least 20% of your Indexed Predisability Earnings, but elect not to work.

STND1149-00433

C.  Rehabilitation Program

No LTD Benefits will be paid for any period of Disability when you are not participating in good faith in a plan, program or course of medical treatment or vocational training or education approved by us unless your Disability prevents you from participating.

D.  Foreign Residency

Payment of LTD Benefits is limited to 12 months for each period of continuous Disability while you reside outside of the United States or Canada.

E.  Imprisonment

No LTD Benefits will be paid for any period of Disability when you are confined for any reason in a penal or correctional institution.

LT.LM.OT.1

# CLAIMS

A.  Filing A Claim

Claims should be filed on our forms.  If we do not provide our forms within 15 days after they are requested, you may submit your claim in a letter to us.  The letter should include the date disability began, and the cause and nature of the disability.

B.  Time Limits On Filing Proof Of Loss

You must give us Proof Of Loss within 90 days after the end of the Benefit Waiting Period.  If you cannot do so, you must give it to us as soon as reasonably possible, but not later than one year after that 90-day period.  If Proof Of Loss is filed outside these time limits, your claim will be denied.  These limits will not apply while you lack legal capacity.

C.  Proof Of Loss

Proof Of Loss means written proof that you are Disabled and entitled to LTD Benefits.  Proof Of Loss must be provided at your expense.

For claims of Disability due to conditions other than Mental Disorders, we may require proof of physical impairment that results from anatomical or physiological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

D.  Documentation

Completed claims statements, a signed authorization for us to obtain information, and any other items we may reasonably require in support of a claim must be submitted at your expense.  If the required documentation is not provided within 60 days after we mail our request, your claim may be denied.

E.  Investigation Of Claim

We may investigate your claim at any time.

At our expense, we may have you examined at reasonable intervals by specialists of our choice.  We may deny or suspend LTD Benefits if you fail to attend an examination or cooperate with the examiner.

F.  Time Of Payment

We will pay LTD Benefits within 60 days after you satisfy Proof Of Loss.

STND1149-00432

LTD Benefits will be paid to you at the end of each month you qualify for them. LTD Benefits remaining unpaid at your death will be paid to the person(s) receiving the Survivors Benefit. If no Survivors Benefit is paid, the unpaid LTD Benefits will be paid to your estate.

G. Notice Of Decision On Claim

You will receive a written decision on your claim within a reasonable time after we receive your claim.

If you do not receive our decision within 90 days after we receive your claim, you will have an immediate right to request a review as if your claim had been denied.

If we deny any part of your claim, you will receive a written notice of denial containing:

1.  The reasons for our decision;

2.  Reference to the parts of the Group Policy on which our decision is based;

3.  A description of any additional information needed to support your claim; and

4.  Information concerning your right to a review of our decision.

H. Review Procedure

If all or part of your claim is denied, you may request a review. You must request a review in writing within 60 days after receiving notice of the denial.

You may send us written comments or other items to support your claim, and may review any non-privileged information that relates to your request for review.

We will review your claim promptly after we receive your request. We will send you a notice of our decision within 60 days after we receive your request, or within 120 days if special circumstances require an extension. We will state the reasons for our decision and refer you to the relevant parts of the Group Policy.

I. Assignment

The rights and benefits under the Group Policy are not assignable.

LT.CL.OT.1

## ALLOCATION OF AUTHORITY

Except for those functions which the Group Policy specifically reserves to the Policyowner or Employer, we have full and exclusive authority to control and manage the Group Policy, to administer claims, and to interpret the Group Policy and resolve all questions arising in the administration, interpretation, and application of the Group Policy.

Our authority includes, but is not limited to:

1.  The right to resolve all matters when a review has been requested;

2.  The right to establish and enforce rules and procedures for the administration of the Group Policy and any claim under it;

3.  The right to determine:

    a.  Eligibility for insurance;

    b.  Entitlement to benefits;

    c.  The amount of benefits payable; and

    d.  The sufficiency and the amount of information we may reasonably require to determine a., b., or c., above.

Subject to the review procedures of the Group Policy, any decision we make in the exercise of our authority is conclusive and binding.

LT.AL.OT.1

## TIME LIMITS ON LEGAL ACTIONS

No action at law or in equity may be brought until 60 days after you have given us Proof Of Loss. No such action may be brought more than three years after the earlier of:

1.  The date we receive Proof Of Loss; and

2.  The time within which Proof Of Loss is required to be given.

LT.TL.OT.1

## INCONTESTABILITY PROVISIONS

A.  Incontestability Of Insurance

Any statement made to obtain insurance or to increase insurance is a representation and not a warranty.

No misrepresentation will be used to reduce or deny a claim or contest the validity of insurance unless:

1.  The insurance would not have been approved if we had known the truth; and

2.  We have given you or any other person claiming benefits a copy of the signed written instrument which contains the misrepresentation.

After insurance has been in effect for two years during the lifetime of the insured, we will not use a misrepresentation to reduce or deny the claim, unless it was a fraudulent misrepresentation.

B.  Incontestability Of The Group Policy Or Employer Coverage Under The Group Policy

Any statement made by the Policyowner or Employer to obtain the Group Policy is a representation and not a warranty.

No misrepresentation by the Policyowner or your Employer will be used to deny a claim or to deny the validity of the Group Policy unless:

1.  The Group Policy would not have been issued if we had known the truth; and

2.  We have given the Policyowner or Employer a copy of a written instrument signed by the Policyowner or Employer which contains the misrepresentation.

The validity of the Group Policy or your Employer's coverage under the Group Policy will not be contested after it has been in force for two years, except for nonpayment of premiums or fraudulent misrepresentations.

LT.IN.OT.2

623691-C
STND1149-00430

# CLERICAL ERROR, AGENCY, AND MISSTATEMENT

A.  Clerical Error

Clerical error by the Policyowner, your Employer, or their respective employees or representatives will not:

1.  Cause a person to become insured.

2.  Invalidate insurance under the Group Policy otherwise validly in force.

3.  Continue insurance under the Group Policy otherwise validly terminated.

4.  Cause an Employer to obtain coverage under the Group Policy.

B.  Agency

Your Employer acts on its own behalf as your agent, and not as our agent. Your Employer have no authority to alter, expand or extend our liability or to waive, modify or compromise any defense or right we may have under the Group Policy.

C.  Misstatement Of Age

If a person's age has been misstated, we will make an equitable adjustment of premiums, benefits, or both.  The adjustment will be based on:

1.  The amount of insurance based on the correct age; and

2.  The difference between the premiums paid and the premiums which would have been paid if the age had been correctly stated.

LT.CE.OT.2

# TERMINATION OR AMENDMENT OF GROUP POLICY OR EMPLOYER COVERAGE

The Group Policy may be terminated, changed or amended in whole or in part by us or the Policyowner according to the terms of the Group Policy.  Any such change or amendment may apply to current or future Employers and Members covered under the Group Policy or to any separate classes or categories thereof.  An Employer's coverage under the Group Policy may be terminated, changed or amended in whole or in part by us or the Employer according to the terms of the Group Policy.

We may change the Group Policy or any Employer's coverage under the Group Policy in whole or in part when any change or clarification in law or governmental regulation affects our obligations under the Group Policy, or with the Policyowner's or Employer's consent.

An Employer may terminate coverage under the Group Policy in whole, and may terminate insurance for any class or group of Members, at any time by giving us written notice.  Insurance will terminate automatically for nonpayment of premium.

Benefits are limited to the terms of your Employer's coverage under the Group Policy, including any valid amendment.  No change or amendment to your Employer's coverage will be valid unless it is approved in writing by one of our executive officers and given to your Employer.  The Policyowner, your Employer, and their respective employees or representatives have no right or authority to change or amend the Group Policy or your Employer's coverage under the Group Policy or to waive any of its terms or provisions thereof without our signed, written approval.

LT.TA.OT.2

STND1149-00429

# DEFINITIONS

**Benefit Waiting Period** means the period you must be continuously Disabled before LTD Benefits become payable. No LTD Benefits are payable for the Benefit Waiting Period. See **Coverage Features**.

**Contributory** means insurance is elective and Members pay all or part of the premium for insurance.

**CPI-W** means the Consumer Price Index for Urban Wage Earners and Clerical Workers published by the United States Department of Labor. If the CPI-W is discontinued or changed, we may use a comparable index. Where required, we will obtain prior state approval of the new index.

**Employer** means an employer (including approved affiliates and subsidiaries) participating in the Standard Insurance Company Group Insurance Trust for which coverage under the Group Policy is approved in writing by us.

**Group Policy** with respect to the Policyowner means the group LTD insurance policy issued by us to the Policyowner and identified by the Group Policy Number. Group Policy with respect to an Employer means only those provisions of the Group Policy, including the options and variables requested by the Employer, we have approved for that Employer with respect to its eligible employees. The Employer's coverage under the Group Policy is described in the Statement Of Coverage provided by us to the Employer.

**Indexed Predisability Earnings** means your Predisability Earnings adjusted by the rate of increase in the CPI-W. During your first year of Disability, your Indexed Predisability Earnings are the same as your Predisability Earnings. Thereafter, your Indexed Predisability Earnings are determined on each anniversary of your Disability by increasing the previous year's Indexed Predisability Earnings by the rate of increase in the CPI-W for the prior calendar year. The maximum adjustment in any year is 10%. Your Indexed Predisability Earnings will not decrease, even if the CPI-W decreases.

**Injury** means an injury to the body.

**LTD Benefit** means the monthly benefit payable to you under the terms of your Employer's coverage under the Group Policy.

**Maximum Benefit Period** means the longest period for which LTD Benefits are payable for any one period of continuous Disability, whether from one or more causes. It begins at the end of the Benefit Waiting Period. No LTD Benefits are payable after the end of the Maximum Benefit Period, even if you are still Disabled. See **Coverage Features**.

**Noncontributory** means (a) insurance is nonelective and the Policyowner or Employer pay the entire premium for insurance; or (b) the Policyowner or Employer require all eligible Members to have insurance and to pay all or part of the premium for insurance.

**Physical Disease** means a physical disease entity or process that produces structural or functional changes in the body as diagnosed by a Physician.

**Physician** means a licensed M.D. or D.O., acting within the scope of the license. Physician does not include you or your spouse, or the brother, sister, parent, or child of either you or your spouse.

**Pregnancy** means your pregnancy, childbirth, or related medical conditions, including complications of pregnancy.

**Prior Plan** means your Employer's group long term disability insurance plan in effect on the day before the effective date of your Employer's coverage under the Group Policy and which is replaced by your Employer's coverage under the Group Policy.

LT.DF.OT.2

623691-C

STND1149-00428

# ERISA INFORMATION AND NOTICE OF YOUR RIGHTS

A. General Plan Information

The General Plan Information required by the Employee Retirement Income Security Act of 1974 (ERISA) is shown in the **Coverage Features.**

B. Termination Of The Group Policy Or Of Employer Coverage

The Group Policy which provides benefits for this plan may be terminated by the Policyowner at any time with prior written notice to Standard Insurance Company.

An Employer's coverage under the Group Policy may be terminated at any time with prior written notice to Standard Insurance Company. Insurance will terminate automatically for nonpayment of premium.

We may terminate the Group Policy or an Employer's coverage under the Group Policy if on any Premium Due Date the number of persons insured is less than the required minimum, or if Standard believes the Policyowner or an Employer has failed to perform its obligations relating to the Group Policy.

C. Statement Of Your Rights Under ERISA

ERISA entitles you to the following rights and protections as a participant in your Employer's employee benefit plan:

1. Right To Examine Plan Documents

   You have the right to examine all plan documents, including any annual reports filed with the U.S. Department of Labor, and any insurance contracts or collective bargaining agreements. The Plan Administrator will tell you where the plan documents are available for examination. There will be no charge for examining plan documents.

2. Right To Obtain Copies Of Plan Documents

   You have the right to obtain copies of all plan documents upon written request. There may be a reasonable charge for the copies.

3. Right To Receive A Copy Of Annual Report

   The Plan Administrator must give you a copy of the plan's summary annual financial report if the plan is required to file an annual report. There will be no charge for the report.

4. Right To Written Explanation Of Denial

   If your claim for benefits under the employee benefit plan is denied in whole or in part, you must be given a written explanation of the reason for denial.

5. Right To Review

   You have the right to have Standard Insurance Company review and reconsider any denial of your claim for plan benefits.

D. Protection Of Your Rights Under ERISA

ERISA prohibits anyone from discriminating against you in any way to prevent you from receiving a plan benefit or from exercising your rights under ERISA.

ERISA gives you the right to file suit in a state or federal court if your claim for benefits under the employee benefit plan is denied or ignored. You can also file suit in a federal court if you request plan documents and do not receive them within 30 days. In such a case the court will require the Plan Administrator to give you the plan documents you requested. In some cases the court could

Printed 05/03/2000                                    - 25 -

also require the Plan Administrator to pay you up to $110 a day until you receive the requested materials.

ERISA also imposes special obligations on the people (called "fiduciaries") who operate your Employer's employee benefit plan. The fiduciaries have a duty to protect the plan's money and the interests of plan participants.

If you believe that the fiduciaries have misused the plan's money, or that you have been discriminated against for asserting your rights, you can ask for help from the U.S. Department of Labor. You can also file suit in a federal court. If you file a suit, the court will decide who must pay the court costs and legal fees. If your suit is successful, the court may require the fiduciary to pay those costs and fees. If you lose, the court may order you to pay those costs and fees.

E.  Questions About The Plan Or ERISA

If you have any questions about your Employer's employee benefit plan, you should contact the Plan Administrator.

If you have any questions about this statement or about your rights under ERISA, you should contact the nearest office of the Pension and Welfare Benefits Administration, U.S. Department of Labor, listed in your telephone directory or the Division of Technical Assistance and Inquiries, Pension and Welfare Benefits Administration, U.S. Department of Labor, 200 Constitution Avenue, N.W., Washington, D.C. 20210.

TRUST_LTDC2000                                                          (TRUST)   ERISA.1

623691-C

STND1149-00426





**The Standard™**
Positively different.

March 26, 2007

Patricia Broyles
3321 Anita Ct.
Napa, CA 94558

Re:     AUL Corporation
        Group Policy 623691
        Claim No. 00375832

Dear Ms. Broyles:

We are writing regarding the Administrative Review Unit's review of your long term disability claim with Standard Insurance Company (The Standard). It has come to my attention that in the letter I sent to you dated March 15, 2007, I did not provide you with information specific to the State of California review of adverse decisions on disability claims. That information includes the following:

> If you also wish to have this matter reviewed by the State of California, Department of Insurance, you may contact the Department of Insurance, Consumer Communications Bureau, at 300 South Spring Street, South Tower, Los Angeles, California 90013. That office can also be reached by calling (213) 897-8921 or toll-free 1-800-927-4357.

If you have any questions you may contact me in writing or at (971) 321-7917.

Sincerely,

Mary E. Cea
Benefits Review Specialist
Employee Benefits – Quality Assurance

cc;  ✓  George Chan   –C9A
     File

900 SW Fifth Avenue
Portland OR 97204-1235
tel 888.937.4783

Standard Insurance Company – A member of StanCorp Financial Group, Inc.





TheStandard™
Positively different.

March 15, 2007

Patricia Broyles
3321 Anita Ct
Napa CA  94558

Re:    AUL Corporation
       Group Policy  623691
       Claim No.    00375832

Dear Ms. Broyles:

The Administrative Review Unit has completed a review of Standard Insurance Company's (The Standard's) decision to deny your Long Term Disability (LTD) claim. This was an independent review conducted separately from the individuals who made the original determination. After considering all of the available information and the provisions of the Group Policy applicable to your claim, we find that the correct decision was to deny your claim. What follows is an explanation of our findings.

You ceased work on September 14, 2005, and claimed disability due to a ruptured Achilles tendon in your right foot. On the Employee's Statement, that you completed on November 28, 2005, you indicated that your injury occurred more than one year prior to when you ceased work, in August 2004.

The Standard reviewed medical records from your treating providers and found insufficient documentation to support a level of impairment that would preclude you from performing your own occupation as a claims adjuster. Therefore, your LTD claim was denied. In your letter, dated July 26, 2006, you requested a review of the decision to deny your LTD claim. Specifically you have stated that you find The Standard's decision to deny your claim to be contradictory to your doctor's decision to place you on disability. You have asserted that you can not work due to extreme pain that prevents you from walking, standing or sitting for any length of time.

The Standard reviewed the additional information that you provided and found insufficient medical evidence to support a level of impairment that would preclude you from performing your own occupation. Therefore, the decision to deny your LTD claim was upheld and your file was referred to the Administrative Review Unit for an independent review.

To begin with, we will address your statement regarding The Standard's decision to deny your claim being contradictory to your physician's decision to place you on disability. Although we do consider the opinions of your treating providers, it is important to understand, that we must evaluate the medical documentation to determine if that opinion is supported. Merely having a diagnosis, living with a medical condition and/or receiving medical treatment does not necessarily constitute a disability. A statement made by a physician may not be sufficient proof of disability.

*900 SW Fifth Avenue*
*Portland OR 97204-1235*
*tel 888.937.4763*

Standard Insurance Company – A subsidiary of StanCorp Financial Group, Inc.

STANDARD INSURANCE COMPANY

Patricia Broyles                              2                              March 15, 2007

According to the terms of the AUL Corporation Group Policy, during the first 24 months during which LTD benefits may be paid, you are only required to be disabled from your own occupation, as a claims adjuster. You are disabled from your own occupation if, as the result of physical disease, injury, pregnancy or mental disorder, you are unable to perform with reasonable continuity the material duties of your own occupation; and you suffer a loss of at least 20% of your indexed predisability earnings when working in your own occupation.

As explained in prior correspondence, the occupation of claims adjuster, as performed in the national economy, requires the ability to perform sedentary level work. The U.S. Department of Labor Dictionary of Occupational Titles defines sedentary work as follows:

> Exerting up to 10 pounds of force occasionally (Occasionally: activity or condition exists up to 1/3 of the time) and/or a negligible amount of force frequently (Frequently: activity or condition exists from 1/3 to 2/3 of the time) to lift, carry, push pull, or otherwise move objects including the human body. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met.

The ACU Corporation Group Policy further provides that you must be continuously disabled for a period of 90 days before LTD benefits become payable. Therefore, with a cease work date of September 14, 2005, benefits would become payable on December 14, 2005, provided the medical information supported limitations or restrictions that precluded you from performing your own sedentary level occupation through that date and beyond. After reviewing all of the information contained in your file and having your file reviewed by a Physician Consultant who is board certified in orthopedics, we do not find that the medical evidence supports this conclusion.

Medical records from California Pacific Medical Center document that surgery was performed on March 18, 2005, to correct a posterior tibial tendon dysfunction in your right foot. These records do not document any complications post-operatively. Vicodin and physical therapy were prescribed and you were able to return to full-time work in April 2005.

In June 2005 Dr. Pfeffer noted that you were doing well and were tolerating weight-bearing activities with the use of an orthotic.

Chart notes from Dr. Pfeffer, dated August 11, 2005, document your report of swelling in your right leg. Dr. Pfeffer recommended a Doppler study. That study was performed on August 12, 2005, and was negative for deep venous thrombosis. X-rays of your heel, also performed on August 12, 2005, documented significant soft tissue swelling and a visible fracture line.

On September 5, 2005, you informed Dr. Pfeffer that you had not attending physical therapy because you had to work. You stated that you continued to use an ankle support and Dr. Pfeffer noted that, although you continued to have "slight" collapse of your foot, your condition was better then prior to surgery. He provided you with a prescription for four weeks of physical therapy,

STND1149-00423

# STANDARD INSURANCE COMPANY

Patricia Broyles                          3                          March 15, 2007

In October 2005 Dr. Pfeffer again noted that you were "doing well." In a letter to Dr. Pfeffer, dated October 28, 2005, Rob Brandon, physical therapist, indicated that you had been seen for 11 visits and stated the following:

> Mrs. Broyles has progressed to a point of tolerating at least 45 minutes of consistent cardiovascular exercise. When she uses bilateral axillary crutches she has been able to minimize her foot and ankle pain. However, she was reluctant to comply with using the crutches 100% of the time.

Mr. Brandon indicated that he had discharged you from physical therapy because you had informed him that you were told to discontinue physical therapy and join a gym.

An Attending Physician's Statement (APS) completed by Dr. Pfeffer on December 7, 2005 indicates a diagnosis of collapsed foot and that you have foot pain. Dr. Pfeffer also indicates that your condition is primarily related to your employment. Given the fact that you have a sedentary level occupation we do not understand how your condition is related to your employment particular in light of the fact that Dr. Pfeffer also states that you can perform sedentary work.

You returned to Dr. Pfeffer on January 20, 2006, and reported that you had not done well following your surgery. Dr. Pfeffer noted that your transfers "worked nicely." It was also noted that you continued to have some collapse in your foot, not due to a neurological problem, but most likely due to lack of medial support. Dr. Pfeffer indicated that you could have additional fusion surgery performed, or you could attend physical therapy to address your symptoms of burning, numbing, tingling and pain.

Physical therapy records dated January 30, 2006 document that you had poor compliance. On February 7, 2006, physical therapy records document that you arrived for your session wearing flip flops. You were advised of the importance of proper foot wear and using your ankle splint. On March 3, 2006, you called physical therapy and informed them that you were "doing the same" and would be having total knee replacement in April 2006. You stated that you would continue with rehabilitation of your ankle once you had finished rehabilitation for your knee.

The medical information contained in your file was reviewed by a Physician Consultant who is board certified in orthopedics. The consulting orthopedist indicated that, given your history of ankle surgery and instability it is reasonable that you not perform occupations that require extensive standing and walking.

As explained in prior correspondence and in this letter, your own occupation requires the ability to perform sedentary level work and does not require extensive standing and walking. Therefore, we do not find that the available medical documentation, including the APS completed by Dr. Pfeffer, in December 2005, supports that you were unable to perform your own occupation at the time you ceased work. Therefore, we find that the decision to deny your claim is correct and must be upheld.

60-23057-mcea-5832.doc

## STANDARD INSURANCE COMPANY

Patricia Broyles                              4                          March 15, 2007

You have provided The Standard with a letter from Dr. Michael Shifflett, an orthopedist, dated October 11, 2006. In that letter Dr. Shifflett explains that you came under his care in February 2006 and you had a left total knee replacement in April 2006 and that you were tentatively scheduled for right total knee replacement. Dr. Shifflett also notes that you have posterior tibialis tendon dysfunction in your right ankle and are scheduled to have that condition evaluated.

Dr. Shifflett concludes that you continue to remain unable to perform your regular job because you are unable to sit or stand for long periods and weight-bearing continues to be painful on your right side in both your knee and ankle.

We again want to assure you that we have considered the opinion of Dr. Shifflett. However, when determining your eligibility for LTD benefits we must evaluate the medical records to determine if you were unable to perform your own occupation at the time you ceased work, in September 2005, and throughout the 90-day benefit waiting period. Based on the information contained in your file, we do not find medical evidence to support a level of impairment, due to your ankle condition, that would have precluded you from performing your own occupation at the time you ceased work and throughout the 90-day benefit waiting period.

With regard to your total knee replacement surgery, which took place in April 2006, although we recognize that you may have had a period of disability following that procedure, at the time of your surgery you were no longer insured under the ACU Corporation Group Policy.

The ACU Corporation Group Policy's When Your Insurance Ends provision provides that your insurance automatically ends on the earliest of:

1. The date the last period ends for which a premium contribution was made for your insurance.
2. The date the Group Policy terminates.
3. The date your Employer's coverage under the Group Policy terminates.
4. The date your employment terminates.
5. The date you cease to be a member. However, your insurance will be continued during the following periods when you are absent from Active Work, unless it ends under any of the above.

    a. During the first 90 days of a temporary or indefinite administrative or voluntary leave of absence or sick leave, provided your Employer is paying you at least the same Predisability Earnings paid to you immediately before you ceased to be a Member. A period when you are absent from work as part of a severance or other employment termination agreement is not a leave of absence, even if you are receiving the same Predisability Earnings.
    b. During a leave of absence if continuation of your insurance under the Group Policy is required by a state-mandated family or medical leave act or law.
    c. During any other temporary leave of absence approved by your Employer in advance and in writing and scheduled to last 30 days or less. A period of disability is not a leave of absence.

60-23057-mcea-5832.doc

STND1149-00421

# STANDARD INSURANCE COMPANY

Patricia Broyles               5               March 15, 2007

The ACU Corporation defines a Member as a regular employee of the Employer Actively at Work at least 30 hours each week.

Information from your employer documents that you were on a leave of absence without pay under the Family Medical Leave Act from September 15, 2005 through December 8, 2005. Due to the fact that the available medical documentation does not support limitations or restrictions as a result of your ankle condition, that would have precluded you from performing your own occupation at the time you ceased work and throughout the 90 day benefit waiting period, your insurance under the Group Policy ended on December 8, 2005. Therefore, you were no longer insured or eligible to receive benefits for any disability that may have occurred after that date.

In your letter dated July 25, 2006, you have made several statements regarding The Standard's review of your LTD claim that we would like to address. You have asserted that perhaps "the standard" at The Standard is to deny all claims regardless. We assure you that this is not "the standard" at Standard Insurance Company.

The Standard's goal is to review all claims fairly and in a timely manner. We find that the review of your claim consisted of obtaining all medical records from your treating providers and having those records reviewed by a Nurse Case Manager and by a Physician Consultant who is board certified in orthopedics. We further find that your claim was reviewed in a timely manner and you were kept apprised as to the status of the review.

As explained in this letter, we do not find that your ankle condition would have precluded you from performing sedentary level work at the time you ceased work and throughout the 90 day benefit waiting period. We further find that your coverage under the terms of the Group Policy ended on December 8, 2005. Although we acknowledge that you had a total knee replacement in April 2006 and may have required a period of disability following that surgery, you were no longer insured at that time and therefore were not eligible to receive LTD benefits.

You have also asserted that your employer purchased this disability plan to help their employees should the medical need arise because they are a good company and provide excellent benefits. You expressed your hope that you and they would not be disappointed.

We agree that your employer has provided its employees with an excellent benefit should the need arise. However, it is important to understand that merely because you have LTD coverage does not mean that you are automatically entitled to that benefit should you cease work and claim disability. Your Group Policy is clear and unambiguous and benefits cannot be paid outside the terms of the policy.

In your case we find that the medical records do not support that you would have been unable to perform sedentary level work at the time you ceased work. This is also supported by the APS completed by your orthopedist, Dr. Pfeffer, in December 2005, in which he states that you can perform sedentary level work. The terms of your policy provide that your insurance coverage ended on December 8, 2005. Therefore, you were not covered for disability due to your total knee replacement, which did not occur until April 2006.

# STANDARD INSURANCE COMPANY

Patricia Broyles                                    6                                    March 15, 2007

After considering all of the information contained in your file and the provisions of the Group Policy applicable to your claim, we find that the correct decision was to deny your claim. If you so request, we will provide you with copies of all records, documents and other information relevant to your claim without charge. You also have the right to file suit under Section 502(a) of the Employee Retirement Income Security Act.

You are entitled to one independent review of the decision to deny your LTD claim under the terms of your Group Policy. We have completed that review and will be unable to extend benefits to you. This concludes the review process by the Administrative Review Unit.

Your Group Policy does not provide voluntary alternative dispute resolution options. However, you may contact your local U.S. Department of Labor office or your State insurance regulatory agency for assistance.

We also want to let you know that upon further investigation, other valid reasons for limiting or denying your claim, which have not been previously considered, could come to our attention. Therefore, The Standard reserves the right to consider and assert other valid reasons for limitation or denial of your claim should they occur in the future.

We hope that this letter has addressed all of your concerns regarding the decision to deny your LTD claim.

Sincerely,


Mary E. Cea
Benefits Review Specialist
Employee Benefits – Administrative Review Unit

MEC:rdl

cc:     George Chan
        File


60-23057-mcea-5832.doc

STND1149-00419

P. Broyler
2/14/07

from the desk of:

**MARY E CEA**

BENEFITS REVIEW SPECIALIST
PHONE (503) 321 – 7917

Initial File Review
_____

CW: 9/14/05
Our Occ - claims adjuster
DX: Tibial tendon rupture
        surgery in 2004
    Pain and swelling in feet.
    feet collapsed.

Cl. denied – can perform sed. work.

5/1/06   request for review   file

7/28/06   review request

90 day BWP
    Not disabled since 9/15/05 → 90 day BWP

    Total knee replacement in 4/06

    No longer insured.

2nd file review needed – order IFR

STND1149-00418



February 12, 2007

**TheStandard**™
Positively different.

Patricia Broyles
3321 Anita Ct.
Napa, CA 94558

Re:    AUL Corporation
       Group Policy 623691
       Claim No. 00375832

Dear Ms. Broyles:

Your file has been referred to the Administrative Review Unit for an independent review of Standard Insurance Company (the Standard's) decision to deny your long-term disability (LTD) claim. Our goal is to complete all reviews as promptly as possible, and no later than 90 days after the request for review is received. However, in order to ensure a full and fair review, a more extensive review period is sometimes required. .

On October 31, 2006, The Standard received a letter from attorney Kathleen Herdell, requesting a review of the decision to deny your LTD claim. With her letter Ms. Herdell provided additional information for consideration during the review process. The Standard then received a letter from Dr. Glenn Pfeffer on November 20, 2006. Therefore, the 90 day period will end on February 18, 2007.

As part of the Administrative Review Unit's review, and in accordance with the requirements of Department of Labor (DOL) regulations, we have referred your file for consideration and comment by a physician consultant who is board certified in physiatry, and who has not previously reviewed the file. Therefore, additional time is needed to complete our review. We estimate that we will be able to complete our review on or before March 31, 2007.

We appreciate your patience during the review process. However, because our review has extended beyond the 90th day, we want to notify you that you may choose to seek other legal remedies including filing suit under Section 502(a) of the Employee Retirement Income Security Act (ERISA).

We will send you periodic updates regarding the status of our review and will notify you in writing once the review is completed. If you have any questions, please call me at (503) 321-7917.

Sincerely,

Mary E. Cea
Benefits Review Specialist
Employee Benefits – Quality Assurance

cc:    George Chan

900 SW Fifth Avenue
Portland OR 97204-2096
tel 888.937.4783

Standard Insurance Company – A subsidiary of StanCorp Financial Group, Inc.

STND1149-00417



February 7, 2007


PATRICIA A BROYLES
3321 ANITA CT
NAPA, CA 94558

COPY

Re:    AUL Corporation
       Group No.       623691
       Claim No.       00375832

Dear Ms. Broyles:

We are writing in regard to your request for a review of our decision to deny your claim for Long Term Disability (LTD) benefits with Standard Insurance Company (The Standard).

As we have indicated in our March 28, 2006 letter (copy enclosed), we have determined that you have the capacity to perform sedentary strength level occupations on a full time basis with limitations of no standing and/or walking for extended periods. You have requested a review of our decision to deny your claim and have indicated that walking, standing, sitting, and extreme chronic pain treated with daily pain medications are the reasons your mobility remains very limited. We have also received additional information in the form of a letter from Dr. Shifflett; records from Napa Valley Physical Therapy; Queen of the Valley Physical Therapy records; letter from Dr. Pfeffer.

At issue is whether there were medical reasons to prevent you from performing your own occupation of Claims Payable Adjuster/Supervisor at the time you ceased working on September 14, 2005, during the 90 day Benefit Waiting Period and beyond.

The medical records indicate you had calcaneal osteotomy and tibial tendon transfer of the right hindfoot on March 18, 2005. You returned to work on April 11, 2005 and on June 13, 2005, Dr. Pfeffer reported you were doing well and tolerating weight bearing activities with use of orthotic. On October 18, 2005, Dr. Pfeffer reported you were doing well and advised to wean off Neurontin and initiated use of non-steroidal anti-inflammatory medications. Dr. Pfeffer completed an Attending Physician's Statement on December 7, 2005 indicating diagnosis of collapsed foot but capable of sedentary work.

As indicated in our March 28, 2006 letter, the medical information was reviewed by a Physician Consultant, board-certified in Orthopedics. It is the Physician Consultant's opinion that you would be capable of performing a sedentary strength level occupations on a full time basis with limitations of no standing and walking for extended periods.

PO Box 2800 Portland OR 97208-2800 tel 800.368.1135
Standard Insurance Company · A subsidiary of StanCorp Financial Group

PATRICIA A BROYLES                    2                    February 7, 2007

Your file was also reviewed by a Vocational Consultant to assess the physical demands of your occupation. It is the opinion of the Vocational Consultant that your occupation of Claims Payable Adjuster/Supervisor is considered sedentary in strength level according to the U.S. Department of Labor Dictionary of Occupational Titles, Fourth Edition, revised 1991. The Vocational Consultant noted that extended standing and walking would not be considered Material Duties of your Own Occupation.

A letter from Kathleen Herdell dated October 27, 2006 made reference to total knee replacement on April 12, 2006 and follow up on July 11, 2006. A letter from Dr. Shifflett to Standard Insurance Company dated October 11, 2006 indicates you have been under his care since February, 2006. He noted you had a left total knee replacement in April, 2006 and was tentatively scheduled for right total knee surgery in the next few months.

The additional information from Dr. Shifflet, Dr. Pfeffer, Queen of the Valley Physical Therapy records and Napa Valley Physical Therapy records were reviewed by the Physician Consultant, board-certified in Orthopedics. It is the opinion of the Physician Consultant that your limitations and restrictions would be relative to walking. He does not see how specifically status post total knee or status post surgery for flat foot would be troublesome in a sitting posture. The Physician Consultant noted you should have limited walking activity, being capable of moving around the workplace and not walking more than 3 or 4 blocks maximum in succession, and walking should not be a major portion of your work requirement. It is the opinion of the Physician Consultant that you could work at a sedentary level job on a full time basis.

The definition for sedentary strength level was described in our March 28, 2006 letter.

The AUL Corporation Statement of Coverage states that your insurance ends automatically on the earliest of:

1. The date the last period ends for which a premium contribution was made for your insurance.
2. The date the Group Policy terminates.
3. The date your Employer's coverage under the Group Policy terminates.
4. The date your employment terminates.
5. The date you cease to be a Member. However, your insurance will be continued during the following periods when you are absent from Active Work, unless it ends under any of the above.

a. During the first 90 days of a temporary or indefinite administrative or involuntary leave of absence or sick leave, provided your Employer is paying you at least the same Predisability Earnings paid to you immediately before you ceased to be a Member. A period when you are absent from Active Work as part of a severance or other employment termination agreement is not a leave of absence, even if you are

PO Box 2800  Portland OR 97208-2800  tel 800.368.1135
Standard Insurance Company - A subsidiary of StanCorp Financial Group

STND1149-00415

PATRICIA A BROYLES                    3                        February 7, 2007

receiving the same Predisability Earnings.
b. During a leave of absence if continuation of your insurance under the Group Policy
is required by a state-mandated family or medical leave act or law.
c. During any other temporary leave of absence approved by your Employer in
advance and in writing and scheduled to last 30 days or less. A period of Disability
is not a leave of absence.

Information in your claim file indicates you ceased working on September 14, 2005. You were
on a leave of absence without pay under the Family Medical Leave Act (FMLA) through
December 8, 2005. Therefore, your insurance ended on December 8, 2005. The Standard does
not accept liability for your claim or for any other medical condition after your insurance ended
on December 8, 2005.

As indicated in our March 28, 2006 letter, we find that you were capable of performing your own
occupation following your ceased work date of September 14, 2005, no LTD benefits are
payable. In regards to your subsequent total knee replacement in April, 2006, you would not be
covered as your insurance ended on December 8, 2005.

We will now forward your file to the Administrative Review Unit for an independent review.
The Benefits Review Specialist who will be reviewing your claim will soon contact you.

Please feel free to call me, if you have any questions.

Sincerely,

George Chan
Senior Disability Benefits Analyst
800-368-1135  ext. 8606

Enclosure:      March 28, 2006 letter

Cc:             Kathleen A. Herdell

PO Box 2800  Portland OR 97208-2800  tel 800.368.1135
Standard Insurance Company - A subsidiary of StanCorp Financial Group

STND1149-00414



3. You were continuously insured under the Group Policy from the effective date of your insurance under the Group Policy through the date you became Disabled from the Preexisting Condition; and

4. Benefits would have been payable under the terms of the Prior Plan if it had remained in force, taking into account the preexisting condition exclusion, if any, of the Prior Plan.

For such a Disability, the amount of your LTD Benefit will be the lesser of:

    a. The monthly benefit that would have been payable under the terms of the Prior Plan if it had remained in force; or

    b. The LTD Benefit payable under the terms of your Employer's coverage under the Group Policy, but without application of the Preexisting Condition Exclusion.

Your LTD Benefits for such a Disability will end on the earlier of the following dates:

    a. The date benefits would have ended under the terms of the Prior Plan if it had remained in force; or

    b. The date LTD Benefits end under the terms of your Employer's coverge under the Group Policy.

(PX)    LT.CC.OT.2

## WHEN YOUR INSURANCE ENDS

Your insurance ends automatically on the earliest of:

1. The date the last period ends for which a premium contribution was made for your insurance.

2. The date the Group Policy terminates.

3. The date your Employer's coverage under the Group Policy terminates.

4. The date your employment terminates.

5. The date you cease to be a Member. However, your insurance will be continued during the following periods when you are absent from Active Work, unless it ends under any of the above.

    a. During the first 90 days of a temporary or indefinite administrative or involuntary leave of absence or sick leave, provided your Employer is paying you at least the same Predisability Earnings paid to you immediately before you ceased to be a Member. A period when you are absent from Active Work as part of a severance or other employment termination agreement is not a leave of absence, even if you are receiving the same Predisability Earnings.

    b. During a leave of absence if continuation of your insurance under the Group Policy is required by a state-mandated family or medical leave act or law.

    c. During any other temporary leave of absence approved by your Employer in advance and in writing and scheduled to last 30 days or less. A period of Disability is not a leave of absence.

LT.EN.OT.2

## WAIVER OF PREMIUM

We will waive payment of premium for your insurance while LTD Benefits are payable.

LT.WP.OT.1

STND1149-00413



TheStandard™
Positively different.

March 28, 2006

Patricia Broyles
3321 Anita Ct
Napa CA 94558

Re:    AUL Corporation
        Group Policy 623691
        Claim No. 00375832

Dear Ms. Broyles:

We are writing with regard to your claim for long term disability (LTD) benefits with Standard Insurance Company (The Standard). Thank you for your patience during our review of your claim. We have completed our review of your claim and have determined your claim must be denied.

As indicated in prior correspondence, we reviewed your claim to determine if you meet the Definition of Disability as defined by the Group Policy. To be eligible for benefits, you must be disabled as defined by your Group Policy. Your Group Policy defines disability as follows:

### DEFINITION OF DISABILITY

You are Disabled if you meet the following definitions during the periods they apply:

    A.    Own Occupation Definition Of Disability

    B.    Any Occupation Definition Of Disability

A.    Own Occupation Definition Of Disability

During the Benefit Waiting Period and the Own Occupation Period you are required to be Disabled only from your Own Occupation.

You are Disabled from your Own Occupation if, as a result of Physical Disease, Injury, Pregnancy or Mental Disorder:

    1.    You are unable to perform with reasonable continuity the Material Duties of your Own Occupation; and

    2.    You suffer a loss of at least 20% in your Indexed Predisability Earnings when working in your Own Occupation.

*900 SW Fifth Avenue*
*Portland OR 97204-1235*
*tel 888.937.4783*

Standard Insurance Company – A subsidiary of StanCorp Financial Group, Inc.

# STANDARD INSURANCE COMPANY

Patricia Broyles                            2                        March 28, 2006

Note: You are not Disabled merely because your right to perform your Own Occupation is restricted, including a restriction or loss of license.

During the Own Occupation Period you may work in another occupation while you meet the Own Occupation Definition Of Disability. However, you will no longer be Disabled when your Work Earnings from another occupation meet or exceed 80% of your Indexed Predisability Earnings. Your Work Earnings may be Deductible Income. See **Return To Work Provisions** and **Deductible Income**.

Own Occupation means any employment, business, trade, profession, calling or vocation that involves Material Duties of the same general character as the occupation you are regularly performing for your Employer when Disability begins. In determining your Own Occupation, we are not limited to looking at the way you perform your job for your Employer, but we may also look at the way the occupation is generally performed in the national economy. If your Own Occupation involves the rendering of professional services and you are required to have a professional or occupational license in order to work, your Own Occupation is as broad as the scope of your license.

Material Duties means the essential tasks, functions and operations, and the skills, abilities, knowledge, training and experience, generally required by employers from those engaged in a particular occupation that cannot be reasonably modified or omitted. In no event will we consider working an average of more than 40 hours per week to be a Material Duty.

B.      Any Occupation Definition Of Disability

During the Any Occupation Period you are required to be Disabled from all occupations.

You are Disabled from all occupations if, as a result of Physical Disease, Injury, Pregnancy or Mental Disorder, you are unable to perform with reasonable continuity the Material Duties of Any Occupation.

Any Occupation means any occupation or employment which you are able to perform, whether due to education, training, or experience, which is available at one or more locations in the national economy and in which you can be expected to earn at least 60% of your Indexed Predisability Earnings within 12 months following your return to work, regardless of whether you are working in that or any other occupation.

Material Duties means the essential tasks, functions and operations, and the skills, abilities, knowledge, training and experience, generally required by employers from those engaged in a particular occupation that cannot be reasonably modified or omitted. In no event will we consider working an average of more than 40 hours per week to be a Material Duty.

Your Own Occupation Period and Any Occupation Period are shown in the **Coverage Features**.

STND1149-00411

# STANDARD INSURANCE COMPANY

Patricia Broyles                                3                                March 28, 2006

You have indicated on the Employee's Statement completed by you on November 28, 2005, that you had a complete rupture of the tibial tendon of the right foot, and you are claiming disability beginning September 15, 2005.

In our telephone conversation on December 28, 2005, you indicated that you had surgery, a calcaneal osteotomy, on March 18, 2005. You indicated that you had returned to work full time in mid April 2005 with a cast and the assistance of a wheelchair, despite difficulties including swelling, pain and problems with ambulation. You indicated that your condition worsened and that your foot collapsed. Information notes you ceased work altogether on September 14, 2005. In a follow-up telephone correspondence, you indicated that another foot surgery was pending, as well as a pending knee replacement scheduled for March 2006.

An Attending Physician's Statement (APS) from orthopedist Dr Glenn Pfeffer, dated December 7, 2005, reports a diagnosis of collapse foot with symptoms of pain. He indicated you should cease work, without providing a specific date, due to unilateral foot pain post-operatively. Dr. Pfeffer reports on the APS that you are capable of sedentary level work with limitations described as difficulty walking due to unilateral foot pain. It is noted that you may need further surgery.

Along with your claim forms, we are in receipt of your medical records from Dr Glenn Pfeffer for the period from January 2005 through January 2006.

Records indicate that you began developing worsening right ankle pain in August 2004 with diagnosis of tibial tendon dysfunction in January 2005. On March 18, 2005, you underwent calcaneal osteotomy with tibial tendon transfer of the right hind foot. Post-operatively, you were non-weight bearing and initially required use of a walker. You returned to work in April 2005. On June 13, 2005, Dr. Pfeffer reports you are doing well and tolerating weight-bearing activity with use of an orthotic.

On August 11, 2005, you contacted Dr. Pfeffer's office due to increased swelling of the right leg. Doppler was negative and did not reveal evidence of a blood clot. On September 15, 2005, you reported you never went to physical therapy, and that you continued to utilize ankle support. Dr. Pfeffer indicated there continues to be slight collapse of the hind foot, but notes your status as "better than pre-op" and recommends Neurontin.

On October 18, 2005, Dr. Pfeffer reported you are "doing well." You were advised to wean off Neurontin and initiate use of non-steroidal anti-inflammatory medications.

On January 20, 2006, Dr. Pfeffer reported you are still getting some collapse in your hind foot, and that there is no apparent nerve injury. You reported intermittent burning of there right foot. Dr. Pfeffer stated you may require additional surgery. Physical therapy is also discussed.

The medical information was reviewed by a Physician Consultant, board-certified in Orthopedics. Based on this review, the Physician Consultant felt you would be capable of

STND1149-00410

# STANDARD INSURANCE COMPANY

Patricia Broyles                    4                         March 28, 2006

working within the sedentary strength level range on a full time basis with limitations that include the inability to stand and walk for extended periods.

Your file was then reviewed by a Vocational Consultant who has determined, based on the U.S Department of Labor Dictionary of Occupational Titles, that your Own Occupation as a Claims Payable Adjuster/Supervisor is considered sedentary level work. The Vocational Consultant noted that extended standing and walking would not be considered Material Duties of your Own Occupation as a Claims Payable Adjuster/Supervisor.

Sedentary level occupations are defined according to the U.S Department of Labor Dictionary of Occupational Titles, Fourth Edition, revised 1991 as follows:

> S- Sedentary Work – Exerting up to 10 pounds of force occasionally. (Occasionally: activity or condition exist up to 1/3 of the time) and/or a negligible amount force frequently (Frequently: activity or condition exists from 1/3 to 2/3 of the time) to lift, carry, push, pull, or otherwise move objects, including the human body. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met.

A copy of the strength factors is enclosed for your reference.

Based on these reviews, we have concluded that you have the physical capacity to perform full-time sedentary strength level work with the limitation of no standing and/or walking for extended periods. As you have the capacity to perform sedentary level work on a full-time basis, and your own occupation is sedentary, we find insufficient evidence to support that your medical condition is of a severity that it would reasonably prevent you from performing the duties of your Own Occupation as a Claims Payable Adjuster/Supervisor. Therefore, you do not meet the Own Occupation Definition of Disability, and your claim must be denied.

We understand that you continue to have ongoing medical conditions, and pending up upcoming surgery. However, we must focus on whether the medical documentation in your file supports limitations and restrictions of a severity to prevent you from working in your own sedentary level occupation on/around the time of your cease work on September 14, 2005, as well as while you were a covered member under the Group Policy (please see enclosed policy provision "When Your Insurance Ends"). The Physician Consultant's review found you were capable of full-time sedentary work with the above noted limitations. This is consistent with the recommendations from your orthopedist, Dr Pfeffer, who describes limitations on the APS from December 7, 2005, as difficulty walking due to unilateral foot pain post-operatively, and that you are capable of sedentary work.

STND1149-00409

# STANDARD INSURANCE COMPANY

Patricia Broyles                                    5                              March 28, 2006

The above-referenced Group Policy also provides a benefit that continues your group life insurance without payment of premium provided you meet the eligibility requirements. Please refer to the enclosed policy provision which describes this benefit.

> You must have become disabled while insured under the above Group Policy.

> You must be under age 60 at the time you became disabled.

> You must be totally disabled.

You do not appear to be eligible for this benefit because you do not appear to be totally disabled from all occupations.

In order for your life insurance to remain in force, premium payments must be continued. Please contact AUL Corporation regarding your membership status and premium payments.

When your life insurance ceases, you may be eligible to convert your insurance to an individual policy. We have enclosed a Request for Group Life Conversion Materials form. If you wish to convert to an individual life policy, you must return your request to the address at the top of the form. Please note the 31-day limit for initiating conversion. If you have any questions about conversion or premium rates, please call The Standard at 1-800-378-4668.

Your claim has been denied for the reasons outlined above. If you want us to review your claim and this decision, you must send us a written request within 180 days after you receive this letter. If you request a review, you will have the right to submit additional information in connection with your claim. Additional information which would be helpful to a reconsideration of your claim should include medical documentation that supports your limitations and restrictions, at the time of your cease work and while you were a covered member under the Group Policy, are more severe than we have previously understood and that you are unable to perform sedentary level work. Please include any such new information along with your request for review.

If you request a review, it will be conducted by an individual who was not involved in the original decision. (If necessary, the person conducting the review will consult with a medical professional with regard to your claim. The medical professional will be someone who was not previously consulted in connection with your claim.) The review would be completed within 45 days after we receive your request unless circumstances beyond our control require an extension of an additional 45 days. If you request a review and the decision on your claim is upheld, you will have the right to file suit under Section 502(a) of the Employee Retirement Income Security Act (ERISA) or state law, whichever is applicable.

We want to let you know that upon further investigation, other valid reasons for limiting or denying your claim, which have not been previously considered, could come to our attention. Therefore, Standard Insurance Company reserves the right to consider and assert other reasons for limitation or denial of your claim should they occur in the future.

STND1149-00408

# STANDARD INSURANCE COMPANY

Patricia Broyles                                   6                                   March 28, 2006

Please consult your Certificate of Insurance or Summary Plan document for a complete description of your rights under the terms of the AUL Corporation Group Policy.

If you also wish to have this matter reviewed by the State of California Department of Insurance, you may contact the Department of Insurance at 300 South Spring Street, South Tower, Los Angeles, California 90013. That office can also be reached by calling 213.897.8921 or toll-free 800.927.4357.

If I can answer any questions about this letter or any other aspect of your claim, please feel free to contact me.

Sincerely,

Shannon Teed
Disability Benefits Analyst
Employee Benefits Department
(800) 368-1135 ext. 7598

Enclosures

*Scanned 3/30/06*

Standard Insurance Company 

Continued Benefits
920 SW Sixth Avenue    Portland OR 97204    800.378.4668 Tel

**Request for Group Life
Conversion Materials**

## Important Information for Owners of Group Life Insurance Certificates

We are happy to inform you that under your Standard Insurance Company Group Life Insurance coverage, you and your insured dependents are offered the benefit of obtaining an individual life insurance policy. In order to take advantage of this opportunity, we must receive an application and premium payment within 31 days of the date of cessation or reduction of group life insurance coverage. This option to convert may be very valuable to you, as evidence of insurability will not be required. To take advantage of the privilege of converting your insurance, please complete and return this form to the address above. We will provide the necessary forms and information. For your convenience, at your election, we can send the information electronically to your email address or we can mail the forms to your street address.

## Member Information

| Member's Name | | | Today's Date | |
|---|---|---|---|---|
| Insured's Name, If different | | | Phone ( ) | |
| Member's Address | | City | State | Zip |
| Email Address | | | | |
| Please indicate the applications you will need.<br><br>☐ Member   ☐ Spouse   ☐ Child – No. of children: _____ | | Please send application forms via:<br><br>☐ E-mail   ☐ Regular Mail | | |
| Group Name and Policy No. | | Termination or Reduction Date of Insurance | | |

(1/05)

STND1149-00406

# Physical Demands – Strength Ratings*

**S- Sedentary Work** – Exerting up to 10 pounds of force occasionally. (Occasionally: activity or condition exist up to 1/3 of the time) and/or a negligible amount force frequently (Frequently: activity or condition exists from 1/3 to 2/3 of the time) to lift, carry, push, pull, or otherwise move objects, including the human body. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met.

**L- Light Work** – Exerting up to 20 pounds of force occasionally, and/or up to 10 pounds of force frequently, and/or a negligible amount of force constantly (Constantly: activity or condition exists 2/3 or more of the time) to move objects. Physical demand requirements are in excess of those for Sedentary Work. Even though the weight lifted may be only a negligible amount, a job should be rated Light Work: (1) when it requires walking or standing to significant degree; or (2) when it requires sitting most of the time but entails pushing and/or pulling of arm or leg controls; and/or (3) when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible. NOTE: The constant stress and strain of maintaining a production rate pace, especially in an industrial setting, can be and is physically demanding of a worker even though the amount of force exerted is negligible.

**M- Medium Work** – Exerting 20 to 50 pounds of force occasionally, and/or 10 to 25 pounds of force frequently, and/or greater than negligible up to 10 pounds of force constantly to move objects. Physical Demand requirements are in excess of those for Light Work.

**H- Heavy Work** – Exerting 50 to 100 pounds of force occasionally, and/or 25 to 50 pounds of force frequently, and/or 10 to 20 pounds of force constantly to move objects. Physical Demand requirements are in excess of those Medium Work.

**V- Very Heavy Work** – Exerting to excess of 100 pounds of force occasionally, and/or in excess to 50 pounds of force frequently, and/or in excess of 20 pounds of force constantly to move objects. Physical Demand requirements are in excess of those for Heavy Work.

\* As described in the Dictionary of Occupational Titles, Fourth Edition Revised 1991 US Department of Labor Employment and Training Administration.

STND1149-00405



# STANDARD INSURANCE COMPANY

A Stock Life Insurance Company
900 SW Fifth Avenue
Portland, Oregon 97204-1282
(503) 321-7000

*People. Not Just Policies.®*

## GROUP LONG TERM DISABILITY INSURANCE STATEMENT OF COVERAGE

| | | | |
|---|---|---|---|
| **Policyowner:** | Fleet National Bank, Trustee of The Standard Insurance Company Group | **Employer:** | A.U.L. CORPORATION |
| **Policy Number:** | 638213-T | **Group Number** | 623691-C |
| **Policy Effective Date:** | August 1, 1999 | **Employer Effective Date:** | January 1, 2000 |

The Group Policy has been issued to the Policyowner. An employer must apply for group long term disability insurance coverage under the Group Policy and join the Standard Insurance Company Group Insurance Trust by submitting a completed application and agreeing to pay premiums. No Employer's coverage under the Group Policy is in effect until approved in writing by us.

The Group Policy contains numerous optional and variable provisions. The options and variables we have approved for the Employer's coverage under the Group Policy are contained in this Statement Of Coverage. Only those provisions of the Group Policy which appear in this Statement Of Coverage will apply to the Employer's coverage under the Group Policy. All provisions on this and the following pages are part of the Statement Of Coverage.

The consideration for the Employer's coverage under the Group Policy is the application of the Employer and the payment by the Employer of premiums as provided herein.

Subject to the **Policyowner And Employer Provisions** and the **Incontestability Provisions**, the Employer's coverage under the Group Policy (a) is effective for the Initial Rate Guarantee Period shown in the **Coverage Features**, and (b) may be renewed for successive renewal periods by the payment on each renewal date, provided the number of persons insured on each renewal date is neither less than the Minimum Participation shown in the **Coverage Features**. The length of successive renewal periods will be determined by us, but will not be less than 12 months. For purposes of effective dates and ending dates under the Group Policy, all days begin and end at 12:00 midnight Standard Time (a) at the Employer's address with respect to the Employer and (b) at the Policyowner's address with respect to the Policyowner.

The terms "you" and "your" mean the Member. "We", "us", and "our" mean Standard Insurance Company. Other defined terms appear with their initial letters capitalized. Section headings, and references to them, appear in boldface type.

STANDARD INSURANCE COMPANY

By

_Ronald E. Timpe_
President

_J. Greg Ness_
Corporate Secretary

GP399-LTD/TRUST

75-04-00 BP
**TRUE COPY**

♻ *Printed on recycled paper.*



## REINSTATEMENT OF INSURANCE

If your insurance ends, you may become insured again as a new Member.  However, the following will apply:

1. If you cease to be a Member because of a covered Disability, your insurance will end; however, if you become a Member again immediately after LTD Benefits end, the Eligibility Waiting Period will be waived and, with respect to the condition(s) for which LTD Benefits were payable, the Preexisting Condition Exclusion will be applied as if your insurance had remained in effect during that period of Disability.

2. If your insurance ends because you cease to be a Member for any reason other than a covered Disability, and if you become a Member again within 90 days, the Eligibility Waiting Period will be waived.

3. If your insurance ends because you fail to make a required premium contribution, you must provide Evidence Of Insurability to become insured again.

4. If your insurance ends because you are on a federal or state-mandated family or medical leave of absence, and you become a Member again immediately following the period allowed, your insurance will be reinstated pursuant to the federal or state-mandated family or medical leave act or law.

5. The Preexisting Conditions Exclusion will be applied as if insurance had remained in effect in the following instances:

   a. If you become insured again within 90 days.

   b. If required by federal or state-mandated family or medical leave act or law and you become insured again immediately following the period allowed under the family or medical leave act or law.

6. In no event will insurance be retroactive.

LT.RE.OT.1

## DEFINITION OF DISABILITY

You are Disabled if you meet the following definitions during the periods they apply:

   A. Own Occupation Definition Of Disability.

   B. Any Occupation Definition Of Disability.

A. Own Occupation Definition Of Disability

During the Benefit Waiting Period and the Own Occupation Period you are required to be Disabled only from your Own Occupation.

You are Disabled from your Own Occupation if, as a result of Physical Disease, Injury, Pregnancy or Mental Disorder:

1. You are unable to perform with reasonable continuity the Material Duties of your Own Occupation; and

2. You suffer a loss of at least 20% in your Indexed Predisability Earnings when working in your Own Occupation.

Note: You are not Disabled merely because your right to perform your Own Occupation is restricted, including a restriction or loss of license.

STND1149-00403



During the Own Occupation Period you may work in another occupation while you meet the Own Occupation Definition Of Disability. However, you will no longer be Disabled when your Work Earnings from another occupation meet or exceed 80% of your Indexed Predisability Earnings. Your Work Earnings may be Deductible Income. See **Return To Work Provisions and Deductible Income.**

Own Occupation means any employment, business, trade, profession, calling or vocation that involves Material Duties of the same general character as the occupation you are regularly performing for your Employer when Disability begins. In determining your Own Occupation, we are not limited to looking at the way you perform your job for your Employer, but we may also look at the way the occupation is generally performed in the national economy. If your Own Occupation involves the rendering of professional services and you are required to have a professional or occupational license in order to work, your Own Occupation is as broad as the scope of your license.

Material Duties means the essential tasks, functions and operations, and the skills, abilities, knowledge, training and experience, generally required by employers from those engaged in a particular occupation that cannot be reasonably modified or omitted. In no event will we consider working an average of more than 40 hours per week to be a Material Duty.

B.  Any Occupation Definition Of Disability

During the Any Occupation Period you are required to be Disabled from all occupations.

You are Disabled from all occupations if, as a result of Physical Disease, Injury, Pregnancy or Mental Disorder, you are unable to perform with reasonable continuity the Material Duties of Any Occupation.

Any Occupation means any occupation or employment which you are able to perform, whether due to education, training, or experience, which is available at one or more locations in the national economy and in which you can be expected to earn at least 60% of your Indexed Predisability Earnings within twelve months following your return to work, regardless of whether you are working in that or any other occupation.

Material Duties means the essential tasks, functions and operations, and the skills, abilities, knowledge, training and experience, generally required by employers from those engaged in a particular occupation that cannot be reasonably modified or omitted. In no event will we consider working an average of more than 40 hours per week to be a Material Duty.

Your Own Occupation Period and Any Occupation Period are shown in the **Coverage Features**.

(OWN_ANY_WITH 40)   LT.DD.OT.1

## RETURN TO WORK PROVISIONS

A.  Return To Work Responsibility

During the Own Occupation Period no LTD Benefits will be payable for any period when you are able to work in your Own Occupation and able to earn at least 20% of your Indexed Predisability Earnings, but you elect not to work.

During the Any Occupation Period no LTD Benefits will be payable for any period when you are able to work in Any Occupation and able to earn at least 20% of your Indexed Predisability Earnings, but you elect not to work.

B.  Return To Work Incentive

You may serve your Benefit Waiting Period while working if you meet the Own Occupation Definition Of Disability.

STND1149-00402



3. You were continuously insured under the Group Policy from the effective date of your insurance under the Group Policy through the date you became Disabled from the Preexisting Condition; and

4. Benefits would have been payable under the terms of the Prior Plan if it had remained in force, taking into account the preexisting condition exclusion, if any, of the Prior Plan.

For such a Disability, the amount of your LTD Benefit will be the lesser of:

    a. The monthly benefit that would have been payable under the terms of the Prior Plan if it had remained in force; or

    b. The LTD Benefit payable under the terms of your Employer's coverage under the Group Policy, but without application of the Preexisting Condition Exclusion.

Your LTD Benefits for such a Disability will end on the earlier of the following dates:

    a. The date benefits would have ended under the terms of the Prior Plan if it had remained in force; or

    b. The date LTD Benefits end under the terms of your Employer's coverge under the Group Policy.

(PX)  LT.CC.OT.2

## WHEN YOUR INSURANCE ENDS

Your insurance ends automatically on the earliest of:

1. The date the last period ends for which a premium contribution was made for your insurance.

2. The date the Group Policy terminates.

3. The date your Employer's coverage under the Group Policy terminates.

4. The date your employment terminates.

5. The date you cease to be a Member. However, your insurance will be continued during the following periods when you are absent from Active Work, unless it ends under any of the above.

    a. During the first 90 days of a temporary or indefinite administrative or involuntary leave of absence or sick leave, provided your Employer is paying you at least the same Predisability Earnings paid to you immediately before you ceased to be a Member. A period when you are absent from Active Work as part of a severance or other employment termination agreement is not a leave of absence, even if you are receiving the same Predisability Earnings.

    b. During a leave of absence if continuation of your insurance under the Group Policy is required by a state-mandated family or medical leave act or law.

    c. During any other temporary leave of absence approved by your Employer in advance and in writing and scheduled to last 30 days or less. A period of Disability is not a leave of absence.

LT.EN.OT.2

## WAIVER OF PREMIUM

We will waive payment of premium for your insurance while LTD Benefits are payable.

LT.WP.OT.1

STND1149-00401




# STANDARD INSURANCE COMPANY

A Mutual Life Insurance Company
900 SW Fifth Avenue
Portland, Oregon 97204–1282
(503) 321–7000

Dedicated to Excellence

## GROUP LIFE INSURANCE POLICY

| | |
|---|---|
| Policyowner: | A.U.L. CORPORATION |
| Policy Number: | 623691–A |
| Effective Date: | February 1, 1996 |

The consideration for this Group Policy is the application of the Policyowner and the payment by the Policyowner of premiums as provided herein.

Subject to the **Policyowner Provisions** and the **Incontestability Provisions**, this Group Policy (a) is issued for the Initial Rate Guarantee Period shown in the **Coverage Features**, and (b) may be renewed for successive renewal periods by the payment of the premium set by us on each renewal date. The length of each renewal period will be set by us, but will not be less than 12 months.

For purposes of effective dates and ending dates under this Group Policy, all days begin and end at 12:00 midnight Standard Time at the Policyowner's address.

**This policy includes an Accelerated Benefit. The receipt of this benefit may be taxable and may affect your eligibility for Medicaid or other government benefits or entitlements. You should consult your personal tax and/or legal advisor before you apply for an Accelerated Benefit.**

All provisions on this and the following pages are part of this Group Policy. "You" and "your" mean the Member. "We", "us", and "our" mean Standard Insurance Company. Other defined terms appear with their initial letters capitalized. Section headings, and references to them, appear in bold face type.

STANDARD INSURANCE COMPANY

By

*Ronald E. Timpe*
President

*Robert W. Maver*
Secretary

GP190–LIFE

TRUE COPY
3/7/96

✹ Printed on recycled paper.

You will also meet the Active Work requirement if:

1.  You were absent from Active Work because of a regularly scheduled day off, holiday, or vacation day;

2.  You were Actively At Work on your last scheduled work day before the date of your absence; and

3.  You were capable of Active Work on the day before the scheduled effective date of your insurance or increase in your insurance.

LI.AW.02

## STRIKE CONTINUATION

Insurance may be continued for up to 6 months while you are absent from Active Work because of a strike, lockout or other general work stoppage caused by a labor dispute. Rules 1 through 4 below will apply.

1.  When your compensation is suspended or terminated because of a work stoppage, your Employer will immediately notify you in writing of your rights under this provision. Your Employer will mail the notice to you at your last address on record with the Employer.

2.  You must pay the entire premium for your insurance, including the Employer's share, if any, to your Employer on or before each Premium Due Date.

3.  The premiums for your insurance during the work stoppage will equal a percentage of the premium rate in effect on the date the work stoppage began (see **Coverage Features**). We may change premium rates during the work stoppage according to the terms of the Group Policy.

4.  Insurance continued under this provision will end on the earliest of:

    a.  Any Premium Due Date if you fail to make the required premium contribution to your Employer on or before that date.

    b.  The date you have been absent from Active Work for 6 months.

    c.  On the date you begin full-time employment with another employer.

    d.  At our option, on any Premium Due Date if less than 75% of the Members eligible to continue insurance under this provision make the required premium payment to the Employer.

LI.SK.01

## WAIVER OF PREMIUM

A.  Waiver Of Premium Benefit

    Insurance will be continued without payment of premiums while you are Totally Disabled if:

    1.  You become Totally Disabled while insured under the Group Policy and under age 60;

    2.  You complete your Waiting Period; and

    3.  You give us satisfactory Proof Of Loss.

B.  Definitions For Waiver Of Premium

    1.  Insurance means all your insurance under the Group Policy, except AD&D Insurance.

    2.  Totally Disabled means that, as a result of Sickness, accidental Injury, or Pregnancy, you are unable to perform with reasonable continuity the material duties of any gainful occupation for which you are reasonably fitted by education, training and experience.

    3.  Waiting Period means the 180 consecutive day period beginning on the date you become Totally Disabled. Waiver Of Premium begins when you complete the Waiting Period.

STND1149-00399

C. Premium Payment

Premium payment must continue until the later of:

1. The date you complete your Waiting Period; and

2. The date we approve your claim for Waiver Of Premium.

D. Refund Of Premiums

We will refund up to 12 months of the premiums that were paid for Insurance after the date you become Totally Disabled.

E. Amount Of Insurance

The amount of Insurance continued without payment of premium is the amount in effect on the day before you become Totally Disabled subject to the following:

1. The amount of Supplemental Life Insurance on your Spouse will be the lesser of:

a. The amount in effect on the day before you become Totally Disabled; and

b. The amount in effect one year before the date you become Totally Disabled.

2. If you receive an Accelerated Benefit, Insurance will be reduced according to the **Accelerated Benefit** provision.

F. Effect Of Death During The Waiting Period

If you die during the Waiting Period and are otherwise eligible for Waiver Of Premium, the Waiting Period will be waived.

G. Termination Or Amendment Of The Group Policy

Insurance will not be affected by termination or amendment of the Group Policy after you become Totally Disabled.

H. When Waiver Of Premium Ends

Waiver of Premium ends on the earliest of:

1. The date you cease to be Totally Disabled;

2. 90 days after the date we mail you a request for additional Proof Of Loss, if it is not given;

3. The date you fail to attend an examination or cooperate with the examiner;

4. With respect to the amount of Insurance which an insured has converted, the effective date of the individual life insurance policy issued to the insured; and

5. The date you reach age 65.

LI.WP.22

## ACCELERATED BENEFIT

A. Accelerated Benefit

If you qualify for Waiver Of Premium and incur a Qualifying Medical Condition while you are insured under the Group Policy, we will pay an Accelerated Benefit to you according to the terms of the Group Policy after we receive satisfactory Proof Of Loss.

Qualifying Medical Condition means you are terminally ill, with a life expectancy of less than 12 months.

We may have you examined at our expense in connection with your claim for an Accelerated Benefit. Any such examination will be conducted by one or more Physicians of our choice.

STND1149-00398



Standard Insurance Company

**Independent Review Request
for the Quality Assurance Unit**

Claimant _PATRICIA Broyles_

Analyst _GEORGE CHAN_ ext. _8606_

Claim No. _375932_

Team _Regional WEST_

Policyowner _AUL Corp_

Supervisor _____
(Signature)

State _CA_

Date of Decision Letter _3/28/06_ Date Review was Requested _7/28/06_ Date Referred to QA _8/7/7_
(use date we received the request)

Current Claim Status:   Closed   (Denied)   Active   Pending

Review Requested by:   (Claimant)   Attorney   Other _____

Type of Claim:   (LTD)   STD   Waiver   ASO   Life   Other _____
(circle all that apply)

If ASO, please note plan sponsor's information:

Name _____

Address _____

Phone # _____

Check any that apply:

☐ Claim has been previously reviewed by QA    Specialist who reviewed the claim? _____

☐ Insurance Commissioner Complaint

☐ Attorney Involvement

Other Issues/Comments:

| Please attach copies of all applicable policy provisions before referring to QA. |
| --- |

**QA Use:**

Claimant Age/Sex _____    Reason for Request _____

Own Occupation _____    Diagnoses _____

Assigned to _____

Date Assigned __/__/__   60 Days __/__/__    60 Days __/__/__   Decision Date __/__/__

Outcome:
☐ Upheld
☐ Returned for add'l investigation without payment
☐ Returned for add'l investigation with payment
☐ Overturned – Disabled from any occupation
☐ Overturned – Disabled from own occupation
☐ Overturned – Limit or exclusion does not apply

☐ Overturned – Reopened for closed period
☐ Overturned – Own occ. vs. Own job
☐ Overturned – Insured/Disabled while insured
☐ Overturned – PDE/overpayment/offsets
☐ Overturned – STD not work related
☐ Overturned – STD accident vs. illness

Comments: _____

SI-4848

(6/99)

STND1149-00397

George Chan

Standard Insurance Company
(971)321-8606

1/4/07

Broyles (# 375032)

called Anna (ER) (707) 257-9700 x255.

Per Anna, Ms. Broyles out on 9/14/05.
did not RTW, on FMLA & ended
12/8/05. No SL paid during FMLA period.

employment terminated on 9/21/06.

G.

The Standard℠

STND1149-00396

**George Chan**

Standard Insurance Company
(971)321-8606

Broyles (# 375032)                    1|4|07

Call from Kathleen Herdell (Atty.). She
wanted to know status on claim. I
told her we've reviewed the medical
info submitted & unable to open
claim. I asked if she would like
letter to address to her. She said
she's not "really representing" Ms. Broyles.
So letter can go to Ms. Broyles,

                                        G.

STND1149-00395



December 11, 2006


Patricia Broyles
3321 Anita Ct
Napa CA  94558

Re:    AUL Corporation
       Group No. 623691
       Claim No. 00375832

Dear Ms. Broyles:

We are writing to update you on the status of the review of your Long Term Disability (LTD) claim with Standard Insurance Company (The Standard).

Your file has been forwarded for medical review and we are awaiting these results.  Therefore, we are unable to complete our review at this time.

If the new information is sufficient to change our decision, we will do so.  If not, we will explain why, and your claim will be forwarded to our Administrative Review Unit (ARU) for an independent review of this decision.

We will keep you informed regarding the status of our review.  Should you have any questions, please do not hesitate to contact our office.

Sincerely,

J. Hewett /st.

Jason Hewett
Disability Benefits Analyst
(800) 368-1135    ext. 7598

900 SW Fifth Avenue
Portland OR 97204-1235
tel 888.937.4783

Standard Insurance Company — A subsidiary of StanCorp Financial Group, Inc.

STND1149-00394



November 20, 2006

PATRICIA A BROYLES
3321 ANITA CT
NAPA, CA  94558

Re:    AUL Corporation
       Group No.        623691
       Claim No.        00375832

Dear Ms. Broyles:

We are writing to update you on the status of the review of your claim for Long Term Disability (LTD) benefits with Standard Insurance Company (The Standard).

Thank you for providing us with copies of a letter from Dr. Shifflet, notice from the state of California that you exhausted your State Disability Insurance benefits as of September 23, 2006, Napa Valley Physical Therapy Center Discharge Summary and treatment records, admission and hospitalization records for total knee replacement surgery on April 12, 2006, admission and hospitalization records for July 11, 2006 total knee arthroscopy (TKA), Queen of the Valley Physical Therapy records, Queen of the Valley Hospital admission and physical therapy records and your record of medications for the period beginning January 1, 2005 through October 11, 2006.

We have not begun the review process because we were awaiting the additional letter from Dr. Pfeffer. However, per our phone conversation today, we will now review the additional information you submitted to us and you will send the letter from Dr. Pfeffer as soon as you receive it.

If the new information is sufficient for us to approve your claim, we will do so. If not, we will explain why and your claim will be forwarded to our Administrative Review Unit for an independent review of this decision.

We will keep you informed regarding the status of our review. Should you have any questions, please do not hesitate to contact me.

PO Box 2800  Portland OR 97208-2800  tel 800.368.1135
Standard Insurance Company - A subsidiary of StanCorp Financial Group

STND1149-00393

PATRICIA A BROYLES                 2                    November 20, 2006

Sincerely,

Jason Hewett
Disability Benefits Analyst
800-368-1135  ext. 7598

PO Box 2800  Portland OR 97208-2800  tel 800.368.1135
Standard Insurance Company - A subsidiary of StanCorp Financial Group

STND1149-00392



**Mark Goodson Bldg.**
**444 S. San Vicente Blvd.**
**Suite 603**
**Los Angeles, CA 90048**
**310-423-3338 Telephone**
**310-423-9958 Fax**

# Fax

| To: | Jason Hewitt | From: | Glenn Pfeffer, MD / Susan Muse |
|---|---|---|---|
| Fax: | 971-321-7437 | Pages: | 2 |
| Phone: | | Date: | |
| Re: | Patricia Broyler | CC: | |

☐ Urgent   ☐ For Review   ☐ Please Comment

STND1149-00391

NOV-21-2007 10:50AM    C-S ORTHO CENTER    NO. 1351    P. 2



# CEDARS-SINAI MEDICAL CENTER.
## Orthopedic Center

Glenn B. Pfeffer, MD
Director, Foot & Ankle Center

November 20, 2006

Ms. Jason Hewett, Disability Benefits Analyst,
The Standard Insurance Company
900 SW Fifth Avenue
Portland, OR 97204-1235

Re:    Patricia Broyles
       AUL Corporation, Group Policy 623691
       Claim No. 00375832

Dear Mr. Hewett:

The above patient, Patricia Broyles, asked me to clarify my medical opinion of her condition. Ms. Broyles has been incapable of working in her own and any other occupation either on a full or part time basis, including doing sedentary work, since September 15, 2005. Since that date, she has been unable to sit, stand or walk for a significant period of time. My assessment is based on the progression of her injury, the limitations of her physical incapacity, pain medications she has needed to manage her condition, and her future medical needs.

It is unclear to me at this time if Ms. Broyles will be able to return to work; however, she will not be able to do so before the Fall of 2007.

I am available to discuss my opinions with your Board certified Orthopedic Physician Consultant if it will assist.

Sincerely,

Glenn B. Pfeffer, M.D.

Form No. 8792 (Rev. 9/05)

444 S. San Vicente Blvd. ■ Suite 603 ■ Los Angeles, CA 90048
Office (310) 423-4566 or toll free (866) 516-7846 ■ Fax (310) 423-9958 or toll free (866) 686-7846
www.cedars-sinai.edu

STND1149-00390

************* -COMM. JOURNAL- ***************** DATE NOV-21-20__ **** TIME 15:01 *** P.01

MODE = MEMORY TRANSMISSION          START=NOV-21 14:59      END=NOV-21 15:01

FILE NO.= 212

| STN NO. | COM | ABBR NO. | STATION NAME/TEL.NO. | PAGES | DURATION |
|---------|-----|----------|----------------------|-------|----------|
| 001 | OK | & | 917079632622 | 003/003 | 00:00'50" |

-STANDARD INS GROUP LTD -

*************************** -503 321 7437 - ***** - 503 321 7437- *********

PO Box 2800
Portland Oregon 97208-9829
1-800-368-1135 Ext 8606
(503) 321-7437 Fax

**The Standard**

# Fax

| To: | Kathleen A. Herdell | From: | Jason Hewett |
|-----|---------------------|-------|--------------|
| **Fax:** | (707) 963-2622 | **Pages:** | 3, including cover page |
| **Phone:** | (707) 963-3800 | **Date:** | 11/21/2006 |
| **Re:** | Patricia Broyles | **CC:** | |

X Urgent    ☐ For Review    ☐ Please Comment    ☐ Please Reply    ☐ Please Recycle

Ms. Herdell:

Your client, Patricia Broyles, requested that I fax you a copy of the attached letter regarding my phone conversation with her yesterday, November 20, 2006.

Should you or your client have any questions, please feel free to contact me at 1-800-368-1135, Ext 7588.

Respectfully,

Jason Hewett, Disability Benefits Analyst

**WARNING PRIVILEGED AND CONFIDENTIAL**
The information contained in this facsimile message is confidential, privileged, and exempt from disclosure to third persons and is intended solely for the use of the individual entity named above. If the recipient or reader of this message is not the intended recipient, or the employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any retention, dissemination, distribution, copying or unauthorized use of this communication is strictly prohibited. If you have received this facsimile in error, please notify the sender immediately by telephone, and also return the facsimile and any copies thereof to the sender at the above address via U.S. Postal Service. All postal expenses will be paid by sender. Thank you.    ORIGINAL AVAILABLE ON REQUEST

STND1149-00389



November 20, 2006


PATRICIA A BROYLES
3321 ANITA CT
NAPA, CA 94558

Re:    AUL Corporation
       Group No.      623691
       Claim No.      00375832

Dear Ms. Broyles:

We are writing to update you on the status of the review of your claim for Long Term Disability (LTD) benefits with Standard Insurance Company (The Standard).

Thank you for providing us with copies of a letter from Dr. Shifflet, notice from the state of California that you exhausted your State Disability Insurance benefits as of September 23, 2006, Napa Valley Physical Therapy Center Discharge Summary and treatment records, admission and hospitalization records for total knee replacement surgery on April 12, 2006, admission and hospitalization records for July 11, 2006 total knee arthroscopy (TKA), Queen of the Valley Physical Therapy records, Queen of the Valley Hospital admission and physical therapy records and your record of medications for the period beginning January 1, 2005 through October 11, 2006.

We have not begun the review process because we were awaiting the additional letter from Dr. Pfeffer. However, per our phone conversation today, we will now review the additional information you submitted to us and you will send the letter from Dr. Pfeffer as soon as you receive it.

If the new information is sufficient for us to approve your claim, we will do so. If not, we will explain why and your claim will be forwarded to our Administrative Review Unit for an independent review of this decision.

We will keep you informed regarding the status of our review. Should you have any questions, please do not hesitate to contact me.

PO Box 2800 Portland OR 97208-2800 tel 800.368.1135
Standard Insurance Company - A subsidiary of StanCorp Financial Group

STND1149-00388

PATRICIA A BROYLES                    2                    November 20, 2006

Sincerely,

*Jason Hewett*

Jason Hewett
Disability Benefits Analyst
800-368-1135  ext. 7598

PO Box 2800  Portland OR 97208-2800  tel 800.368.1135
Standard Insurance Company - A subsidiary of StanCorp Financial Group

STND1149-00387



November 20, 2006

PATRICIA A BROYLES
3321 ANITA CT
NAPA, CA 94558

Re:     AUL Corporation
        Group No.        623691
        Claim No.        00375832

Dear Ms. Broyles:

We are writing to update you on the status of the review of your claim for Long Term Disability (LTD) benefits with Standard Insurance Company (The Standard).

Thank you for providing us with copies of a letter from Dr. Shifflet, notice from the state of California that you exhausted your State Disability Insurance benefits as of September 23, 2006, Napa Valley Physical Therapy Center Discharge Summary and treatment records, admission and hospitalization records for total knee replacement surgery on April 12, 2006, admission and hospitalization records for July 11, 2006 total knee arthroscopy (TKA), Queen of the Valley Physical Therapy records, Queen of the Valley Hospital admission and physical therapy records and your record of medications for the period beginning January 1, 2005 through October 11, 2006.

We have not begun the review process because we were awaiting the additional letter from Dr. Pfeffer. However, per our phone conversation today, we will now review the additional information you submitted to us and you will send the letter from Dr. Pfeffer as soon as you receive it.

If the new information is sufficient for us to approve your claim, we will do so. If not, we will explain why and your claim will be forwarded to our Administrative Review Unit for an independent review of this decision.

We will keep you informed regarding the status of our review. Should you have any questions, please do not hesitate to contact me.

PO Box 2800  Portland OR 97208-2800  tel 800.368.1135
Standard Insurance Company - A subsidiary of StanCorp Financial Group

STND1149-00386

PATRICIA A BROYLES                    2                    November 20, 2006

Sincerely,

Jason Hewett
Disability Benefits Analyst
800-368-1135  ext. 7598

PO Box 2800  Portland OR 97208-2800  tel 800.368.1135
Standard Insurance Company - A subsidiary of StanCorp Financial Group

STND1149-00385

From the desk of:                                           11/21/2006 1:42 PM
**JASON HEWETT**

Re: PATRICIA A BROYLES                    Policyholder: AUL CORPORATION
Member SS#: 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                   Group ID#: 10037483
     Claim #: 00375832                    Policy #: 623691

Ms. Broyles called me today to let me know that she was faxing a copy of the letter from Dr. Pfeffer. She said that she would mail the hard copy to me as well but wanted me to have the information as soon as possible.

I called her to let her know that I had received the faxed letter. She thanked me for letting her know.

Page 1 of 1

Signed _____

THE STANDARD

STND1149-00384

From the desk of:                                                        11/20/2006 3:37 PM
**JASON HEWETT**

Re: PATRICIA A BROYLES                    Policyholder: AUL CORPORATION
Member SS#: 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                        Group ID#: 10037483
Claim #: 00375832                                  Policy #: 623691

Ms. Broyles called me back and wanted to ask if the medical information that she sent in on 10/28/06 had been reviewed. I told her that I had reviewed it but it had not been reviewed by the Medical Consultant. I told her that it had not been reviewed because I was of the understanding that she wanted us to wait until the letter from Dr. Pfeffer was sent to us.

She requested that a letter to document that we spoke today regarding her contested claim and that she requested that the information that we've received be reviewed and that the letter from Dr. Pfeffer be reviewed once it arrives. I told her that I would be happy to send a letter to her documenting the conversation. She asked that it be faxed to her attorney's office fax number, 707-963-2622. I verified that she still wanted all communication directed to her and not the attorney and she said yes.

Page 1 of 1                                          Signed  _____

STND1149-00383

From the desk of:                                                                 11/20/2006 3:05 PM
**JASON HEWETT**

      Re: PATRICIA A BROYLES                 Policyholder: AUL CORPORATION
Member SS#: 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                      Group ID#: 10037483
    Claim #: 00375832                           Policy #: 623691

Ms. Broyles returned my call and let me know that she still does not have the letter from Dr. Pfeffer and that we should proceed with the review of her claim and she will fax the letter as soon as she receives it.

I thanked her for letting me know.

Page 1 of 1                                              Signed _____

STND1149-00382

From the desk of:                                                    11/20/2006 1:26 PM
**JASON HEWETT**

Re: PATRICIA A BROYLES              Policyholder: AUL CORPORATION
Member SS#: 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             Group ID#: 10037483
Claim #: 00375832                   Policy #: 623691

I returned Ms. Broyles' call on Friday afternoon 11/17/06 at 4:15 p.m. to ask her about the additional letter from her physician that she said she would be sending in.  She returned my call this morning and left a voicemail and I called her back and she was not home so I left another voicemail.

I let her know that I am waiting to hear about the additional letter so that I'll know whether or not she wants us to begin the review of her contested claim.

Page 1 of 1                                    Signed _____

THE STANDARD

STND1149-00381

From the desk of:                                      10/27/2006 11:14 AM
**JASON HEWETT**

     Re: PATRICIA A BROYLES                    Policyholder: AUL CORPORATION
Member SS#: 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                          Group ID#: 10037483
    Claim #: 00375832                            Policy #: 623691

Ms. Broyles called this morning to let me know that she is putting the additional medical information in the mail to me today regarding her contested claim. She said that the only thing that she is still waiting for is a letter and some chart notes from Dr. Pfeffer. She said that she has been calling them every day to keep on top of it.

I told her that I would review the new medical information when I receive it and let her know if anything else is needed at that point. She thanked me for my time.

Page 1 of 1                                      Signed _____

STND1149-00380



**TheStandard**
Positively different.

October 4, 2006

PATRICIA A BROYLES
3321 ANITA CT
NAPA, CA 94558

Re:    AUL Corporation
       Group No.        623691
       Claim No.        00375832

Dear Ms. Broyles:

We are writing in regard to your Long Term Disability (LTD) claim with Standard Insurance Company (The Standard).

As we agreed in our phone conversation on October 3, 2006, you will provide the additional medical information, including records from Drs. Shifflett and Pfeffer, physical therapy notes from Napa Valley physical Therapy Center and Queen of the Valley Hospital, and pharmacy records showing pain medications prescribed to The Standard no later than November 3, 2006. Since you have requested additional time to submit information in support of your appeal, we will defer completion of our review. If this information is not received by that date, we will complete our review with the medical information we currently have.

Thank you for your continuing cooperation and patience.

If you have any questions about this letter or your claim, please write or call me.

Sincerely,

Jason Hewett
Disability Benefits Analyst
800-368-1135 ext. 7598

PO Box 2800  Portland OR 97208-2800  tel 800.368.1135
Standard Insurance Company - A subsidiary of StanCorp Financial Group



From the desk of:                                    10/3/2006 1:47 PM
**JASON HEWETT**

     Re: PATRICIA A BROYLES          Policyholder: AUL CORPORATION
Member SS#: 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                    Group ID#: 10037483
   Claim #: 00375832                       Policy #: 623691

Ms. Broyles called me back and said that she has an appointment with Dr. Shiflett this week to have
x-rays done in preparation for her right knee replacement. She said that she will get the information
she needs from him that day and she is still working on getting the information from Dr. Pfeffer and
the physical therapy notes.

She told me that her mother passed away and she is been dealing with her estate so she's been
distracted. I told her that if we could get the information within 30-days from today, 11/3/06, that
would be fine. She thanked me for calling to check in on the progress and I thanked her for
returning my call.

10-3-06
6:20 p.m.
Returned clmts call - She requested 30-day
extension in writing. I told her that I
would be sending a letter to her
stating the 11-3-06 extension.
— JH JH

Page 1 of 1                              Signed _____ JH JH _____

STND1149-00378



From the desk of:                                                    10/3/2006 1:21 PM
**JASON HEWETT**

      Re: PATRICIA A BROYLES          Policyholder: AUL CORPORATION
Member SS#: 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                 Group ID#: 10037483
    Claim #: 00375832                   Policy #: 623691

I called Ms. Broyles to check in and see if she is still planning on sending in additional medical
information for her contested claim.  There was no answer so I left a message for a return call.

Page 1 of 1                                          Signed _____

STND1149-00377





TheStandard™
Positively different.

August 3, 2006

PATRICIA A BROYLES
3321 ANITA CT
NAPA, CA 94558

COPY

Re:    AUL CORPORATION
       Group No.     623691
       Claim No.     00375832

Dear Ms. Broyles:

We are writing in regard to your Long Term Disability (LTD) claim with Standard Insurance Company (The Standard).

This letter is to acknowledge that we are in receipt of your letter dated July 25, 2006, in which you requested an independent review of Standard Insurance Company's (The Standard) decision to deny your claim for long term disability (LTD) benefits. You have indicated in our telephone conversation that you are intending to submit additional information for our review. This additional information includes complete medical records from Drs. Shifflett and Pfeffer, physical therapy notes from Napa Valley Physical Therapy Center and Queen of the Valley Hospital, and pharmacy records showing pain medications prescribed.

Standard Insurance Company's goal is to complete all requests for an independent review within 45 days of receipt of such requests or within 90 days if circumstances warrant an extension, pursuant to regulations issued by the U.S. Department of Labor (DOL). Please note that these regulations permit us to exceed these timeframes if such extension is by mutual agreement. Since you have requested additional time in order to submit information in support of your appeal, we will defer completion of our review, if you agree that the DOL regulatory timeframes will not apply and we will be allowed sufficient time to evaluate any additional information submitted.

Please submit the additional records mentioned about within the next 30 days. If you are unable to do so, or need additional time, please notify us in writing.

PO Box 2800  Portland OR 97208-2800  tel 800.368.1135
Standard Insurance Company - A subsidiary of StanCorp Financial Group

Snsp. by
Agenat

STND1149-00376

PATRICIA A BROYLES                    2                              August 3, 2006

If you have any questions about this letter or your claim, please write or call me.

Sincerely,

Jason Hewett
Disability Benefits Analyst
800-368-1135  ext. 7598

PO Box 2800  Portland OR 97208-2800  tel 800.368.1135
Standard Insurance Company - A subsidiary of StanCorp Financial Group

STND1149-00375

July 31, 2006

To: The file of Patricia Broyles

From: Jason Hewett

RE: Request for review letter

I called and spoke with Ms. Broyles this morning regarding her request for review. I told her that I had received her letter dated July 25, 2006. I explained to her that the way the review process works is that it is her responsibility as the claimant to send any new or pertinent information regarding her medical condition. She said that she wanted something in writing so I explained that I would be sending her a letter documenting our conversation and outlining the information that she will be sending in.

She will be sending in complete medical records from Dr. Glenn Pfeffer and Dr. Michael Shifflett, along with physical therapy notes from Napa Valley Physical Therapy Center and Queen of the Valley Hospital and proof of pain medications prescribed. She said that she would contact her pharmacy and get a complete list. She said that she only uses one pharmacy.

She said that she had total knee replacement of the right knee on April 12, 2006 and she has an appointment with Dr. Shifflett on August 10, 2006 to discuss the upcoming total knee replacement of the left knee. She said that she has to undergo both knee replacement surgeries before she can have foot surgery. She said that she has two failed areas in her foot.

Her state disability will run out on September 15, 2006. She said that she is receiving $1258 bi-monthly. She stated that she hopes to return to work when she is "all fixed" because she doesn't like not being able to be fully independent.

I explained to Ms. Broyles that if she agrees and she did, that the DOL timeline for review, 45 days, would be stopped until we receive the additional medical information from her. I reiterated that all this would be included in the letter that I would be sending to her. I told her that if she has other questions that she could call or write me.

STND1149-00374

**Patricia A. Broyles**
**3321 Anita Court**
**Napa, CA 94558**
**Telephone: (707) 252-9258**
**Email: pbroyles54@comcast.net**

July 25, 2006

The Standard
900 SW Fifth Ave.
Portland, OR 97204-1235

RE: Group No. 623691
    Claim No. 00375832
    AUL Corporation

Attention: Disability Benefits

Dear Sir/Madam;

In regards to your company's decision to deny my request for long term disability
benefits per your letter dated March 28, 2006 with Standard Insurance Company,
I hereby **request a review** of my claim.

Since September 15, 2005, I remain on doctor's disability to date. I find your decision to
deny my claim contradictory to the doctor's decision to place his patient on disability.
What physician would jeopardize their license and integrity if the reason was invalid? In
your summary of Dr. Pfeffer's handwritten notes, I found erroneous errors from your
company's translation.

I can provide complete medical records; doctor's letter's regarding my condition,
physical therapy records and letters, proof of pain medication prescription's, proof of
DMV placard of disability.

Walking, standing, sitting, and extreme chronic pain treated with daily pain medication
are the reasons my mobility remains very limited. If I could walk from a parking lot with
any distance, ascend/descend a stairway; sit for any period of time pain free, I would be
ecstatic with joy! However, my current condition prevents this.

In your Definition of Disability, _yes,_ I do qualify under both numbers 1 and 2. Regarding
#1, I'm unable to perform my sedentary job functions due to immobility, sitting, and
chronic pain. Regarding #2, I'm paying Cobra contributions at $1136.00 monthly and
therefore in fact do reduce my state disability benefit tremendously.

I find this unbelievable for a company to deny my claim without further review of _all_ the
facts and not by illegible doctor notes and your representative's handwritten notes of -

RECEIVED

JUL 2 8 2006

Employee Benefits - LTD

STND1149-00373

**Patricia A. Broyles**
**3321 Anita Court**
**Napa, CA 94558**
**Telephone: (707) 252-9258**
**Email: pbroyles54@comcast.net**

telephone conversations! Perhaps the "standard" at The Standard is to deny all claims regardless.

In closing, request to review my claim is hereby requested and to expedite this review as soon as possible. The first "round" took an incredible amount of delay time.

My employer, AUL, purchased this extended disability plan to help their employees if should the medical need arise because they are a good company and believe in their employees and provide them with excellent benefits. I only hope that this benefit does not disappoint them or me.

Finally, my goal is to return to AUL without the medical conditions that I continue to live with each and every day. I wouldn't wish this pain and immobility on my worse enemy. Just think if your active life was suddenly taken from you and you now had to think how many steps there, can I make it or not, pain-pain-pain, and just unable to walk, stand, or sit for any period of time.

Sincerely,

Patricia A Broyles

Patricia A Broyles

RECEIVED

JUL 2 8 2006

Employee Benefits - LTD

STND1149-00372

From the desk of:                                                    6/28/2006 4:28 PM
**Emmi Gordon**

    Re: PATRICIA A BROYLES              Policyholder: AUL CORPORATION
Member SS#: 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                    Group ID#: 10037483
    Claim #: 00375832                      Policy #: 623691

Claimant called. What steps does she need to take to have someone re-evaluate her claim? She feels that it was closed too quickly and she is still disabled. I explained that she had 180 days to submit a written request for review. Ok. She said that she has had a left knee replacement and now they are going to do a right knee replacement. Both of these had to be done before her foot could be fused together. When the initial foot disability began she didn't know how bad things would get and they continued to find new problems with every surgery. Her doctors have her out until September. She really wants to return to work once all of this is complete but she can't walk and has a lot of pain. She also mentioned that she had a lot of problems with Shannon "being sharp and curt, particularly with the doctor's office." Claimant felt that there were a lot of discrepancies in her file and we didn't get a complete picture of what was happening. I suggested she include all of that information in her request for review along with any new medical information. Ok, she will. She said she will send it in and "felt better talking to me." Ok and thanks.

Page 1 of 1                                                    Signed _____

**THE STANDARD**

STND1149-00371





May 10, 2006

Patricia Broyles
3321 Anita Ct
Napa CA  94558

Re:    AUL Corporation
       Group No. 623691
       Claim No. 00375832

Dear Ms. Broyles:

We are writing in regard to your Long Term Disability (LTD) claim with Standard
Insurance Company (The Standard).  We are in receipt of your letter dated May 1, 2006
requesting a copy of your complete claim file.

We have enclosed a copy of your claim file for your review.

If you have any questions, please contact our office.

Sincerely,

Emmi Gordon
Disability Benefits Processor
Employee Benefits Department
1-800-368-1135 ext. 6583

900 SW Fifth Avenue
Portland OR 97204-1235
tel 888.937.4783

Standard Insurance Company – A subsidiary of StanCorp Financial Group, Inc.

May 1, 2006

THE Standard
900 SW 5th Ave
Portland OK 97204-1235

RE: AUL Corporation
Group Policy 623691
Claim No. 00315832

**RECEIVED**

MAY 0 3 2006

Employee Benefits - LTD

Attn: Shawon TEED

Dear Ms. TEED;

I hereby Request copies of all medical Records obtained pertaining to my claim for further Review. Also Request in Addition to medical Records, Any And all Records Associated to my claim Are hereby Requested.

I expect this Request should cause No problem And would expect these copies within 14 days of this letter dated above.

STND1149-00369

If any questions please contact me
either by phone or mail

Sincerely,
Patricia A Myles
3321 Anita Ct.
Napa Ca 94558-4201
101-252-9258

STND1149-00368

To _Patricia Broyles_

Date _4/26/00_

Time _2:00_

Caller _Anna Susans_

Phone ( _707_ ) _257-9700_    Ext _255_

RE:

☐ Claimant _____

☑ Policyowner _____

☐ Group Office _____

☐ Other _____
   (vendor, doctor, personal)
   _____
   (Claimant name if different from caller)

Policy # _10037483_

Claim # _006023091_

Member SS# _____

☑ CALL BACK    ☐ Will call again    ☐ Returned call    ☐ Just FYI

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

MESSAGE:

☐ Wants status of claim

☐ Check inquiry/lost check    Proclaim shows:
   ☐ no check    Check dated _____

☐ New phone number

☐ Please send: (see below)

☐ Did analyst receive

☐ Death notice

Check amount _____

☐ Change of address: (see below)

☐ Ben award rec'd. Type: (see below)

(i.e. APS, SS notice, claims forms, etc.)

_ER called w/ question re: Patricia Broyles._
_Please call back._

Signed: _Alyson_

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

RESPONSE:

_4:00 returned EE's call. She wanted to know if it was ok to terminate coverage for claimant due to lack of hours? Will it affect her claim. I explained that if she is no longer eligible they can terminate coverage._

Date _____    Time _____    Analyst _Jehartan_
(Use back if needed)

SI-14-6404 (3/94)

STND1149-00367



**TheStandard™**
Positively different.

March 28, 2006

Patricia Broyles
3321 Anita Ct
Napa CA 94558

Re:     AUL Corporation
       Group Policy 623691
       Claim No. 00375832

Dear Ms. Broyles:

We are writing with regard to your claim for long term disability (LTD) benefits with Standard Insurance Company (The Standard). Thank you for your patience during our review of your claim. We have completed our review of your claim and have determined your claim must be denied.

As indicated in prior correspondence, we reviewed your claim to determine if you meet the Definition of Disability as defined by the Group Policy. To be eligible for benefits, you must be disabled as defined by your Group Policy. Your Group Policy defines disability as follows:

### DEFINITION OF DISABILITY

You are Disabled if you meet the following definitions during the periods they apply:

      A.     Own Occupation Definition Of Disability

      B.     Any Occupation Definition Of Disability

A.     Own Occupation Definition Of Disability

      During the Benefit Waiting Period and the Own Occupation Period you are required to be Disabled only from your Own Occupation.

      You are Disabled from your Own Occupation if, as a result of Physical Disease, Injury, Pregnancy or Mental Disorder: ·

      1.     You are unable to perform with reasonable continuity the Material Duties of your Own Occupation; and

      2.     You suffer a loss of at least 20% in your Indexed Predisability Earnings when working in your Own Occupation.

*900 SW Fifth Avenue*
*Portland OR 97204-1235*
*tel 888.937.4783*

Standard Insurance Company — A subsidiary of StanCorp Financial Group, Inc.

STND1149-00366

# STANDARD INSURANCE COMPANY

Patricia Broyles                              2                              March 28, 2006

Note:  You are not Disabled merely because your right to perform your Own Occupation is restricted, including a restriction or loss of license.

During the Own Occupation Period you may work in another occupation while you meet the Own Occupation Definition Of Disability.  However, you will no longer be Disabled when your Work Earnings from another occupation meet or exceed 80% of your Indexed Predisability Earnings.  Your Work Earnings may be Deductible Income.  See **Return To Work Provisions** and **Deductible Income.**

Own Occupation means any employment, business, trade, profession, calling or vocation that involves Material Duties of the same general character as the occupation you are regularly performing for your Employer when Disability begins.  In determining your Own Occupation, we are not limited to looking at the way you perform your job for your Employer, but we may also look at the way the occupation is generally performed in the national economy.  If your Own Occupation involves the rendering of professional services and you are required to have a professional or occupational license in order to work, your Own Occupation is as broad as the scope of your license.

Material Duties means the essential tasks, functions and operations, and the skills, abilities, knowledge, training and experience, generally required by employers from those engaged in a particular occupation that cannot be reasonably modified or omitted.  In no event will we consider working an average of more than 40 hours per week to be a Material Duty.

B.     Any Occupation Definition Of Disability

During the Any Occupation Period you are required to be Disabled from all occupations.

You are Disabled from all occupations if, as a result of Physical Disease, Injury, Pregnancy or Mental Disorder, you are unable to perform with reasonable continuity the Material Duties of Any Occupation.

Any Occupation means any occupation or employment which you are able to perform, whether due to education, training, or experience, which is available at one or more locations in the national economy and in which you can be expected to earn at least 60% of your Indexed Predisability Earnings within 12 months following your return to work, regardless of whether you are working in that or any other occupation.

Material Duties means the essential tasks, functions and operations, and the skills, abilities, knowledge, training and experience, generally required by employers from those engaged in a particular occupation that cannot be reasonably modified or omitted.  In no event will we consider working an average of more than 40 hours per week to be a Material Duty.

Your Own Occupation Period and Any Occupation Period are shown in the **Coverage Features.**

# STANDARD INSURANCE COMPANY

Patricia Broyles                              3                              March 28, 2006

You have indicated on the Employee's Statement completed by you on November 28, 2005, that you had a complete rupture of the tibial tendon of the right foot, and you are claiming disability beginning September 15, 2005.

In our telephone conversation on December 28, 2005, you indicated that you had surgery, a calcaneal osteotomy, on March 18, 2005. You indicated that you had returned to work full time in mid April 2005 with a cast and the assistance of a wheelchair, despite difficulties including swelling, pain and problems with ambulation. You indicated that your condition worsened and that your foot collapsed. Information notes you ceased work altogether on September 14, 2005. In a follow-up telephone correspondence, you indicated that another foot surgery was pending, as well as a pending knee replacement scheduled for March 2006.

An Attending Physician's Statement (APS) from orthopedist Dr Glenn Pfeffer, dated December 7, 2005, reports a diagnosis of collapse foot with symptoms of pain. He indicated you should cease work, without providing a specific date, due to unilateral foot pain post-operatively. Dr. Pfeffer reports on the APS that you are capable of sedentary level work with limitations described as difficulty walking due to unilateral foot pain. It is noted that you may need further surgery.

Along with your claim forms, we are in receipt of your medical records from Dr Glenn Pfeffer for the period from January 2005 through January 2006.

Records indicate that you began developing worsening right ankle pain in August 2004 with diagnosis of tibial tendon dysfunction in January 2005. On March 18, 2005, you underwent calcaneal osteotomy with tibial tendon transfer of the right hind foot. Post-operatively, you were non-weight bearing and initially required use of a walker. You returned to work in April 2005. On June 13, 2005, Dr. Pfeffer reports you are doing well and tolerating weight-bearing activity with use of an orthotic.

On August 11, 2005, you contacted Dr. Pfeffer's office due to increased swelling of the right leg. Doppler was negative and did not reveal evidence of a blood clot. On September 15, 2005, you reported you never went to physical therapy, and that you continued to utilize ankle support. Dr. Pfeffer indicated there continues to be slight collapse of the hind foot, but notes your status as "better than pre-op" and recommends Neurontin.

On October 18, 2005, Dr. Pfeffer reported you are "doing well." You were advised to wean off Neurontin and initiate use of non-steroidal anti-inflammatory medications.

On January 20, 2006, Dr. Pfeffer reported you are still getting some collapse in your hind foot, and that there is no apparent nerve injury. You reported intermittent burning of there right foot. Dr. Pfeffer stated you may require additional surgery. Physical therapy is also discussed.

The medical information was reviewed by a Physician Consultant, board-certified in Orthopedics. Based on this review, the Physician Consultant felt you would be capable of

STND1149-00364

# STANDARD INSURANCE COMPANY

Patricia Broyles                               4                          March 28, 2006

working within the sedentary strength level range on a full time basis with limitations that include the inability to stand and walk for extended periods.

Your file was then reviewed by a Vocational Consultant who has determined, based on the U.S Department of Labor Dictionary of Occupational Titles, that your Own Occupation as a Claims Payable Adjuster/Supervisor is considered sedentary level work. The Vocational Consultant noted that extended standing and walking would not be considered Material Duties of your Own Occupation as a Claims Payable Adjuster/Supervisor.

Sedentary level occupations are defined according to the U.S Department of Labor Dictionary of Occupational Titles, Fourth Edition, revised 1991 as follows:

> S- Sedentary Work – Exerting up to 10 pounds of force occasionally. (Occasionally: activity or condition exist up to 1/3 of the time) and/or a negligible amount force frequently (Frequently: activity or condition exists from 1/3 to 2/3 of the time) to lift, carry, push, pull, or otherwise move objects, including the human body. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met.

A copy of the strength factors is enclosed for your reference.

Based on these reviews, we have concluded that you have the physical capacity to perform full-time sedentary strength level work with the limitation of no standing and/or walking for extended periods. As you have the capacity to perform sedentary level work on a full-time basis, and your own occupation is sedentary, we find insufficient evidence to support that your medical condition is of a severity that it would reasonably prevent you from performing the duties of your Own Occupation as a Claims Payable Adjuster/Supervisor. Therefore, you do not meet the Own Occupation Definition of Disability, and your claim must be denied.

We understand that you continue to have ongoing medical conditions, and pending up upcoming surgery. However, we must focus on whether the medical documentation in your file supports limitations and restrictions of a severity to prevent you from working in your own sedentary level occupation on/around the time of your cease work on September 14, 2005, as well as while you were a covered member under the Group Policy (please see enclosed policy provision "When Your Insurance Ends"). The Physician Consultant's review found you were capable of full-time sedentary work with the above noted limitations. This is consistent with the recommendations from your orthopedist, Dr Pfeffer, who describes limitations on the APS from December 7, 2005, as difficulty walking due to unilateral foot pain post-operatively, and that you are capable of sedentary work.

# STANDARD INSURANCE COMPANY

Patricia Broyles                                    5                          March 28, 2006

The above-referenced Group Policy also provides a benefit that continues your group life insurance without payment of premium provided you meet the eligibility requirements. Please refer to the enclosed policy provision which describes this benefit.

> You must have become disabled while insured under the above Group Policy.

> You must be under age 60 at the time you became disabled.

> You must be totally disabled.

You do not appear to be eligible for this benefit because you do not appear to be totally disabled from all occupations.

In order for your life insurance to remain in force, premium payments must be continued. Please contact AUL Corporation regarding your membership status and premium payments.

When your life insurance ceases, you may be eligible to convert your insurance to an individual policy. We have enclosed a Request for Group Life Conversion Materials form. If you wish to convert to an individual life policy, you must return your request to the address at the top of the form. Please note the 31-day limit for initiating conversion. If you have any questions about conversion or premium rates, please call The Standard at 1-800-378-4668.

Your claim has been denied for the reasons outlined above. If you want us to review your claim and this decision, you must send us a written request within 180 days after you receive this letter. If you request a review, you will have the right to submit additional information in connection with your claim. Additional information which would be helpful to a reconsideration of your claim should include medical documentation that supports your limitations and restrictions, at the time of your cease work and while you were a covered member under the Group Policy, are more severe than we have previously understood and that you are unable to perform sedentary level work. Please include any such new information along with your request for review.

If you request a review, it will be conducted by an individual who was not involved in the original decision. (If necessary, the person conducting the review will consult with a medical professional with regard to your claim. The medical professional will be someone who was not previously consulted in connection with your claim.) The review would be completed within 45 days after we receive your request unless circumstances beyond our control require an extension of an additional 45 days. If you request a review and the decision on your claim is upheld, you will have the right to file suit under Section 502(a) of the Employee Retirement Income Security Act (ERISA) or state law, whichever is applicable.

We want to let you know that upon further investigation, other valid reasons for limiting or denying your claim, which have not been previously considered, could come to our attention. Therefore, Standard Insurance Company reserves the right to consider and assert other reasons for limitation or denial of your claim should they occur in the future.

STND1149-00362

# STANDARD INSURANCE COMPANY

Patricia Broyles                               6                          March 28, 2006

Please consult your Certificate of Insurance or Summary Plan document for a complete
description of your rights under the terms of the AUL Corporation Group Policy.

If you also wish to have this matter reviewed by the State of California Department of Insurance,
you may contact the Department of Insurance at 300 South Spring Street, South Tower,
Los Angeles, California 90013. That office can also be reached by calling 213.897.8921 or
toll-free 800.927.4357.

If I can answer any questions about this letter or any other aspect of your claim, please feel free
to contact me.

Sincerely,

Shannon Teed
Disability Benefits Analyst
Employee Benefits Department
(800) 368-1135  ext. 7598

Enclosures

*Samoed 3/30/06*

STND1149-00361

**Standard Insurance Company**

Continued Benefits
920 SW Sixth Avenue   Portland OR 97204   800.378.4668 Tel

**Request for Group Life
Conversion Materials**

## Important Information for Owners of Group Life Insurance Certificates

We are happy to inform you that under your Standard Insurance Company Group Life Insurance coverage, you and your insured dependents are offered the benefit of obtaining an individual life insurance policy. In order to take advantage of this opportunity, we must receive an application and premium payment within 31 days of the date of cessation or reduction of group life insurance coverage. This option to convert may be very valuable to you, as evidence of insurability will not be required. To take advantage of the privilege of converting your insurance, please complete and return this form to the address above. We will provide the necessary forms and information. For your convenience, at your election, we can send the information electronically to your email address or we can mail the forms to your street address.

## Member Information

| Member's Name | | Today's Date |
|---|---|---|
| Insured's Name, if different | | Phone ( ) |
| Member's Address | City | State | Zip |
| Email Address | | |

| Please indicate the applications you will need. | Please send application forms via: |
|---|---|
| ☐ Member   ☐ Spouse   ☐ Child – No. of children: _____ | ☐ E-mail   ☐ Regular Mail |
| Group Name and Policy No. | Termination or Reduction Date of Insurance |

SI 1598-A

(1/05)

STND1149-00360

# Physical Demands – Strength Ratings*

**S- Sedentary Work** – Exerting up to 10 pounds of force occasionally. (Occasionally: activity or condition exist up to 1/3 of the time) and/or a negligible amount force frequently (Frequently: activity or condition exists from 1/3 to 2/3 of the time) to lift, carry, push, pull, or otherwise move objects, including the human body. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met.

**L- Light Work** – Exerting up to 20 pounds of force occasionally, and/or up to 10 pounds of force frequently, and/or a negligible amount of force constantly (Constantly: activity or condition exists 2/3 or more of the time) to move objects. Physical demand requirements are in excess of those for Sedentary Work. Even though the weight lifted may be only a negligible amount, a job should be rated Light Work: (1) when it requires walking or standing to significant degree; or (2) when it requires sitting most of the time but entails pushing and/or pulling of arm or leg controls; and/or (3) when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible. NOTE: The constant stress and strain of maintaining a production rate pace, especially in an industrial setting, can be and is physically demanding of a worker even though the amount of force exerted is negligible.

**M- Medium Work** – Exerting 20 to 50 pounds of force occasionally, and/or 10 to 25 pounds of force frequently, and/or greater than negligible up to 10 pounds of force constantly to move objects. Physical Demand requirements are in excess of those for Light Work.

**H- Heavy Work** – Exerting 50 to 100 pounds of force occasionally, and/or 25 to 50 pounds of force frequently, and/or 10 to 20 pounds of force constantly to move objects. Physical Demand requirements are in excess of those Medium Work.

**V- Very Heavy Work** – Exerting to excess of 100 pounds of force occasionally, and/or in excess to 50 pounds of force frequently, and/or in excess of 20 pounds of force constantly to move objects. Physical Demand requirements are in excess of those for Heavy Work.

\* As described in the <u>Dictionary of Occupational Titles</u>, Fourth Edition Revised 1991 US Department of Labor Employment and Training Administration.

STND1149-00358

 

# STANDARD INSURANCE COMPANY

A Stock Life Insurance Company
900 SW Fifth Avenue
Portland, Oregon. 97204-1282
(503) 321-7000

*People. Not Just Policies.*®

## GROUP LONG TERM DISABILITY INSURANCE STATEMENT OF COVERAGE

| | | | |
|---|---|---|---|
| **Policyowner:** | Fleet National Bank, Trustee of The Standard Insurance Company Group | **Employer:** | A.U.L. CORPORATION |
| **Policy Number:** | 638213-T | **Group Number** | 623691-C |
| **Policy Effective Date:** | August 1, 1999 | **Employer Effective Date:** | January 1, 2000 |

The Group Policy has been issued to the Policyowner. An employer must apply for group long term disability insurance coverage under the Group Policy and join the Standard Insurance Company Group Insurance Trust by submitting a completed application and agreeing to pay premiums. No Employer's coverage under the Group Policy is in effect until approved in writing by us.

The Group Policy contains numerous optional and variable provisions. The options and variables we have approved for the Employer's coverage under the Group Policy are contained in this Statement Of Coverage. Only those provisions of the Group Policy which appear in this Statement Of Coverage will apply to the Employer's coverage under the Group Policy. All provisions on this and the following pages are part of the Statement Of Coverage.

The consideration for the Employer's coverage under the Group Policy is the application of the Employer and the payment by the Employer of premiums as provided herein.

Subject to the **Policyowner And Employer Provisions** and the **Incontestability Provisions**, the Employer's coverage under the Group Policy (a) is effective for the Initial Rate Guarantee Period shown in the **Coverage Features**, and (b) may be renewed for successive renewal periods by the payment on each renewal date, provided the number of persons insured on each renewal date is neither less than the Minimum Participation shown in the **Coverage Features**. The length of successive renewal periods will be determined by us, but will not be less than 12 months. For purposes of effective dates and ending dates under the Group Policy, all days begin and end at 12:00 midnight Standard Time (a) at the Employer's address with respect to the Employer and (b) at the Policyowner's address with respect to the Policyowner.

The terms "you" and "your" mean the Member. "We", "us", and "our" mean Standard Insurance Company. Other defined terms appear with their initial letters capitalized. Section headings, and references to them, appear in boldface type.

STANDARD INSURANCE COMPANY

By

*Ronald E. Timpe*
**President**

*J. Greg Ross*
**Corporate Secretary**

GP399-LTD/TRUST

05-01-00 PP
# TRUE COPY

♻ *Printed on recycled paper.*

STND1149-00357

 

## REINSTATEMENT OF INSURANCE

If your insurance ends, you may become insured again as a new Member. However, the following will apply:

1. If you cease to be a Member because of a covered Disability, your insurance will end; however, if you become a Member again immediately after LTD Benefits end, the Eligibility Waiting Period will be waived and, with respect to the condition(s) for which LTD Benefits were payable, the Preexisting Condition Exclusion will be applied as if your insurance had remained in effect during that period of Disability.

2. If your insurance ends because you cease to be a Member for any reason other than a covered Disability, and if you become a Member again within 90 days, the Eligibility Waiting Period will be waived.

3. If your insurance ends because you fail to make a required premium contribution, you must provide Evidence Of Insurability to become insured again.

4. If your insurance ends because you are on a federal or state-mandated family or medical leave of absence, and you become a Member again immediately following the period allowed, your insurance will be reinstated pursuant to the federal or state-mandated family or medical leave act or law.

5. The Preexisting Conditions Exclusion will be applied as if insurance had remained in effect in the following instances:

   a. If you become insured again within 90 days.

   b. If required by federal or state-mandated family or medical leave act or law and you become insured again immediately following the period allowed under the family or medical leave act or law.

6. In no event will insurance be retroactive.

LT.RE.OT.1

## DEFINITION OF DISABILITY

You are Disabled if you meet the following definitions during the periods they apply:

   A. Own Occupation Definition Of Disability.

   B. Any Occupation Definition Of Disability.

A. Own Occupation Definition Of Disability

During the Benefit Waiting Period and the Own Occupation Period you are required to be Disabled only from your Own Occupation.

You are Disabled from your Own Occupation if, as a result of Physical Disease, Injury, Pregnancy or Mental Disorder:

1. You are unable to perform with reasonable continuity the Material Duties of your Own Occupation; and

2. You suffer a loss of at least 20% in your Indexed Predisability Earnings when working in your Own Occupation.

Note: You are not Disabled merely because your right to perform your Own Occupation is restricted, including a restriction or loss of license.

STND1149-00356



During the Own Occupation Period you may work in another occupation while you meet the Own Occupation Definition Of Disability. However, you will no longer be Disabled when your Work Earnings from another occupation meet or exceed 80% of your Indexed Predisability Earnings. Your Work Earnings may be Deductible Income. See **Return To Work Provisions** and **Deductible Income**.

Own Occupation means any employment, business, trade, profession, calling or vocation that involves Material Duties of the same general character as the occupation you are regularly performing for your Employer when Disability begins. In determining your Own Occupation, we are not limited to looking at the way you perform your job for your Employer, but we may also look at the way the occupation is generally performed in the national economy. If your Own Occupation involves the rendering of professional services and you are required to have a professional or occupational license in order to work, your Own Occupation is as broad as the scope of your license.

Material Duties means the essential tasks, functions and operations, and the skills, abilities, knowledge, training and experience, generally required by employers from those engaged in a particular occupation that cannot be reasonably modified or omitted. In no event will we consider working an average of more than 40 hours per week to be a Material Duty.

B.  Any Occupation Definition Of Disability

During the Any Occupation Period you are required to be Disabled from all occupations.

You are Disabled from all occupations if, as a result of Physical Disease, Injury, Pregnancy or Mental Disorder, you are unable to perform with reasonable continuity the Material Duties of Any Occupation.

Any Occupation means any occupation or employment which you are able to perform, whether due to education, training, or experience, which is available at one or more locations in the national economy and in which you can be expected to earn at least 60% of your Indexed Predisability Earnings within twelve months following your return to work, regardless of whether you are working in that or any other occupation.

Material Duties means the essential tasks, functions and operations, and the skills, abilities, knowledge, training and experience, generally required by employers from those engaged in a particular occupation that cannot be reasonably modified or omitted. In no event will we consider working an average of more than 40 hours per week to be a Material Duty.

Your Own Occupation Period and Any Occupation Period are shown in the **Coverage Features**.

(OWN_ANY_WITH 40)    LT.DD.OT.1

## RETURN TO WORK PROVISIONS

A.  Return To Work Responsibility

During the Own Occupation Period no LTD Benefits will be payable for any period when you are able to work in your Own Occupation and able to earn at least 20% of your Indexed Predisability Earnings, but you elect not to work.

During the Any Occupation Period no LTD Benefits will be payable for any period when you are able to work in Any Occupation and able to earn at least 20% of your Indexed Predisability Earnings, but you elect not to work.

B.  Return To Work Incentive

You may serve your Benefit Waiting Period while working if you meet the Own Occupation Definition Of Disability.

STND1149-00355



3. You were continuously insured under the Group Policy from the effective date of your insurance under the Group Policy through the date you became Disabled from the Preexisting Condition; and

4. Benefits would have been payable under the terms of the Prior Plan if it had remained in force, taking into account the preexisting condition exclusion, if any, of the Prior Plan.

For such a Disability, the amount of your LTD Benefit will be the lesser of:

   a. The monthly benefit that would have been payable under the terms of the Prior Plan if it had remained in force; or

   b. The LTD Benefit payable under the terms of your Employer's coverage under the Group Policy, but without application of the Preexisting Condition Exclusion.

Your LTD Benefits for such a Disability will end on the earlier of the following dates:

   a. The date benefits would have ended under the terms of the Prior Plan if it had remained in force; or

   b. The date LTD Benefits end under the terms of your Employer's coverge under the Group Policy.

(PX)  LT.CC.OT.2

## WHEN YOUR INSURANCE ENDS

Your insurance ends automatically on the earliest of:

1. The date the last period ends for which a premium contribution was made for your insurance.

2. The date the Group Policy terminates.

3. The date your Employer's coverage under the Group Policy terminates.

4. The date your employment terminates.

5. The date you cease to be a Member. However, your insurance will be continued during the following periods when you are absent from Active Work, unless it ends under any of the above.

   a. During the first 90 days of a temporary or indefinite administrative or involuntary leave of absence or sick leave, provided your Employer is paying you at least the same Predisability Earnings paid to you immediately before you ceased to be a Member. A period when you are absent from Active Work as part of a severance or other employment termination agreement is not a leave of absence, even if you are receiving the same Predisability Earnings.

   b. During a leave of absence if continuation of your insurance under the Group Policy is required by a state-mandated family or medical leave act or law.

   c. During any other temporary leave of absence approved by your Employer in advance and in writing and scheduled to last 30 days or less. A period of Disability is not a leave of absence.

LT.EN.OT.2

## WAIVER OF PREMIUM

We will waive payment of premium for your insurance while LTD Benefits are payable.

LT.WP.OT.1

STND1149-00354



# STANDARD INSURANCE COMPANY

A Mutual Life Insurance Company
900 SW Fifth Avenue
Portland, Oregon 97204-1282
(503) 321-7000

Dedicated to Excellence

## GROUP LIFE INSURANCE POLICY

Policyowner:                        A.U.L. CORPORATION

Policy Number:                      623691-A

Effective Date:                     February 1, 1996

The consideration for this Group Policy is the application of the Policyowner and the payment by the Policyowner of premiums as provided herein.

Subject to the **Policyowner Provisions** and the **Incontestability Provisions**, this Group Policy (a) is issued for the Initial Rate Guarantee Period shown in the **Coverage Features**, and (b) may be renewed for successive renewal periods by the payment of the premium set by us on each renewal date. The length of each renewal period will be set by us, but will not be less than 12 months.

For purposes of effective dates and ending dates under this Group Policy, all days begin and end at 12:00 midnight Standard Time at the Policyowner's address.

**This policy includes an Accelerated Benefit. The receipt of this benefit may be taxable and may affect your eligibility for Medicaid or other government benefits or entitlements. You should consult your personal tax and/or legal advisor before you apply for an Accelerated Benefit.**

All provisions on this and the following pages are part of this Group Policy. "You" and "your" mean the Member. "We", "us", and "our" mean Standard Insurance Company. Other defined terms appear with their initial letters capitalized. Section headings, and references to them, appear in bold face type.

STANDARD INSURANCE COMPANY

By

*Ronald E. Timpe*

President

*Robert W. Maron*

Secretary

GP190-LIFE

TRUE COPY

KB 3/7/96

⊛ *Printed on recycled paper.*




You will also meet the Active Work requirement if:

1. You were absent from Active Work because of a regularly scheduled day off, holiday, or vacation day;

2. You were Actively At Work on your last scheduled work day before the date of your absence; and

3. You were capable of Active Work on the day before the scheduled effective date of your insurance or increase in your insurance.

LI.AW.02

## STRIKE CONTINUATION

Insurance may be continued for up to 6 months while you are absent from Active Work because of a strike, lockout or other general work stoppage caused by a labor dispute. Rules 1 through 4 below will apply.

1. When your compensation is suspended or terminated because of a work stoppage, your Employer will immediately notify you in writing of your rights under this provision. Your Employer will mail the notice to you at your last address on record with the Employer.

2. You must pay the entire premium for your insurance, including the Employer's share, if any, to your Employer on or before each Premium Due Date.

3. The premiums for your insurance during the work stoppage will equal a percentage of the premium rate in effect on the date the work stoppage began (see **Coverage Features**). We may change premium rates during the work stoppage according to the terms of the Group Policy.

4. Insurance continued under this provision will end on the earliest of:

   a. Any Premium Due Date if you fail to make the required premium contribution to your Employer on or before that date.

   b. The date you have been absent from Active Work for 6 months.

   c. On the date you begin full-time employment with another employer.

   d. At our option, on any Premium Due Date if less than 75% of the Members eligible to continue insurance under this provision make the required premium payment to the Employer.

LI.SK.01

## WAIVER OF PREMIUM

A. Waiver Of Premium Benefit

   Insurance will be continued without payment of premiums while you are Totally Disabled if:

   1. You become Totally Disabled while insured under the Group Policy and under age 60;

   2. You complete your Waiting Period; and

   3. You give us satisfactory Proof Of Loss.

B. Definitions For Waiver Of Premium

   1. Insurance means all your insurance under the Group Policy, except AD&D Insurance.

   2. Totally Disabled means that, as a result of Sickness, accidental Injury, or Pregnancy, you are unable to perform with reasonable continuity the material duties of any gainful occupation for which you are reasonably fitted by education, training and experience.

   3. Waiting Period means the 180 consecutive day period beginning on the date you become Totally Disabled. Waiver Of Premium begins when you complete the Waiting Period.

STND1149-00352




C.    Premium Payment

Premium payment must continue until the later of:

1.    The date you complete your Waiting Period; and

2.    The date we approve your claim for Waiver Of Premium.

D.    Refund Of Premiums

We will refund up to 12 months of the premiums that were paid for Insurance after the date you become Totally Disabled.

E.    Amount Of Insurance

The amount of Insurance continued without payment of premium is the amount in effect on the day before you become Totally Disabled subject to the following:

1.    The amount of Supplemental Life Insurance on your Spouse will be the lesser of:

a.    The amount in effect on the day before you become Totally Disabled; and

b.    The amount in effect one year before the date you become Totally Disabled.

2.    If you receive an Accelerated Benefit, Insurance will be reduced according to the **Accelerated Benefit** provision.

F.    Effect Of Death During The Waiting Period

If you die during the Waiting Period and are otherwise eligible for Waiver Of Premium, the Waiting Period will be waived.

G.    Termination Or Amendment Of The Group Policy

Insurance will not be affected by termination or amendment of the Group Policy after you become Totally Disabled.

H.    When Waiver Of Premium Ends

Waiver of Premium ends on the earliest of:

1.    The date you cease to be Totally Disabled;

2.    90 days after the date we mail you a request for additional Proof Of Loss, if it is not given;

3.    The date you fail to attend an examination or cooperate with the examiner;

4.    With respect to the amount of Insurance which an insured has converted, the effective date of the individual life insurance policy issued to the insured; and

5.    The date you reach age 65.

LI.WP.22

# ACCELERATED BENEFIT

A.    Accelerated Benefit

If you qualify for Waiver Of Premium and incur a Qualifying Medical Condition while you are insured under the Group Policy, we will pay an Accelerated Benefit to you according to the terms of the Group Policy after we receive satisfactory Proof Of Loss.

Qualifying Medical Condition means you are terminally ill, with a life expectancy of less than 12 months.

We may have you examined at our expense in connection with your claim for an Accelerated Benefit. Any such examination will be conducted by one or more Physicians of our choice.

STND1149-00351

NEW CLAIM DECISION     ●          ●

**Claimant:** Patricia Broyles                                    Claim #: <u>00375832</u>

**ANALYST RECOMMENDATION:** Approval ☐  Denial ☒
**Hx:** 51 yr old female claims payable adjuster
**Hired:** 7/16/01,  **Eff. date:** 11/1/01  **Pre-ex:** NA
**Dx:** collapse foot (per APS)

Claimant ceased work in March 05 for a surgery 3/18/05 for tendon transfer w/heel bone removal & rod placement.  Claimant indicates they removed tibialus tendon and achilles detached and took tendon from toe and 3 1/2" screw was placed back of heel/foot.  Procedure was calcania osteotmy.  Claimant notes despite Dr. recommendation, she returned to work full time, full duty, full salary on 4/11/05.  She notes cast & wheelchair at that time.  Claimant notes that due to constant pain & swelling and eventual collapse of foot, claimant ceased work altogether on 9/14/05.  Claimant notes more surgery pending, as well as knee replacement scheduled in March.  Claimant has not RTW.

According to employer, claimant's salary reduction was due to release of supervisory duties/position change on 9/13/05 (day before last day worked).  Employer notes this was not due to claimant's medical condition, but that there were issues long before she ceased work in March 05 for medical condition.

File was reviewed by nurse case manager in consult with Physician Consultant.  An APS from 12/7/05 from claimant's primary orthopedist reports that claimant is capable of sedentary level work and limitations are described as difficulty walking due to unilateral foot pain.  The physician consultant opined that the medical documentation supports limitations and restrictions that include inability to stand and walk for extended periods.  Physician Consultant stated the medical documentation does not indicated the claimant is incapable of working within the sedentary strength level range on a full time basis.  This is consistent with the recommendation from the claimant's orthopedist who reports on the APS that the claimant is capable of sedentary level work.

Based on these limitations, file was reviewed by Vocational Consultant who indicates that extended standing and walking would not be considered material dueties of her own occupation.

Based on the above and the available information in the file, I recommend denial of claim as limitations and restrictions are not supported that would preclude the claimant from performing her own sedentary level occupation and therefore does not meet the Own Occ. Def. of Disability.

**Analyst:** <u>Shannon Teed</u>  **Date:** <u>3/28/2006</u>

---

**APPROVER'S REVIEW:**
Claim Information Accurate

| LT1 | LT2 | PB | OP | | Calculation: _____ |
|---|---|---|---|---|---|
| ☐ | ☐ | ☐ | ☐ | Predisability Earnings Calculation | Earnings based on: ☐hourly ☐weekly ☐monthly ☐annual |
| ☐ | ☐ | ☐ | ☐ | Claim Screen | ☐other _____ earnings |
| ☐ | ☐ | ☐ | ☐ | New Claim Record | Contract: ☐173 ☐4.333 ☐÷12 ☐other _____ |
| ☐ | ☐ | ☐ | ☐ | Overrides | |
| ☐ | ☐ | ☐ | ☐ | Manual Reserve Calculation  $ ____ x ____ mos.=  Code __ __ | |
| ☐ | ☐ | ☐ | ☐ | Offsets | |
| | | | ☐ | Checked "B D O X" | |
| ☐ | | | | 3650 Requested | |
| ☐ | | | | Member Screen | |
| ☐ | | | | DOB Youngest Child _____ | |
| ☐ | | | | Plan Complete with Diary Events | |

**Approver's Notes**

*agree with denial*
*[signature] 3/30/06*

# New Claim Worksheet

PREM. PD 12/31/ CERT. NO

Claim # 10037483        EES: ✓    ERS: ✓    APS: ✓    HIPPA AUTH: ___    PDE: ___    GO! ___

Group ID* 375832                    MM#* 557·92·5378

Claimant name* Patricia Broyles                    Phone (707) 252 9258

STD from* _/_/_ to _/_/_ LTD From _/_/_        STD Max Ben letter*: Sent ___ Printed ___

**Employee Statement:**

Date of birth 11/15/53 ___ Age: ___        Last day worked 9/14/15

Disability date 09/15/15                    First medical 12/2004

**DOB of youngest** * 0                    Grade: 12

**Employer Statement:**

Occupation Claims payable adjust    Hire date 7/16/01    Hours worked ≤10

Cease work date 9/14/05    Last day paid ___    Date of disability ___

Sick leave ends ___    Monthly earnings ___    Date of last raise ___

Enrollment card 12/29/98    Employer contribution 100%  ERISA or Non-ERISA (circle one)

Life Waiver* Y  N  Policy: 623691  Amount: 50K    Reduction/termination? When? ___

**Attending Physician's Statement:** 2dep

Diagnosis Caldwap foot ___ IPV ___ ARD ___

Advise cease work? yes    EDC 0    Delivery date 0

Contract:* 623691 0

Policy effective date 1/1/00    Insurance effective date(s) 11/1/01

Own occ period 24 u LTD    IPG: 8060 ___ Class code ___

Pre-ex period 180/24mo Dates: NA ___ thru ___    Prudent person language? Yes No

Minimum benefit $100    Max benefit 6K

Benefit formula 60% 1st 10K    MBP T65    HAB/ALB? ___ Other ___

DIV code ___    Admin unit ___

Notes: ALB, buP 90 days, noncausis, KPK

| Offsets: | Effective date | End date | Amount | Notes |
|---|---|---|---|---|
| SSD (P & Dep) | | | | |
| WC | | | | |
| PERS | | | | |
| STD | 9/22/15 | | 629/wk | |
| SL paid 'til | | | | Check for raise ___ |
| Third Party | | | | |
| RO+ RmBO | | | | |
| Taxes | | | | |
| Other Gray, Unemplymd | | | | |

Check for indexing, extend Fica/Medicare, deny SS offset, check contract for earnings limit

~B ___    MM ___    LT ___

STND1149-00349

Before adjudicating a claim ask your these questions:

**Member Status:**

____ Does this claimant meet the definition of member for all applicable coverage?*

____ Does the claimant meet the active work requirement?

**Disability and Return to Work:**

____ **Does the claimant meet the definition of disability, including earnings and earnings capacity (if working)?***

____ Is claimant under the care of a physician and participating in treatment plan and/or vocational plan.

____ Can claimant work part time and is part time work available through the employer?

____ Could claimant work if a reasonable accommodation were made to the work environment?

____ Is the disability work related?

**If Working:**

____ Is there an earnings loss of 20%?

____ Is claimant earning more than 80% of IPDE in another occupation?

**Exclusions:***

____ **Do you need to investigate for pre-ex?  Does prudent person language apply?**

____ **If continuity of coverage applies, does pre-ex apply to the prior coverage?**

____ **Is disability due to criminal conduct, war or is self-inflicted?**

____ **Is disability due to loss of license?  (could claimant perform own occupation if they had their license?)**

**Claim Management:**

____ Is this a limited condition?  (if 24 month lifetime limitation, check for previous claims)

____ Is disability the fault of a third party? (subrogation/third party liability)

**Offsets & Taxes:**

____ Are all offsets & taxes that will affect the first payment and reserve accurately accounted for?

**Life Waiver:***

____ **Is it possible to approve the life waiver at the same time as the disability claim?**

If you answered Yes to any of the above questions check the contract to see if benefits are payable and which provisions apply to the claim.  For complex claim situations see your approver, consult with DMR or EB Law.

**Rehab Calcs:**

*Return to Work Incentive or backdoor integration:*

LTD Benefit _____    Predisability Earnings = B _____

Work Earnings    +    _____

= A _____    Is A greater than B?  If yes, the difference is deductible income.

*50% Rehabilitation:*

Monthly Work Earnings    _____

x    ____ .5 ____

Monthly Deduction    =    _____

* **Required fields for Experienced Analysts / Processors**

STND1149-00348

# Pending Claim Master Plan

**Claimant:** _____ Patricia Broyles _____     **Pre-x Period:** _____

Key: Wk Day  1=Mon  7=Sun

| Claim # | Assigned | 40 Days | 45 Days | Day | 70 Days | 75 Days | Day | 90 Days | 100 Days | 105 Days | Day |
|---------|----------|---------|---------|-----|---------|---------|-----|---------|----------|----------|-----|
| 375832 | 12/19/05 | 1/27/06 | 2/1/06 | 3 | 2/26/06 | 3/3/06 | 5 | 3/18/06 | 3/28/06 | 4/2/06 | 7 |

## PENDING CLAIM ISSUES

## PENDING CLAIM REQUESTED INFORMATION LOG

| Dr's Name, phone, fax; item requested; etc. | Requested | Rec'd | Notes |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

STND1149-00347

Shannon Teed

Standard Insurance Company
PHONE (503) 321-7598
FAX (503) 321-7437

Memo to file

Re: Patricia Broyles

4/16/04        ↑ PDE    $3806.08

3/17/05        Casework
3/18/05        Surgery

4/11/05        RTW    own occ FT

5/1/05         eff ↑ Salary  $3958.32

9/1/15         Casework  took vacation

9/12/05        RTW

9/13/05        Δ position (no supervising) ↓ salary $3306.80
9/14/05        Casework altogether

12/8/05        end FMLA                    SДИ
                                           3/28/06

The Standard℠

STND1149-00346

**Shannon Teed**

Standard Insurance Company
Phone (971) 321-7598
Fax (971) 321-7437

3/29/06

Re: Patricia Bryces

SIO ER Anna   She notes life/LTD premium
continuing — should she continue pay? I
said will have decision this week &
will notify — okay.

   She notes not termed but all
benefits termed except life/LTD on COBRA
are else. FMLA exhausted 12/8/05.



**TheStandard**
Positively different.

March 3, 2006

Patricia Broyles
3321 Anita Ct
Napa CA 94558

Re:    AUL Corporation
       Group Policy 623691
       Claim No. 00375832

Dear Ms. Broyles:

We are writing in regard to your claim for long term disability (LTD) benefits with Standard Insurance Company (The Standard).

The initial review of your disability claim has been completed; however, we are unable to complete our investigation at this time.

As previously communicated, we had requested and received what appeared to be incomplete medical records from Dr. Pfeffer. On February 14, 2006, Susan at Dr. Pfeffer's office faxed additional medical records. On February 15, 2006, by voicemail, I confirmed with you receipt of this additional information. At that time, I had indicated that your file had been forwarded for medical review.

We have recently received the results of the medical review and will be reviewing this information. Therefore, additional time is needed to complete our investigation. We anticipate that we will be able to complete our review within the extension period, April 2, 2006.

We understand the importance of making a timely decision on your claim and will keep you informed about the progress of our investigation on a regular basis. When all necessary information is received, we will promptly complete the review of your claim and notify you of the claim decision.

Thank you for your cooperation and patience. Please feel free to call me with any questions.

Sincerely,

Shannon Teed
Disability Benefits Analyst
Employee Benefits Department
(800) 368-1135  ext. 7598

900 SW Fifth Avenue
Portland OR 97204-1235
tel 888.937.4783

Standard Insurance Company – A subsidiary of StanCorp Financial Group, Inc.

STND1149-00344

To _____

Caller *Patty Brazles*

Date *2/5/06*

Time *218*

Phone (*707*) *252 9258*    Ext _____

RE:

☑ Claimant _____

☐ Policyowner _____

☐ Group Office _____

☐ Other _____
        (vendor, doctor, personal)

Policy # _____

Claim # *375832*

Member SS# _____

_____
(Claimant name if different from caller)

☐ CALL BACK    ☐ Will call again    ☑ Returned call    ☑ Just FYI

MESSAGE:

☐ Wants status of claim

☐ Check inquiry/lost check    Proclaim shows:
   ☐ no check    Check dated _____

☐ New phone number

☐ Please send: (see below)

☐ Did analyst receive

☐ Death notice

Check amount _____

☐ Change of address: (see below)

☐ Ben award rec'd. Type: (see below)

(i.e. APS, SS notice, claims forms, etc.)

*Stbr complette file we rec'd. Call*
*if any ?'s otherwise thanks for*
*status.*

Signed: _____

RESPONSE:

_____

_____

_____

_____

_____

_____

_____

(Use back if needed)

Date _____    Time _____    Analyst _____

SI–14–6404  (3/94)

To _____

Caller _Patty Bruzes_____

Date _2/14/16_____

Phone ( _707_ ) _252 9258_____ Ext _____

Time _334_____

RE:

☑ Claimant _____

□ Policyowner _____

□ Group Office _____

□ Other _____
   (vendor, doctor, personal)

Policy # _____

Claim # _CD375832_____

Member SS# _____

_____
(Claimant name if different from caller)

□ CALL BACK    □ Will call again    □ Returned call    □ Just FYI

MESSAGE:

□ Wants status of claim

□ Check inquiry/lost check    Proclaim shows:
   □ no check   Check dated _____

□ New phone number

□ Please send: (see below)

□ Did analyst receive
   (i.e. APS, SS notice, claims forms, etc.)

□ Death notice

Check amount _____

□ Change of address: (see below)

□ Ben award rec'd. Type: (see below)

Sw Sue @ Pfeffer's office - she faxed
info did we get?

Signed: _____

RESPONSE: _2/15/16 VM to clmnt did receive faxes from
Sue @ Dr Pfeyers will forward for
medical dept review - call if additnl
?g

Date _____    Time _____    Analyst _____

SI-14-6404  (3/94)

STND1149-00342

**Shannon Teed**

| | |
|---|---|
| **From:** | Shannon Teed |
| **Sent:** | Thursday, February 09, 2006 4:12 PM |
| **To:** | geebees; frontdsk |
| **Subject:** | Out of Office Friday 2/10/06 |

**Shannon Teed**
**Disability Benefits Analyst, Employee Benefits**
*The Standard*
Standard Insurance Company
900 SW Fifth Avenue
Portland, OR  97204
Telephone (503) 321-7598
1-800-368-1135  x 7598
Fax (503) 321-7437
steed@standard.com

1

STND1149-00341

**Shannon Teed**

Standard Insurance Company
PHONE (503) 321-7598
FAX (503) 321-7437

1/2.

2/9/06

Re: Patricia Broyles

PC from clnt. We discussed the medical records we had received + what we currently have. She notes she had seen Dr Pfeffer once per month April/May/June/July also Aush. She notes as well as the diagnostics done in July/Aug, she had office visits w/ Dr Pfeffer. She says it sounds like we don't have the complete record. She indicates that her work record should show she was out for Dr's appts. I asked her about Rony Kalko. She notes this is her PCP + not seen for

✓

The Standard℠

STND1149-00340

This condition, however she needed to get pre-approval from PCP for testing done. She notes Dr Talcott (previous who) referred her to Dr Pfeffer — he might have these records. She will call Julie @ the dr office in SanFran & see what she can do (415) 923-3700. She will also call Sue in LA office. I told her Sue said she will fax Jen de visit. I told claimant she should indicate to Sue to please expidite. I told claimant that we need to see medical info frumtime She ceased work in Sept 05 + while we currently member only have 3/18/05 + then some diagnostic testing — nothing from this time.

↓

Shannon Teed

**Standard Insurance Company**
PHONE (503) 321-7598
FAX (503) 321-7437

2/9/6

Re: Patricia Bryle

She is frustrated + will thru other Dr's office(s) to shed some light: She mentioned that when meeting w/ Dr Pfeffer, he would occasionally comment on who prescribed this (ie Neurontin) + he was the Dr that did — she wonders if this complete. She will fax over SDI EOB + thru w/ Dr Pfeffer. I told her we will need this info.

STND1149-00338