1  Shawn Hanson (State Bar No. 109321)
   shanson@jonesday.com
2  Katherine S. Ritchey (State Bar No. 178409)
   ksritchey@jonesday.com
3  JONES DAY
   555 California Street, 26th Floor
4  San Francisco, CA  94104
   Telephone:    (415) 626-3939
5  Facsimile:    (415) 875-5700

6  Attorneys for Defendant A.U.L. CORPORATION
   LONG-TERM DISABILITY INSURANCE PLAN and
7  Real Party in Interest STANDARD INSURANCE
   COMPANY

8

9                       UNITED STATES DISTRICT COURT

10                      NORTHERN DISTRICT OF CALIFORNIA

11

| 12 | **PATRICIA BROYLES,** | No. C-07-5305-MMC |
|---|---|---|
| 13 | **Plaintiff,** | **DEFENDANT A.U.L. CORPORATION LONG-TERM DISABILITY PLAN'S OPPOSITION TO PLAINTIFF'S MOTION FOR DE NOVO STANDARD OF REVIEW** |
| 14 | v. | |
| 15 | **A.U.L. CORPORATION LONG-TERM DISABILITY INSURANCE PLAN,** | |
| 16 | | Date: August 1, 2008 |
| 17 | **Defendant,** | Time: 9:00 a.m. |
| | | Before the Honorable Maxine M. Chesney |
| 18 | | |
| 19 | **STANDARD INSURANCE COMPANY,** | |
| 20 | **Real Party in Interest.** | |

21
22
23
24
25
26
27
28

TABLE OF CONTENTS

Page

I. INTRODUCTION ............................................................................................................ 1
II. FACTUAL HISTORY ..................................................................................................... 1
    A. The Relevant Terms of the LTD Policy .............................................................. 1
        1. The Plan Policy Provides Discretion to Standard ..................................... 2
        2. The Definition of Disability ...................................................................... 2
        3. The Benefit Waiting Period ...................................................................... 3
        4. When Insurance Ends Under the Plan Policy ........................................... 3
        5. Amendment 2 Does Not Create a New Contract ...................................... 3
    B. Administration of Plaintiff's Claim for LTD Benefits ......................................... 3
        1. Standard Collected Information Relevant to Plaintiff's Claim, and Appropriately Consulted with Experts Prior to Making its Decision to Deny Plaintiff's Claim. ......................................................................... 4
        2. Plaintiff Appealed Standard's Initial Decision and Standard Upheld its Initial Decision ..................................................................................... 5
        3. Standard's Administrative Review Unit Affirmed the Decision to Deny Benefits ............................................................................................ 7
III. ARGUMENT .................................................................................................................... 8
    A. Standard's Decision is Reviewed for an Abuse of Discretion .............................. 8
        1. The Plan Policy Grants Standard Discretion ............................................. 8
        2. The Notice By the Department of Insurance Is Irrelevant. ....................... 9
        3. A Deferential Abuse of Discretion Review is Warranted Here .............. 11
    B. Standard's Decision is Entitled to a High Degree of Deference when Reviewed for an Abuse of Discretion .................................................................. 11
    C. Plaintiff has not Demonstrated Any Reason to Alter the Standard of Review ................................................................................................................. 13
IV. CONCLUSION ............................................................................................................... 15

# TABLE OF AUTHORITIES

**Page**

Cases

*Abatie v. Alta Health & Life Ins. Co.*
  458 F.3d 955 (9th Cir. 2006) ........................................................................... 9, 11, 12, 13

*Bendixen v. Standard Ins. Co.*
  185 F.3d 939 (9th Cir. 1999) ........................................................................................ 9

*Boyd v. Bell*,
  410 F.3d 1173 (9th Cir. 2005) ..................................................................................... 10

*Donovan v. Dillingham*,
  688 F.2d 1367 (11th Cir. 1982) .................................................................................... 10

*Firestone Tire & Rubber v. Bruch*
  489 U.S. 101 (1989) ................................................................................................ 9, 11

*Jebian v. Hewlett – Packard Co. Emple. Benefits Org. Income Prot. Plan*
  349 F.3d 1098 (9th Cir. 2003) ..................................................................................... 12

*John Hancock Mutual Life Ins. Co. v. Dorman*,
  108 F.2d 220 (9th Cir. 1939) ....................................................................................... 10

*Metropolitan Life Ins. Co. v. Glenn*
  552 U.S. ___, 128 S. Ct. 1117, 169 L. Ed. 2d 845, 2008 LEXIS 5030 (2008) ............... 9, 11, 12

*Muskowite v. Everen Capital Corp. Group Disability Income Plan*
  2008 LEXIS 22286 (N.D. Cal. March 20, 2008) ........................................................ 12, 13

*N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*,
  514 U.S. 645 (1995) .................................................................................................... 10

*Saffon v. Wells Fargo & Co. Long Term Disability*,
  522 F.3d 863 (9th Cir. 2008) ....................................................................................... 10

12

*N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645 (1995) . 10

## I. INTRODUCTION

This lawsuit arises from the decision of Standard Insurance Company ("Standard")[1] to deny the claim of Plaintiff Patricia Broyles ("Plaintiff") for Long-Term Disability ("LTD") benefits. Because the Plan Policy at issue contains a grant of discretion, Standard's decision is reviewed for an abuse of discretion. The degree of deference the Court may afford in its abuse of discretion review may vary upon demonstration by Plaintiff that Standard's decision was tainted by its structural conflict of interest arising from its role as both decision-maker and funding source. Here, however, there is no taint. The administrative record is the product of a diligent effort to collect relevant information (including medical records), and frequent communications with Plaintiff to ensure a complete record. Standard reviewed the administrative record three times. In each review, it evaluated information provided by Plaintiff and her doctors, and solicited expert medical and/or vocational opinions to inform its decision-making. Accordingly, the Court should apply a highly deferential review for an abuse of discretion.

Plaintiff moved for *de novo* review arguing that the Court should disregard the Plan Policy's discretionary clause based upon a 2004 Notice issued by the California Department of Insurance. *See* Plaintiff's Motion for De Novo Standard of Review ("Plaintiff's Motion"); Docket # 30. The Notice, however, is inapplicable because it does not withdraw approval of any Standard policy form and does not apply retroactively. Plaintiff also argues that "significant errors" in the administration of her claim impact the standard of review. Upon scrutiny, however, her points are either demonstrably false, or merely disagreements with the merits of Standard's decision. In short, Plaintiff has offered no basis for the Court to apply anything other than the most deferential review.

## II. FACTUAL HISTORY

### A. The Relevant Terms of the LTD Policy

The policy at issue is Group Long Term Disability Insurance Policy No. 638213-T ("Plan Policy") which was issued by Standard to A.U.L. Corporation, effective January 1, 2000, as

---

[1] Standard insures the long-term disability coverage provided by Plaintiff's employer (A.U.L. Corporation) through its ERISA plan, which is defendant A.U.L. Corporation Long-Term Disability Plan ("A.U.L. Plan").

- 1 -    Defendant's Opposition to Plaintiff's Motion for De Novo Standard of Review; C07-05305 MMC

amended from time to time.  Administrative Record ("AR") at 030; Docket # 33.[2]

### 1. The Plan Policy Provides Discretion to Standard

The "Allocation of Authority" section of the Plan Policy provides that Standard has full authority to administer claims.  This section provides:

> Except for those functions which the Group Policy specifically reserves to the Policyowner or Employer, we have full and exclusive authority to control and manage the Group Policy, to administer claims, and to interpret the Group Policy and resolve all questions arising in the administration, interpretation, and application of the Group Policy.
>
> Our authority includes, but is not limited to:
>
> 1. The right to resolve all matters when a review has been requested;
>
> 2. The right to establish and enforce rules and procedures for the administration of the Group Policy and any claim under it;
>
> 3. The right to determine
>
>    a. Your eligibility for insurance
>
>    b. Your entitlement to benefits
>
>    c. The amount of benefits payable to you
>
>    d. The sufficiency and the amount of the information may reasonably require to terminate a, b, or c. above."
>
> Subject to the review procedures of the Group Policy, any decision we make in the exercise of our authority is conclusive and binding.

AR at 006-07.

### 2. The Definition of Disability

The Plan Policy specifically sets forth the criteria a claimant must meet to be considered "Disabled."  For the first 24 months of LTD benefits, often referred to as the "Own Occupation" period, a claimant must be "unable to perform with reasonable continuity the Material Duties of [her] Own Occupation."  AR at 021.  Material Duties means the "essential tasks, functions and operations, and the skills, abilities, knowledge, training and experience, generally required by employers from those engaged in a particular occupation."  AR at 020.

---

[2] For ease of reference, the A.U.L. Plan will omit "STND1149-00" from its page references, and simply cite to the last three numbers of each document's Bates stamp.

- 2 -     Defendant's Opposition to Plaintiff's Motion for De Novo Standard of Review; C07-05305 MMC

### 3. The Benefit Waiting Period

Additionally, the Plan Policy provides a 90-day Benefit Waiting Period, precluding payment of LTD benefits unless the claimant has been disabled throughout the waiting period. AR at 026, 004. Because Plaintiff ceased work on September 14, 2005 (AR at 173), her Benefit Waiting Period ended on December 14, 2005.

### 4. When Insurance Ends Under the Plan Policy

The Plan Policy provides that insurance ends upon the occurrence of certain specified events. Specifically, the Plan Policy provides in the When Your Insurance Ends section that coverage ends automatically on the earliest of:

….

    4.    The date your employment terminates.

    5.    The date you cease to be a Member. However, your insurance will be continued during the following periods when you are absent from Active Work, unless it ends under any of the above.

….

    b.    During leave of absence if continuation of your insurance under the Group Policy is required by a state-mandated family or medical leave act or law.

AR at 022. Plaintiff's Insurance Ended On December 8, 2005, following the end of her leave of absence under the Family Medical Leave Act. AR at 345.

### 5. Amendment 2 Does Not Create a New Contract

Amendment 2 amends the Plan Policy in two respects: First, it waives one provision of the Plan Policy -- the Eligibility Waiting Period[3] -- for employees previously covered by the policy issued to Monticello Adjusting, Inc. (a different employer insured by Standard Group Policy 630104-C) who became employees of A.U.L. Corporation on April 1, 2005. AR at 037. Second, it changes the premium effective April 1, 2005. *Id.* It does nothing more.

### B. Administration of Plaintiff's Claim for LTD Benefits

Plaintiff worked at A.U.L. Corporation as a claims payable adjuster, which is a sedentary

---

[3] The Eligibility Waiting Period is the period of time one must be employed before becoming eligible for insurance. AR at 026.

occupation. AR at 169. On September 14, 2005, she ceased work. AR at 173. Under the Family Medical Leave Act, Plaintiff was considered on a leave of absence without pay until December 8, 2005. AR at 345. On November 28, 2005, Plaintiff submitted the Employee Statement in support of her claim for LTD benefits. AR at 279.

      1.    <u>Standard Collected Information Relevant to Plaintiff's Claim, and Appropriately Consulted with Experts Prior to Making its Decision to Deny Plaintiff's Claim.</u>

Standard conducted a thorough review in evaluating Plaintiff's claim. As an initial matter, Standard confirmed receipt of the claim with Plaintiff by telephone and "explained [the] process" of claim administration to Plaintiff. AR at 280. Additionally, because Plaintiff indicated on her Employee Statement that she had not received a certificate of coverage, Standard requested that A.U.L. Corporation provide one. AR at 284. On December 28, 2005, Plaintiff and Shannon Teed, a disability benefits analyst at Standard, spoke by telephone. AR at 288-91. Ms. Teed documented the conversation, noting Plaintiff's description of her medical condition, medication, and employment history. *Id.* On December 30, 2005, Standard wrote to Plaintiff, explaining that although an initial review had been completed, its administration was not complete because it needed to obtain additional information. AR at 298-300.

Standard diligently sought to acquire complete medical records. This process included frequent communications between Standard and Plaintiff. On January 3, 2006, Standard requested Dr. Pfeffer's medical records and an Attending Physician Statement, as well as other records. AR at 303-04, 305, 311. And on January 4, 2006, Standard spoke with Plaintiff again and discussed Plaintiff's health, the process of administering the claim, and Dr. Pfeffer's proper mailing address. AR at 307-09. In January and February of 2006, Standard made repeated efforts to obtain the records, and it continuously kept Plaintiff apprised of that effort and the complications that arose from the relocation of Dr. Pfeffer's practice to Los Angeles from San Francisco. AR at 312, 321, 329, 331, 336-40. On February 15, 2006, Standard notified Plaintiff that it had received the medical records from Dr. Pfeffer. AR at 342. On March 3, 2006, Standard confirmed by letter that it would be able to complete its review by April 2, 2006. AR at

344.

Standard reviewed the records and appropriately consulted with experts. For example, Standard submitted Plaintiff's medical records to a Physician Consultant, Dr. David Waldram, board certified in orthopedics, and a Nurse Consultant, Anne Jordan, both of whom reviewed Plaintiff's records. AR at 209-10. Dr. Waldram is not an employee of Standard. Chan Decl. ¶ 4. His curriculum vitae (which is part of the administrative record) confirms that he has practiced for over thirty years and that he holds a position on the Advisory Board to Oregon Health Systems. AR at 261-62. Nurse Jordan drafted a summary of medical records, noting Dr. Waldram concluded that Plaintiff was capable of sedentary work. AR at 209-10. Importantly, Dr. Waldram noted his opinion was "consistent with recommendations from the claimant's primary orthopedist, Dr. Pfeffer, who reports on the 12/07/05 APS the claimant is capable of sedentary work."[4] *Id.* Additionally, Standard sought information from a Vocational Consultant and received a report that Plaintiff's occupation was sedentary in nature. AR at 169.

Standard considered Dr. Waldram's opinion, the Vocational Consultant's report, and Plaintiff's medical records in its review and concluded that Plaintiff was not disabled from her "Own Occupation." By a six page letter, dated March 28, 2006, Standard explained its review process, its conclusions from the records it had received, the applicable Plan Policy provisions, its decision to deny Plaintiff's claim and the appeal process. AR at 361-66.

Subsequently, Plaintiff requested copies of all medical records reviewed in the administration of her claim and Standard provided them to her on May 10, 2006. AR at 370.

2.  Plaintiff Appealed Standard's Initial Decision and Standard Upheld its Initial Decision

Plaintiff contacted Standard by telephone to inquire about an appeal of the denial of her claim. AR at 371. She expressed two concerns. First, Plaintiff asserted Standard had not fully considered the impact of her left knee replacement. *Id.* Second, she asserted there were "a lot

---

[4] The Attending Physician Statement included the question, "What reasonable work or job site modifications could the employer make to assist the individual to return to work? Please specify:", and Dr. Pfeffer answered this question with "sedentary work." AR at 181-82.

- 5 -  Defendant's Opposition to Plaintiff's Motion for De Novo Standard of Review; C07-05305 MMC

1  discrepancies in her file and [Standard] didn't get a complete picture of what was happening." *Id.*
2  (Standard's notes of conversation with Plaintiff). Standard explained the review process and
3  suggested that Plaintiff provide all the information she felt was not considered in her initial
4  review, and Plaintiff agreed to include it. *Id.*

5  Plaintiff requested review of the decision to deny her claim for LTD benefits by letter
6  dated July 25, 2006. AR at 372-73. In her request, she asserted that her current condition
7  rendered her disabled from her occupation. *Id.*

8  Standard followed up on the issues identified by Plaintiff in her request for review. On
9  July 31, 2006, Standard spoke with Plaintiff by telephone and discussed the process of reviewing
10  her LTD benefits claim decision. AR at 374. Plaintiff indicated that she would be submitting
11  medical records documenting her knee replacement, physical therapy notes, and proof of pain
12  medications. *Id.* She also requested that Standard confirm the information conveyed in the
13  telephone conference by writing, which Standard did by letter dated August 3, 2006. AR at 376.
14  By early October, Standard had not received the additional information from Plaintiff. AR at
15  379. As a result, Standard wrote to Plaintiff, again after a conversation to the same effect, to
16  confirm that the records were forthcoming and that her review could not proceed without them.
17  *Id.* Standard agreed to defer review until receipt of the records. *Id.* On November 20 and 21,
18  2006, Plaintiff and Standard communicated in regard to the records Plaintiff agreed to provide.
19  AR at 381-84. By letter dated November 20, 2006, Standard confirmed that it was in receipt of
20  the additional records Plaintiff had sent through to that date, and that the review process would
21  not begin until Plaintiff finished providing the additional information she wanted Standard to
22  review. AR at 386. After receipt of records from Plaintiff, on December 11, 2006, Standard
23  notified Plaintiff by letter that it was forwarding her claim for medical review. AR at 394.

24  The records submitted by Plaintiff included additional medical records, physical therapy
25  records, and letters from her doctors. Regarding Plaintiff's assertions concerning her knee
26  replacement, Standard reviewed a letter from Dr. Michael Shifflet to Standard Insurance
27  Company dated October 11, 2006. AR at 254. This letter indicated Plaintiff had been under his
28  care since February 2006 and had a knee replacement performed in April 2006. *Id.* Dr. Shifflet

also indicated Plaintiff was scheduled for a similar procedure on her other knee and concluded she was incapable of returning to work until approximately July 1, 2007. *Id.*

Standard also reviewed additional information from Dr. Pfeffer and from her physical therapist. At Plaintiff's request, Dr. Pfeffer wrote to Standard on November 20, 2006. AR at 390. He asserted that she was "incapable of working in her own occupation and any other occupation either on a full or part time basis, including sedentary work, since September, 15, 2005." *Id.* Standard also reviewed Plaintiff's physical therapist records, including her discharge statement from physical therapy on October 28, 2005. AR at 252. This statement, from Rob Gordon to Dr. Pfeffer, concluded Plaintiff was capable of "45 minutes of consistent cardiovascular exercise" and "that she was told at her last MD visit that she should join a gym and stop physical therapy." *Id.*

Standard forwarded Plaintiff's claim file, including the additional documents supplied by Plaintiff, to Dr. Waldram to consider the newly provided records. AR at 265-66. Dr. Waldram considered both Plaintiff's knee and ankle surgeries. *Id.* He concluded neither would inhibit her from sedentary work, provided she would not be required to walk more than "3 or 4 blocks." *Id.* at 265. Dr. Waldram also considered the impact of medications on Plaintiff's ability to work. *Id.*

Standard considered this new information and placed it in the context of all information reviewed up to that point. AR at 414-16. Standard concluded the new information did not support that Plaintiff was disabled from her Own Occupation during the relevant time period. *Id.* By a three page letter dated February 7, 2007, Standard's Benefits Department upheld its decision. Specifically, Standard responded to Plaintiff's two concerns by explaining its conclusion that Plaintiff's foot pain did not disable her from a sedentary position and noting that her knee operation occurred five months after her insurance ended and was therefore not a basis for the payment of benefits. *Id*. The claim was then forwarded to Standard's Administrative Review Unit ("ARU") for an independent review. *Id.*

### 3. Standard's Administrative Review Unit Affirmed the Decision to Deny Benefits

Because the benefits department did not change its decision, the ARU reviewed the claim.

- 7 - Defendant's Opposition to Plaintiff's Motion for De Novo Standard of Review; C07-05305 MMC

AR at 417. The ARU is a different department at Standard, and the analyst assigned to the claim had no part in the original claim decision. Chan Decl. ¶ 5. As part of the independent review process, Plaintiff's medical records were reviewed by an additional Physician Consultant, Dr. Joseph Mandiberg, board certified in orthopedic surgery. Prior to Dr. Mandiberg's review, he was not consulted regarding the decision to deny the claim. AR at 417. Dr. Mandiberg is not an employee of Standard. Chan Decl. ¶ 6. His curriculum vitae confirms that he has practiced for over thirty years, the majority of which have been in private practice. AR at 269. Dr. Mandiberg concluded that while Plaintiff's foot and knee conditions limited her ability to stand for "prolonged" periods, he could not "see why she cannot do a sit-down job with the ability to stand up and move around as needed." AR at 274. He also noted that although her medical records indicated ongoing issues with her foot and knee, "nobody has given a reason why a person with foot problems cannot do a sedentary job." AR at 273. Standard also asked Dr. Mandiberg to evaluate whether Plaintiff's medication may result in limitations and restrictions. *Id.* He did not find "an impairment relative to [Plaintiff's] medication." *Id.*

After compiling and reviewing an administrative record of 462 pages (Chan Decl. ¶ 7), on March 15, 2007, Standard informed Plaintiff by a six page letter that an independent review affirmed Standard's decision to deny Plaintiff's claim for LTD benefits. AR 36 at 419-24. This letter provided a summary of available information and explained in detail why Standard reached the conclusion that Plaintiff could perform the material duties of her own sedentary occupation at the time she ceased work and throughout the 90-day Benefit Waiting Period. *Id.* In addition, Standard explained that any disability caused by her 2006 knee surgery could not be weighed in Standard's evaluation under the Plan Policy because Plaintiff was no longer a covered member under the Policy after December 8, 2005. *Id.* The ARU affirmed the denial of Plaintiff's claim. *Id.*

### III. ARGUMENT

#### A. Standard's Decision is Reviewed for an Abuse of Discretion

##### 1. The Plan Policy Grants Standard Discretion

It is well-established that if an ERISA plan gives the claim administrator discretionary

authority to determine eligibility for benefits or to construe the terms of the plan, a reviewing court may reverse the denial of benefits only upon a finding of abuse of discretion. *See Metropolitan Life Ins. Co. v. Glenn,* 552 U.S. ___, 128 S. Ct. 1117, 169 L. Ed. 2d 845, 2008 LEXIS 5030, *12-13, 18 (2008)[5]; *Firestone Tire & Rubber v. Bruch,* 489 U.S. 101, 115 (1989); *Abatie v. Alta Health & Life Ins. Co.,* 458 F.3d 955, 965 (9th Cir. 2006); *Bendixen v. Standard Ins. Co.*, 185 F.3d 939, 943 (9th Cir. 1999) (applying abuse of discretion standard to the exact same policy language). The Plan Policy here contains an express Allocation of Authority clause that grants Standard complete discretion "to control and manage the Group Policy, to administer claims, and to interpret the Group Policy and resolve all questions arising in the administration, interpretation and application of the Group Policy." AR at 007. In reviewing the same Allocation of Authority provision, the Ninth Circuit concluded: "In this case, the policy language clearly confers discretion on Standard to decide whether a claimant is disabled. Therefore, the standard is abuse of discretion." *Bendixen*, 185 F.3d at 943 (affirming summary judgment for Standard based on an abuse of discretion review after holding Allocation of Authority provision confers discretion). Thus, an abuse of discretion standard is triggered by the language of the Plan Policy at issue here. *Abatie*, 458 F.3d at 965.

### 2. The Notice By the Department of Insurance Is Irrelevant.

Plaintiff argues that *de novo* review is appropriate based on a February 27, 2004 "Notice to Withdraw Approval and Order for Information" issued by the California Department of Insurance ("Notice"). Plaintiff's Motion at 5. The Notice is irrelevant. Contrary to Plaintiff's implication, nothing in the Notice invalidates the Plan Policy's discretionary clause. *See* Request for Judicial Notice (Docket #31) Ex. A. On its face, the Notice functions to withdraw approval of specific policy forms issued by insurers other than Standard. *Id.* It does not withdraw approval of *all* insurance policies issued in the State of California that have a discretionary clause. *Id.* Rather, the only thing the Notice requires of all carriers is that they provide a list of policy forms containing discretionary clauses. *Id.* Standard provided a list of policy forms with discretionary

---

[5] For efficiency, this Opposition cites to the 2008 LEXIS 5030 printing of this case. Pagination from official reporters is unavailable due to the decision's very recent publication.

clauses, and in more than four years since the Notice was issued, the California Department of Insurance has not withdrawn approval of any Standard policy form. Declaration of John Baumgarder ("Baumgardner Decl.") ¶¶ 3-4.

Even if the Notice had some bearing here, it has no retroactive effect, as Plaintiff acknowledges. *See* Motion at 4 (citing *Saffon v. Wells Fargo & Co. Long Term Disability,* 522 F.3d 863, 867 (9th Cir. 2008)). Plaintiff attempts to circumvent this problem by arguing that a new insurance contract was issued when she became an employee of A.U.L. Corporation, asserting Amendment 2 to the Plan Policy indicates as much. *Id.* Her argument fails. There is no contract between Plaintiff and Standard. She is the beneficiary of a contract between A.U.L. Corporation and Standard, and that contract became effective on January 1, 2000 – prior to the Notice. *See* AR at 030. Furthermore, Amendment 2 to the Plan Policy merely waives the Eligibility Waiting Period under certain circumstances. AR at 037. It does not transform an existing contract with A.U.L. Corporation into a new contract between Standard and Plaintiff. Employees come and go into group policies based upon their employment status with their employer, but this does not establish a new insurance contract. *Cf. Donovan v. Dillingham*, 688 F.2d 1367, 1373 (11th Cir. 1982) ("[A]n employer or employee organization, or both, and not individual employees or entrepreneurial businesses, must establish or maintain [an ERISA] plan, fund, or program.").[6] To suggest otherwise, as Plaintiff does, is inconsistent with ERISA's objective of an efficient and uniform regulatory scheme. *N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 656-57 (1995) (ERISA provides "a uniform body of benefits law," and "minimize[s] the administrative and financial burden of complying with conflicting directives among States or between States and the Federal government"); *Boyd v. Bell*, 410 F.3d 1173, 1178 (9th Cir. 2005) (describing ERISA's goal "'to provide a method for workers and beneficiaries to resolve disputes over benefits inexpensively and expeditiously.'")

---

[6] Plaintiff's citation to *dicta* in a rescission of coverage case that predates ERISA by decades is inapplicable. *See* Plaintiff's Motion at 5 (citing *John Hancock Mutual Life Ins. Co. v. Dorman*, 108 F.2d 220, 223 (9th Cir. 1939). *Dorman* involved a policy in which employees submitted applications and evidence of insurability, and whose coverage became effective only upon acceptance by the insurer as evidenced by a certificate of coverage. *Id.* at 222-23. Plaintiff received no individualized policy or certificate of coverage here.

### 3. A Deferential Abuse of Discretion Review is Warranted Here

The Supreme Court's recent decision in *Glenn* affirms the application of an abuse of discretion review in cases where, as here, the ERISA plan documents provide discretion to the claim administrator even if the administrator is both the decision-maker and the funding source (sometimes referred to as a "structural conflict of interest"). *Glenn*, 2008 LEXIS 5030, *12; *Abatie*, 458 F.3d at 965 (applying the label "structural conflict of interest"). In *Glenn*, the Court extended its decision in *Firestone*, holding that that a structural conflict of interest "should 'be weighed as a factor in determining whether there is an abuse of discretion.'" *Glenn*, 2008 LEXIS 5030, *18 (quoting *Firestone,* 489 U.S. at 115). It further clarified, "[w]e do not believe that *Firestone's* statement implies a change in the *standard* of review, say, from deferential to *de novo* review." *Id.* (emphasis in original). Rather, the Court held, "we believe that *Firestone* means what the word factor implies," the structural conflict of interest is one of "several different considerations" that the Court must take into account. *Id.* at *21.

Although the Supreme Court's holding in *Glenn* allows an abuse of discretion review to become more skeptical under certain circumstances, those circumstances are not present here. *Glenn* allows a less deferential abuse of discretion review if there is evidence that a structural conflict of interest impacted the decision. *Id.* at *18; *accord Abatie,* 458 F.3d at 968. For example, the structural conflict of interest may "prove more important (perhaps of great importance) where circumstances suggest a higher likelihood that it affected the benefits decision," but in contrast, the conflict should "prove less important (perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and to promote accuracy…." *Id.* at *21-22; *see, also,* Chan Decl. ¶ 8 (describing focus on timeliness and accuracy at Standard). As the Ninth Circuit held in *Abatie,* the effect of a conflict "may be low if a structural conflict of interest is unaccompanied, for example, by any evidence of malice, of self dealing, or a parsimonious claims-granting history." *Abatie*, 458 F.3d at 968.

**B. Standard's Decision is Entitled to a High Degree of Deference when Reviewed for an Abuse of Discretion**

Standard provided Plaintiff with a full and fair review. Its review is not accompanied by

- 11 -   Defendant's Opposition to Plaintiff's Motion for De Novo Standard of Review; C07-05305 MMC

"any evidence of malice, self dealing, or a parsimonious claims-granting history." *Abatie*, 458 F.3d at 968. The burden to demonstrate that Standard's structural conflict of interest should weigh "heavily" in this Court's review for an abuse of discretion falls upon the Plaintiff. *See Abatie*, 458 F.3d at 969. The administrative record shows a conscientious and thorough claim administration, and Plaintiff cannot meet her burden of demonstrating that less deference toward Standard's decision is warranted. Accordingly, Standard's administration of Plaintiff's claim does not merit weighing the structural conflict of interest heavily.

As set forth above, Standard conducted a full and fair review of Plaintiff's claim, ultimately compiling a record of 462 pages. Chan Decl. ¶ 7. "When an administrator can show that it has engaged in an 'ongoing, good faith exchange of information between the administrator and the claimant,' the court should give the administrator's decision broad deference notwithstanding a minor irregularity." *Abatie*, 458 F.3d at 972 (quoting *Jebian v. Hewlett – Packard Co. Emple. Benefits Org. Income Prot. Plan,* 349 F.3d 1098, 1107 (9th Cir. 2003)). Standard engaged in a "good faith exchange" with Plaintiff. It communicated regularly with Plaintiff regarding her claim and it gathered and reviewed information from all of her treating physicians, including those Plaintiff saw after her insurance had ended. *See supra* Part II.B.1-2. Standard provided a detailed letter explaining its initial decision, including instructions as to the appeal process. AR at 261-66. Standard gathered additional information provided by Plaintiff when she appealed Standard's decision, and conducted another review of her claim. *See supra* Part II.B.2. Additionally, Standard conducted an additional, independent review of Plaintiff's claim. AR at 419-24. As part of each review, Standard consulted with physicians, and provided Plaintiff a detailed and thorough explanation of Standard's decision and decision-making process. *Id.; cf. Glenn*, 2008 LEXIS 5030, *23 (holding that a conflict of interest affected Plan administrator's decision, in part, because of failure "to provide its vocational and medical experts with all of the relevant evidence.").

The lack of evidence that Standard's structural conflict of interest should be weighed heavily makes this case analogous to *Muskowite v. Everen Capital Corp. Group Disability Income Plan,* 2008 LEXIS 22286 (N.D. Cal. March 20, 2008) (Chesney, J.), where this Court

held that the plaintiff provided "no basis" to weigh the presence of a structural conflict of interest heavily. *Id.* at *34. Mere allegations, for example, that the "defendant did not consider certain evidence submitted by the plaintiff," that the plaintiff's award of social security benefits was ignored, and that the defendant did not properly evaluate the plaintiff's pain symptoms, were unpersuasive reasons to apply less deference in reviewing for an abuse of discretion. *Id.* at *31-34.

As described herein, the administrative record supports a high degree of deference toward Standard's decision. Plaintiff's medical records were reviewed by independent medical consultants, and the review process was thorough and appropriate. *See supra* Part II.B.2-3. The curricula vitae of the physician consultants describe considerable medical experience and employment by independent medical providers. *Muskowite*, 2008 LEXIS 22286 at *30-31 (concluding that physician consultants' curricula vitae demonstrated their expertise and lack of bias). This is exactly the type of "affirmative evidence" that *Abatie* envisioned being "brought forth" by plan administrators to support finding a high degree of deference. *Abatie*, 458 F.3d at 969 n.7. Accordingly, this Court should apply a "low" "level of skepticism" in reviewing Standard's decision for an abuse of discretion. *Id.* at 968.

### C. Plaintiff has not Demonstrated Any Reason to Alter the Standard of Review

Plaintiff asserts a series of "errors" in the administration of her claim. A careful reading of the administrative record undermines each of these assertions. Plaintiff asserts:

- Standard failed to consider Dr. Pfeffer's limitation on sitting in its March 28, 2006 initial denial letter. Plaintiff's Motion at 6. This makes complete sense, however, because Dr. Pfeffer's limitation on sitting was included in his November 11, 2006 letter, more than seven months after Standard's initial decision. Standard should not be faulted for failing to accomplish the impossible.
- "Standard never explained the information needed to perfect her claim," specifically, how she could demonstrate that her disability extended to sitting. Plaintiff's Motion at 6-7. On the contrary, Standard gave specific instructions in

- 13 -   Defendant's Opposition to Plaintiff's Motion for De Novo Standard of Review; C07-05305 MMC

the initial denial letter: "Additional information which would be helpful to a reconsideration of your claim should include medical documentation that supports your limitations and restrictions, at the time of your cease work and while you were a covered member under the Group Policy, are more severe than we have previously understood and that you are unable to perform sedentary level work. Please include any such new information along with your request for review." AR at 362.

- Standard failed to consider Plaintiff's pain symptoms. Plaintiff's Motion at 7-9. This is simply false. For example, the initial denial letter makes at least five specific references to Plaintiff's "pain" and multiple indirect references. AR at 366-361. Additionally, Standard's denial letters relied upon the opinions of independent physician consultants, Drs. Waldram[7] and Mandiberg, who also evaluated Plaintiff's pain and pain medications.[8] *See, e.g.,* AR at 419-24, 273-75.

- Standard failed to consider Dr. Pfeffer's November 20, 2006 letter that Plaintiff was disabled from sedentary work in its second and third denial letters. Plaintiff's Motion at 9. Again, the administrative record does not bear this out. For example, Dr. Mandiberg's opinion specifically discusses the November 2006 letter from Dr. Pfeffer (AR at 274), and Standard discussed receiving and reviewing information submitted by Plaintiff after her initial denial, including information from Dr. Pfeffer (AR at 416).

---

[7] Plaintiff asserts that Dr. Waldram's second review of her claim was "in violation of ERISA procedural regulations." Plaintiff's Motion at 8. Plaintiff does not dispute that a different analyst (Mary Cea) and a different doctor (Dr. Mandiberg) conducted a review of her claim. She is complaining that she received an *additional* review not required by ERISA. Because Plaintiff submitted new information with her request for a review, the original analyst and doctor reviewed the new information to determine whether it changed their opinion before forwarding the claim for the ERISA-required independent review. Rather than being evidence of a conflict, providing additional reviews is evidence of good claim practices.

[8] Plaintiff draws attention to the Opening Synopsis presented to Dr. Mandiberg, which indicated that "It is noted that… [Plaintiff] was only taking Aleve…," concluding from this statement that Standard deficiently processed Plaintiff's claim. Plaintiff's Motion at 8. What Plaintiff neglects is that neither Dr. Mandiberg nor Dr. Waldram adopted this statement in their respective opinions. The pharmacy records were part of the medical records provided to the physician consultants. Chan Decl. at ¶ 7. Moreover, the pharmacy records do not make clear that Plaintiff was taking other medication on the date she ceased work. *See* AR at 213.

- 14 -   Defendant's Opposition to Plaintiff's Motion for De Novo Standard of Review; C07-05305 MMC

1        Thus, Plaintiff fails to demonstrate any "significant errors" in the administration of her claim. A careful review of the administrative record demonstrates that Plaintiff's assertions amount to mere disagreements with the merits of the decision to deny her claim rather than procedural irregularities. If Plaintiff has identified any procedural irregularities, and Standard does not believe Plaintiff has, such a showing nonetheless does not warrant *de novo* review. *See Abatie,* 458 F.3d at 972 ("[A] procedural irregularity, like a conflict of interest, is a matter to be weighed in deciding whether an administrator's decision was an abuse of discretion."). The administrative record reflects that Standard has engaged in an ongoing, good faith exchange of information between itself and the claimant; accordingly, the Court should give Standard's decision broad deference. *See id.*

## IV. CONCLUSION

For the reasons described herein, Plaintiff's motion should be denied.

Dated: July 11, 2008

Respectfully submitted,

Jones Day

By: /s/ Katherine S. Ritchey
    Katherine S. Ritchey

for Defendant A.U.L. CORPORATION LONG-TERM DISABILITY INSURANCE PLAN and Real Party in Interest STANDARD INSURANCE COMPANY

SFI-587323v2

- 15 -    Defendant's Opposition to Plaintiff's Motion for De Novo Standard of Review; C07-05305 MMC