Laurence F. Padway (SBN: 083914)
Karen K. Wind (SBN: 124852)
Law Offices of Laurence F. Padway
1516 Oak Street, Suite 109
Alameda, CA 94501
Telephone: (510) 814-6100
Facsimile: (510) 814-0650

David J. Linden (SBN: 041221)
P. O. Box 5780
Napa, California 94581
Telephone: (707) 252-7007
Facsimile: (707) 252-7883

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICIA BROYLES,<br><br>    Plaintiff,<br><br>vs.<br><br>A.U.L. CORPORATION LONG-TERM DISABILITY INSURANCE PLAN,<br><br>    Defendant, | CASE NO. C07-05305 MMC<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR DE NOVO STANDARD OF REVIEW**<br><br>Date:   August 1, 2008<br>Time:  9:00 a.m.<br>Ctrm:  7 (19th Floor, San Francisco)<br>Judge: Honorable Maxine M. Chesney |
| STANDARD INSURANCE COMPANY,<br><br>    Real Party at Interest. | |

     Plaintiff Patricia Broyles has moved this Court to review the denial of her disability benefits under a *de novo* standard. Defendant Standard Insurance argues for a highly deferential abuse-of-discretion standard. Defendant's Opposition to Plaintiff Motion for De Novo Standard

of Review ("Opposition") at 11.   Standard's arguments fail for the following reasons:

### 1. Standard Has Not Demonstrated Assurance of Accurate Claims Processing.

The parties agree that Standard operates under a "structural conflict of interest" because it is both the benefit administrator and the funding source.  Both parties also agree that under *Metropolitan Life Ins. Co. v. Glenn*, ___ S.Ct.___, 2008 WL 2444796 (U.S.), this structural conflict of interest is a factor that the Court must take into account in determining how much deference, if any, to afford Standard's decision to deny Ms. Broyles' benefits.

Under *Glenn*, a structural conflict may be weighed more or less heavily, depending on the circumstances.  2008 WL 2444796, at page 8.   In its Opposition, Standard implies that its conflict of interest should have little weight because the company has "a focus on timeliness and accuracy." Opposition at 11.   In support, Standard offers the Declaration of George Chan, Senior Disability Benefits Analyst ("Chan Decl.").   However, Standard's claim file indicates that Mr. Chan had very little involvement in the administration of Ms. Broyles' claim.  His role lasted only a few weeks, from the beginning of January 2007 until February 7, 2007, the date of his letter denying Ms. Broyles' appeal.  AR 395, AR 414-16.  Moreover, Mr. Chan declares that he, like all of Standard's disability benefits analysts, is "evaluated on the accuracy and timeliness of my decisions." Chan Decl. at ¶ 3.  But he provides no details as to the standards or the process used in these employee evaluations.  Simply stated, Mr. Chan's declaration is too general and too limited in scope to persuade this Court to give less weight to Standard's structural conflict of interest.   It remains an important factor in deciding the standard of review.

### 2. Standard Cannot Refute the Significant Errors Made in its Claims Processing.

Ms. Broyles identified significant procedural irregularities that are factors weighing in favor of *de novo* review.  *See Abatie v. Alta Health & Life Ins. Co.* 458 F.3d 995, 968 (structural conflict of interest weighs more heavily  when evidence shows factors such as malice, self-

dealing, or inadequate claims investigation).    Standard attempts to counter some, but not all, of Ms. Broyles' points.  Opposition at 13-15.   Standard is successful only in one instance, and only then because of a reference error in Plaintiff's Motion.  As explained below, Plaintiff inadvertently cited to one document in the administrative record when another document was intended.

With respect to each of Standard's four counter arguments:

First, Standard is correct that it was impossible for it to consider Dr. Pfeffer's limitation on sitting in its initial denial letter dated March 28, 2006.  Opposition at 13.   Plaintiff's intended reference was to the first appeal denial letter dated February 7, 2007.   By that date, Standard had received  Dr. Pfeffer's letter dated November 20, 2006, in which he stated:  "Ms. Broyles has been incapable of working in her own and any other occupation either on a full or part time basis, including sedentary work, since September 15, 2005. Since that date, she has been unable to sit, stand or walk for a significant period of time." AR 390.

Second, Standard asserts that it  gave "specific instructions" in its initial denial letter explaining how Ms. Broyles could perfect her claim. Opposition at 14.   But  the language quoted by Standard is anything but specific.  It reads:  "Additional information which would be helpful to a reconsideration of your claim should include medical documentation that supports your limitations and restrictions, at the time of your cease work and while you were a covered member under the Group Policy, are more severe than we have previously understood and that you are unable to perform sedentary level work." AR 362.   What precisely does this language mean?   What type of "medical documentation" did Standard lack in its initial review?  And how would Ms. Broyles know what Standard "previously understood," other than it considered her able to work?   The vague generalities in this sentence  are not enough to satisfy the ERISA procedural requirements.  A claimant must receive an better description of the additional

1  information necessary to perfect a claim, and there must be an explanation of why the
2  information already provided was insufficient to establish disability. *See Saffon v. Wells Fargo
3  & Co. Long Term Disability Plan*, 522 F.3d 863, 870 (9th Cir. 2008).   Explicit descriptions and
4  explanations are key to satisfying the ERISA procedural requirements.  A claims adjuster must
5  explain why he is unconvinced that a claimant is disabled, and also exactly what it would take to
6  convince him. *Id.* at 873.

8       Third, Standard asserts that it did consider Ms. Broyles' pain, noting that the first denial
9  letter referenced pain multiple times. Opposition at 14.  Standard misrepresents Ms. Broyles'
10 argument.  Standard did mention the word pain several times in its denial letter.  But these
11 mentions appeared only in the descriptions of Ms. Broyles' medical information, not in the
12 analysis of whether she could work.  AR 407-412.   In other words, the denial letter failed to
13 <u>evaluate</u> pain as a possible ground for disability.  Despite Standard's assertion to the contrary,
14 neither of Standard's two medical consultants evaluated pain as a disabling condition.  Standard
15 posed specific questions for Drs. Waldram and Mandiberg, and their medical opinions were
16 expressed in their brief answers to those questions.  Dr. Waldram answered two questions, but he
17 did not mention Ms. Broyles' pain in either answer. AR 263-264.  Dr. Mandiberg was terse in
18 his medical opinion  – answering four questions with at total of seven sentences – and he never
19 used the word "pain" once, even when answering Standard's question about her medications.[1]
20 AR 273-274.

---

[1] Standard glosses over the fact that it erroneously told Dr. Mandiberg that Ms. Broyles was taking only Aleve at the time she stopped working. Opposition at 14, fn. 8.   Standard does not dispute the error, nor does it effectively refute Ms. Broyles' argument that this shows Standard's bias against a claim based on pain.  Standard goes on to assert that the list showing all of Ms. Broyles' prescription painkillers was part of the medical records provided to the two physician consultants. *Id.*  It cites the Declaration of George Chan as support.   However, as noted *supra* at 2, Mr. Chan had a very limited role in the administration of Ms. Broyles' claim. He did not prepare the medical referral for either Dr. Waldram or Dr. Mandiberg.  AR 260, 267. Consequently, he cannot have personal knowledge as to what records were in fact sent with the medical referrals.

To be fair, Standard did not ask either Dr. Waldram or Dr. Mandiberg if Ms. Broyles' pain could be disabling. That would seem a logical question to ask, given that Standard acknowledged Ms. Broyles' claim was based on pain. In its final denial letter, Standard stated: "You have asserted that you <u>can not work due to extreme pain</u> that prevents you from walking, standing or sitting for any length of time." (emphasis added) AR 424. Yet Standard never made a substantive evaluation of pain, indicating a bias against her claim.

Fourth, Standard asserts that the administrative record shows it considered Dr. Pfeffer's November 20, 2006, letter that Ms. Broyles was disabled from sedentary work. Opposition at 14. However, Standard's citations to the record show only one apparent cursory mention – "letter from Dr. Pfeffer" – in the second denial letter dated February 7, 2007. AR 416. Standard has no citation to the third and final denial letter dated March 15, 2007. That denial contains no explicit or implied reference to Dr. Pfeffer's letter. Instead, the third denial letter references only Dr. Pfeffer's Attending Physician Statement (APS) dated December 7, 2005. AR 422.

Standard does not contest the critical point made by Ms. Broyles, namely, that it repeatedly took two words from Dr. Pfeffer's APS out of context to support its denial of benefits. This point deserves repeating. On the APS, Dr. Pfeffer wrote "Sedentary work" as the answer to this question: "What reasonable work or job site modifications could the employer make to assist the individual to return to work?" AR 181. No one can reasonably interpret this answer as a release for Ms. Broyles to return to work. (In fact, if it were a release, it would be directly contradictory with Dr. Pfeffer's assessment on the same APS form that Ms. Broyles stop working because of foot pain.) Nevertheless, time and time again – even after it had received his letter of clarification in November 2006 – Standard continued to cite Dr. Pfeffer's two-word answer on the APS as evidence that Ms. Broyles' could perform sedentary work. Specifically:

PLAINTIFF'S REPLY IN SUPPORT OF
PLAINTIFF'S MOTION FOR DE NOVO
STANDARD OF REVIEW                    5                    C07-05305MMC

Initial denial letter dated March 28, 2006: "This (conclusion) is consistent with the recommendations from your orthopedist, Dr. Pfeffer, who describes limitations on the APS from December 7, 2005, as difficult walking due to unilateral foot pain post-operatively, and that you are capable of sedentary work." AR 409.

Second denial letter dated February 7, 2007: "Dr. Pfeffer completed an Attending Physician Statement on December 7, 2005 indicating diagnosis of collapsed foot but capable of sedentary work." AR 416.

Third denial letter dated March 15, 2007: "In your case we find that the medical records do not support that you would have been unable to perform sedentary level work at the time you ceased work. This is also supported by the APS completed by your orthopedist, Dr. Pfeffer, in December 2005, in which he states that you can perform sedentary level work." AR 420.

The case law is clear on this point: Taking statements out of context or distorting them to support a denial of benefits denies a claimant the full and fair review required under ERISA. *Saffon* at 873. This factor alone weighs heavily toward *de novo* review.

In conclusion, the combination-of-factors analysis set forth in *Abatie, Saffon* and *Glenn* supports a heightened standard of review in this case. Standard errs in asserting that the circumstances here are analogous to those in *Moskowite v. Everen Capital Corp. Group Disability Income Plan*, 2008 WL 755014 (N.D. Cal. March 20, 2008). In *Moskowite*, this Court found no evidence of an unfair review by the plan administrator. In contrast, Ms .Broyles has presented ample evidence of bias and of significant irregularities in the claims process. This Court should review *de novo*.

Dated:   June 27, 2008              Respectfully submitted,
                                    Law Offices of Laurence F. Padway

                                    By: _____/s/_____
                                         Karen K. Wind
                                         Attorney for plaintiff
                                         PATRICIA BROYLES